IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Case No. 3:16-cv-00695-GCM

| | | |
|---|---|---|
| Baronius Press Ltd. | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | SECOND AMENDED |
| | ) | VERIFIED COMPLAINT |
| Saint Benedict Press LLC, | ) | AND SUPPLEMENTAL PLEADING |
| Defendant. | ) | |
| | ) | |
| | ) | |

Plaintiff Baronius Press Ltd ("Plaintiff"), by and through undersigned counsel, hereby alleges upon knowledge as to its own acts, and upon information and belief as to all other matters, the following for its second amended complaint, and supplemental pleading, against Defendant Saint Benedict Press LLC ("Defendant"):

## I. PRELIMINARY STATEMENT

1.     Plaintiff Baronius Press brings this lawsuit against Defendant for multiple violations of the U.S. Copyright Act, 17 U.S.C. § 101 *et seq.* ("Copyright Act"), including violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1202 *et seq.* ("DMCA"), and violations of the North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. § 75 - 1.1). Plaintiff alleges sixteen (16) claims of Copyright Act violations concerning thirteen (13) copyright-protected works in which Plaintiff either owns all copyright rights, or holds the exclusive rights to publish such work.  Plaintiff alleges three (3) claims of deceptive trade practices, misleading the public, customers, potential customers, and the trade into believing, mistakenly, that Defendant owns or was authorized to publish and sell Plaintiff's intellectual property.

1

2.     Upon information and belief, Defendant unlawfully made, advertised, distributed, and sold hundreds or even thousands of copies of thirteen (13) copyright-protected literary works in which Defendant held no copyright rights and/or no publication rights.

3.     Upon information and belief, Defendant knowingly, and with an intent to induce, enable, facilitate, or conceal its infringement, provided, distributed, and/or imported for distribution false copyright management information ("CMI") in hundreds, if not thousands, of copies of three (3) of the literary works for which Plaintiff holds copyright rights, inserting and displaying false CMI that indicated, falsely, that Defendant held certain copyright rights or had the right or authorization to publish those three (3) works.

4.     Despite being made aware of its infringing actions and of the identities of the rights holders, Defendant continued and continues to this day with respect to certain works to copy, distribute, advertise, and sell Plaintiff's intellectual property and to profit from such actions to the detriment of Plaintiff.   Defendant's actions continue to cause injury to Plaintiff by impairing the exclusivity of Plaintiff's publication of thirteen (13) works in which Plaintiff holds rights and Defendant holds no rights.   Defendant's deceptive practices continue to harm the public as well.

5.     Plaintiff seeks permanent injunctive relief; an accounting and award of Defendant's profits; compensatory, punitive, treble, and/or statutory damages as available and appropriate; an award of statutory damages, for each DMCA violation, in the sum of not less than $2,500 or more than $25,000; an award of costs and attorneys' fees; and such other and further relief as the Court deems just and proper.

## II. THE PARTIES

6.     Plaintiff Baronius Press Ltd ("Plaintiff") is a corporation organized under the laws of the Isle of Man, British Isles, and has a principal place of business at St. Mary's The Parade, Castletown, Isle of Man, IM9 1LG.

7.     Defendant Saint Benedict Press LLC ("Defendant") is a limited liability company organized under the laws of the State of North Carolina, doing business as "TAN Books" and possibly other trade names with a principal place of business at 13315 Carowinds Blvd, Charlotte, NC, 28273-7700, and doing business throughout the state of North Carolina, including in counties located within the Western District of North Carolina.

## III. JURISDICTION AND VENUE

8.     This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act of the United States, 17 U.S.C. § 101, *et seq*. and for violation of the DMCA, 17 U.S.C. § 1202 *et seq*.

9.     The complained of actions set out below took place in, among other places, the Western District of North Carolina, including at Defendant's place of business in Charlotte, North Carolina.

10.     This Court has subject matter jurisdiction under the copyright laws of the United States, 17 U.S.C. § 101 *et seq*., under Sections 1331 and 1338 of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a).  This Court also has jurisdiction pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interest and costs, the sum of seventy-five thousand dollars.

11.     This Court has personal jurisdiction over Defendant because, among other things, Defendant is located and doing business in this State and judicial district, committed infringing

3

acts in this State and judicial district, and caused and continues to cause harm to Plaintiff in this State and judicial district.

12.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c), and/or § 1400(a) because a substantial part of the conduct which is the subject of this Second Amended Verified Complaint occurred within the counties of the Western District of North Carolina.

## IV. FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

**Plaintiff's Background**

13.     Plaintiff Baronius Press is a publisher of traditional Catholic books and Bibles and was established in 2002.  Plaintiff is well known for updating and republishing a number of titles that were previously out of print for many decades.  Currently, Plaintiff has published over forty-five (45) titles.  Over the past sixteen years, Plaintiff has acquired all rights in, or the exclusive right to publish, a number of literary works and English-language translations thereof.

**Defendant's Background**

14.     Defendant Saint Benedict Press, founded in 2008, is described by its parent company, Good Will Publishers Inc. ("GWP"), as "our Catholic publishing arm where we publish Catholic bibles as well as Catholic classics repackaged to appeal to a wider audience of readers."  *See* Exhibit 6, true and correct printouts of the web pages at:

http://www.goodwillpublishers.com/catholicmarketing.html (from GWP's website),

http://www.goodwillpublishers.com/corpandorg.html (from GWP's website),

https://www.saintbenedictpress.com/index.php/about-us-stbp  (from one of Defendant's websites),

https://www.tanbooks.com/index.php/about-us/ (from one of Defendant's websites),

https://www.tanbooks.com/index.php/ebook-instructions/  (from one of Defendant's websites), and

https://www.facebook.com/pg/TANBooks/offers (from Defendant's Facebook account).

15.     Defendant publishes under several imprints, including: (a) TAN Books[1], originally founded in 1967 and acquired in 2008 by Defendant and GWP, (b) Catholic Courses, (c) Catholic Scripture Study International, (d) Confraternity of the Precious Blood, (e) Neumann Press, and (f) Basilica Press.  *Id*. Defendant's parent GWP also owns Ambassador Associates (its wholesale division), Ambassador Services, Inc. (its wholesale marketing division), and United Memorial Bible Services, Inc.  *Id.*  Upon information and belief, Defendant advertises, offers for sale, and sells books through multiple websites and social media platforms, including but not limited to www.tanbooks.com and www.saintbenedictpress.com. Defendant also offers for sale and sells electronic versions (ebooks) of a number of works through multiple platforms such as Kindle, Nook, Kobo, Apple, Sony, and Amazon, as shown on Defendant's web page at www.tanbooks.com/index.php/ebook-instructions/. *See* Exhibit 6.  Upon information and belief, Defendant sells thousands of books through websites, digital platforms, and through approximately 2,000 retail outlets.  *Id.*

---

[1] Upon information and belief, the history of TAN Books and Publishers ("TAN") includes the following: TAN first filed for bankruptcy in or around December 1996 and went into Chapter 11; by 1998, TAN was in a lawsuit brought by the SEC (*SEC v. TAN Books and Publishers, Inc. and Thomas A. Nelson*, Case No. 98 C 5918, (N.D. Ill., filed Sept. 22, 1998) for allegedly raising $10+ million by selling unregistered promissory notes; by 2005, TAN filed for Chapter 11 bankruptcy a second time; following its 2008 acquisition, "TAN Books and Publishers" was renamed "TAN Books" and used as a publishing imprint through which Defendant and parent company GWP publish 600 titles and have a "retail presence in over 2000 outlets."  *See* Exhibit 6.

**Plaintiff's Copyright Rights as Exclusive Owner or Exclusive Licensee**

| TABLE 1 | | | | | | |
|---|---|---|---|---|---|---|
| Title | a) English-language Work<br>b) *Original (foreign-language) underlying Work* | | Author | Work is Copyright Protected | Plaintiff Holds by License Exclusive Publication Rights | Plaintiff Owns All Copyright Rights |
| 1 | a) | **Fundamentals of Catholic Dogma** | Dr. Patrick Lynch | yes | | yes (2010) |
| | b) | *Grundriss der katholischen Dogmatik* | Ludwig Ott | yes | yes (2009) | |
| 2 | | **This Tremendous Lover** | Fr. Eugene Boylan | yes | yes (2015) | yes (2018) |
| 3 | a) | **The Curé d'Ars** | Dom Ernest Graf | yes | | yes (2015) |
| | b) | *Le curé d'Ars* | Abbé Francis Trochu | yes | yes (2015) | |
| 4 | | *Catholic Encyclopaedic Dictionary* | Donald Attwater | yes | yes (2015) | |
| 5 | a) | **Holy Abandonment** | Fr. Ailbe Luddy | yes | | yes (2015) |
| | b) | La Saint Abandon | Dom Vital Lehodey | no | | |
| 6 | a) | The Priest in Union with Christ | Gerald W. Shelton | yes | | |
| | b) | *De Unione sacerdotis cum Sacerdote* | Reginald Garrigou-Lagrange | yes | yes (2016) | |
| 7 | a) | Christian Perfection and Contemplation | Timothea Doyle | no | | |
| | b) | *Perfection chrietienne* | Reginald Garrigou-Lagrange | yes | yes (2016) | |
| 8 | a) | Our Savior and His Love for Us | A. Bouchard | no | | |
| | b) | *Le Saveur et son amour pour nous* | Reginald Garrigou-Lagrange | yes | yes (2016) | |
| 9 | a) | Providence | Dom Bede Rose | no | | |
| | b) | *La providence et la confiance en Dieu* | Reginald Garrigou-Lagrange | yes | yes (2016) | |
| 10 | a) | Life Everlasting | Patrick Cummings OSB | no | | |
| | b) | *L'altra vita e la profondità dell'anima* | Reginald Garrigou-Lagrange | yes | yes (2016) | |
| 11 | a) | **Mother of the Saviour** | Fr. Bernard Kelly | yes | | yes (2015) |
| | b) | *La mère du Sauveur et notre vie intérieure* | Reginald Garrigou-Lagrange | yes | yes (2016) | |
| 12 | a) | **The Three Ways of the Spiritual Life** | Burns Oates & Washbourne | yes | | yes (2016) |
| | b) | *Les trois conversions et les trois voies* | Reginald Garrigou-Lagrange | yes | yes (2016) | |
| 13 | a) | Predestination | Dom Bede Rose | no | | |
| | b) | *La prédestination des saints et la grâce* | Reginald Garrigou-Lagrange | yes | yes (2016) | |

Case 3:16-cv-00695-FDW-DCK   Document 51-1   Filed 07/23/18   Page 6 of 79

16.     Plaintiff is either the sole and exclusive owner of all copyright rights in and to the works listed in TABLE 1 (see those listed in **bold**), or is the exclusive licensee of the exclusive right to publish the work or publish any English-language translation of the work (see those listed in *italics* and underlined).

17.     The six (6) works listed in Table 1 in **bold** font will be referred to hereinafter collectively as the "Six Owned Works" (including *Fundamentals of Catholic Dogma*, *This Tremendous Lover*, *The Cure d'Ars*, *Holy Abandonment*, *Mother of the Saviour*, and *The Three Ways of the Spiritual Life)*.

18.     The eleven (11) works listed in Table 1 for which Plaintiff holds, as the exclusive licensee, the exclusive right to publish the works, will be referred to hereinafter collectively as the "Eleven Exclusively Licensed Works" (including *Grundriß der katholischen Dogmatik*, *Le curé d'Ars*, *Catholic Encyclopaedic Dictionary*, *De Unione sacerdotis cum Sacerdote*, *Perfection chrietienne*, *Le Saveur et son amour pour nous*, *La providence et la confiance en Dieu*, *L'altra vita e la profondità dell'anima*, *La mère du Sauveur et notre vie intérieure*, *Les trois conversions et les trois voies*, and *La prédestination des saints et la grâce*).

19.     The Six Owned Works are original works of authorship embodying copyrightable subject matter.   As the owner of all rights under copyright in the Six Owned Works, Plaintiff is entitled to all of the exclusive rights and remedies accorded by U.S. copyright law to a copyright owner.  Upon information and belief, the Six Owned Works are not "United States works" as that clause is used in Section 411(a) of the Copyright Act, as they were first published in countries outside the U.S., were authored by nationals or domiciliaries of countries other than the U.S., and were not simultaneously published in the U.S. The United States is a signatory to the Berne Convention and, in order to comply with Article 5(2) of the Berne Convention, the Copyright Act's registration requirement for "United States works" (Section 411(a)) does not apply to non-

U.S. works.  With respect to those three of the Six Owned Works that are not the subject of U.S. Copyright Registrations (*This Tremendous Lover, Mother of the Saviour, The Three Ways of the Spiritual Life*) Plaintiff hereby pleads exemption from the Section 411(a) registration requirement as the work(s) are not "United States work(s)" subject to Section 411(a).

20.     The Eleven Exclusively Licensed Works are original works of authorship embodying copyrightable subject matter.  Plaintiff is the exclusive licensee of the right to publish (create, distribute and sell), in the U.S., each of the Eleven Exclusively Licensed Works in any format, including but not limited to printed/paper copies and electronic/digital copies.  As the exclusive licensee of all publication (creation, distribution and sale) rights under copyright in the Eleven Exclusively Licensed Works, Plaintiff is entitled to all of the exclusive rights and remedies according by U.S. copyright law to the owner of such rights.

21.     Upon information and belief, the Eleven Exclusively Licensed Works are not "United States works" as that clause is used in Section 411(a) of the Copyright Act, as they were first published in countries outside the U.S., were authored by nationals or domiciliaries of countries other than the U.S., and were not simultaneously published in the U.S. The United States is a signatory to the Berne Convention and, in order to comply with Article 5(2) of the Berne Convention, the Copyright Act's registration requirement for "United States works" (Section 411(a)) does not apply to non-U.S. works.  With respect to those nine (9) of the Eleven Exclusively Licensed Works that are not the subjects of U.S. Copyright Registrations (*Le curé d'Ars, De Unione sacerdotis cum Sacerdote, Perfection chrietienne, Le Saveur et son amour pour nous, La providence et la confiance en Dieu, L'altra vita e la profondità dell'anima, La mère du Sauveur et notre vie intérieure, Les trois conversions et les trois voies*, and *La prédestination des saints et la grâce*), Plaintiff hereby pleads exemption from the Section 411(a) registration requirement as the work(s) are not "United States work(s)" subject to Section 411(a).

8

**Defendant's Unlawful Activities**

**Title 1 – (a) *Fundamentals of Catholic Dogma* and (b) *Grundriß der katholischen Dogmatik***

22.     Upon information and belief, Seminary of the diocese of Eichstätt ("Seminary") in Germany is the owner of the copyright rights in and to the German-language underlying work entitled *Grundriß der katholischen Dogmatik*, that was, upon information and belief, authored by Ludwig Ott (a national or domiciliary of Germany) and first published in Germany in 1952 ("*Grundriß*").

23.     Upon information and belief, *Grundriß* was not published in the U.S. during the 30-day period following its first publication in Germany, was never in the public domain in Germany through expiration of the term of copyright protection in that country, but was in the public domain in the U.S. from 1952 (because it did not comply with formalities imposed at any time by U.S. law), until its copyright was restored on January 1, 1996 under the Uruguay Round Agreements Act (Public Law No.103-465, 108 Stat. 4809) ("URAA").

24.     Seminary granted exclusive controlling rights for both *Grundriß* and the right to publish an English-language translation of *Grundriß* to the company Nova et Vetera ("Nova") for the remaining duration of the copyright.

25.     In 2009, Plaintiff signed an agreement with Nova and obtained the exclusive right to publish an English-language translation of *Grundriß*. Plaintiff knew that its exclusive rights to publish the English-language version of *Grundriß* was valuable to its business, and efforts were made to protect it.

26.     Upon information and belief, the English-language translation of *Grundriß* titled *Fundamentals of Catholic Dogma* ("*Fundamentals*") was authored by Dr. Patrick Lynch (a

Case 3:16-cv-00695-FDW-DCK   Document 51-1   Filed 07/23/18   Page 9 of 79

national and domiciliary of Ireland), edited by James Canon Bastible, D.D., and first published in Ireland in 1955. Upon information and belief, *Fundamentals* was not published in the U.S. during the 30-day period following its first publication in Ireland, was never in the public domain in Ireland through expiration of the term of copyright protection in that country, but was in the public domain in the U.S. from 1955, until its copyright was restored on January 1, 1996 under the URAA.

27.     In 2010, Plaintiff acquired from Mercier Press of Ireland all copyright rights in and to *Fundamentals*. *Fundamentals* unfortunately is known to have several historical, theological and substantial grammatical errors. Under the exclusive license from Nova, Plaintiff agreed not to publish *Fundamentals* unless it has been revised, corrected and approved by Nova. This is to ensure that no further damage is done to the reputation and value of this important work, and that readers are not misled, misguided, or incorrectly informed about Catholic Dogmas.

28.     Plaintiff registered, on behalf of the copyright owner Seminary, the original German work *Grundriß* with the U.S. Copyright Office, and received U.S. Copyright Registration No. TX-6-484-646 dated February 21, 2014. A true and correct copy Registration No. TX-6-484-646 is attached hereto as Exhibit 1.

29.     Plaintiff registered *Fundamentals* with the U.S. Copyright Office, and received U.S. Copyright Registration No. TX-6-484-647, which was issued on February 21, 2014. A true and correct copy of Registration No. TX-6-484-647 is attached hereto as Exhibit 2.

30.     Upon information and belief, Defendant began publishing *Fundamentals* in 1974.

31.     The enactment of the URAA on December 8, 1994 affected parties, such as Defendant, who relied on exploiting (prior to December 8, 1994) a work that had been in the public domain in the United States. Section 104A of the Copyright Act provides certain relief to such parties who, under certain circumstances, are deemed to be "reliance parties." Under Section

104A, a reliance party is typically a business or individual who, relying on the then-current public domain status of a work, was using the work before the enactment of the URAA on December 8, 1994. A reliance party may continue to exploit the restored work in its original form for the duration of the restored copyright, or until the owner of the restored copyright serves a Notice of Intent to Enforce Copyright ("NIE") on the reliance party. After such NIE, a reliance party may continue to sell already-existing copies of the work for a grace period of 12 months, but the reliance party cannot make additional copies or create new versions or derivative works. *See* 17 U.S.C. § 104A.

32. Upon information and belief, Defendant was a reliance party with respect to *Fundamentals* in 1996, but stopped selling *Fundamentals* in early 2011 when its stock of *Fundamentals* was depleted.

33. Upon information and belief, Defendant was aware in and/or prior to 2011 that the translation of *Grundriß* (*Fundamentals*) that Defendant had been publishing contained a number of doctrinal, grammatical and translation errors. Upon information and belief, Defendant's knowledge of such errors was a reason Defendant indicated that it intended to produce a new corrected edition.

34. Upon information and belief, at some point in or after 2011 Defendant began displaying on its www.tanbooks.com website a notice to internet users and customers indicating Defendant was currently out of stock of *Fundamentals* but would soon be releasing its own newly revised and typeset edition of *Fundamentals* with "a corrected translation and preface by Patrick Madrid." Upon information and belief, Defendant advertised this revised edition as "New HARDBOUND EDITION", to differentiate it from the previous erroneous paperback edition that contained errors, and began taking pre-orders. True and correct copies of screenshots of Defendant's advertising are attached hereto as Exhibit 5.

35.     After learning of Defendant's intent to publish a translation of *Grundriß* and/or derivative of *Fundamentals*, Plaintiff contacted Defendant on or around March 22, 2013 and gave express notice that Defendant did not have any rights to publish *Fundamentals*, or to create and publish a derivative thereof, as Plaintiff held the exclusive right to publish the work. A true and correct copy of Plaintiff's notice of copyright infringement and demand letters to Defendant are attached hereto collectively as Exhibit 4.

36.     On or around April 26, 2013, Plaintiff served upon Defendant two NIEs concerning the two works *Grundriß* and *Fundamentals.* True and correct copies of those NIEs are attached hereto as Exhibit 3. Plaintiff's understanding on April 26, 2013 was that Defendant did not have in stock any copies of *Fundamentals*.

37.     Upon receipt of Plaintiff's April 26, 2013 NIEs, Defendant, pursuant to Section 104A of the Copyright Act, lost, forfeited and surrendered rights it may have had as a reliance party for the works. Upon information and belief, after losing, forfeiting and surrendering any such rights, Defendant apparently realized the potential commercial value of *Fundamentals*, and, despite knowing that Plaintiff owned all copyright rights in *Fundamentals* and held exclusive publishing rights for an English-language translation of *Grundriß*, Defendant attempted to acquire rights to publish *Fundamentals* from third parties such as Mercier Press, Nova, and Verlag Herder.

38.     Upon information and belief, when Defendant did not succeed in acquiring the rights, Defendant decided nevertheless to publish *Fundamentals* despite not having any rights or authorization or license to do so.

39.     Upon information and belief, Defendant changed its advertising in or around 2013 by removing language or notices identifying a new edition. The statement "New HARDBOUND

EDITION …" and the same burgundy cover picture, gave impression to customers that they were still pre-ordering the new corrected edition. *See* Exhibit 5.

40.    On or about March 17, 2014, Plaintiff discovered that Defendant was offering for sale a hardbound edition of *Fundamentals* under Defendant's own name, despite having received written notice of Plaintiff's exclusive U.S. rights to publish *Fundamentals* in the NIE sent nearly a year earlier.

41.    Upon information and belief, Defendant was not selling a newly typeset and revised edition with an introduction by Patrick Madrid that Defendant had previously promoted, but instead it had reprinted a copy of its previous edition used since 2005, with the following change: Defendant added six (6) pages of advertising to promote Defendant's own brands (imprints) and products to the readers of the title. True and correct copies of Defendant's advertisement pages added to *Fundamentals* are attached hereto as Exhibit 7.

42.    Notwithstanding Defendant's own motto "The Publisher You Can Trust With Your Faith" (*see* Exhibit 6), upon information and belief, Defendant knowingly published, advertised, distributed, and sold newly printed copies of *Fundamentals* with historical, theological and substantial grammatical errors, and, in so doing, Defendant damaged the reputation and value of *Fundamentals*.  See Paragraph 27 above.

43.    As of February 21, 2014, both *Fundamentals* and *Grundriß* had been registered with the U.S. Copyright Office. Upon information and belief, since at least 2013, Defendant had knowledge of the identities of the rights holders, i.e. Plaintiff and Seminary.

44.    Upon information and belief, Defendant knowingly and deliberately published, provided, and distributed *Fundamentals* with false copyright management information ("CMI") with an intent to induce, enable, facilitate, or conceal the fact that Defendant did not have any copyright rights in *Fundamentals*, or any authorization to copy, advertise, distribute, and sell it in

direct violation of the DMCA. Upon information and belief, the information on the copyright page was created digitally, using computer software, prior to Defendant printing its edition in 2014. A true and correct copy of Defendant's copyright page from *Fundamentals* is attached hereto as Exhibit 8.

45.     Defendant has caused irreparable damage to Plaintiff (and Seminary), the holder of copyright rights in and to *Fundamentals,* by providing false CMI and adding six (6) pages of advertising to promote Defendant's own brands (imprints) and products in each copy of *Fundamentals*. Defendant's false CMI and self-promoting advertising is permanently in each unauthorized copy of *Fundamentals*. Every time such copy of *Fundamentals* is opened in the future, whether by an individual, in a family circle, school classes, religious courses, monastery, convent and other libraries, such false CMI and the misleading advertising (leading readers to believe that Defendant had the right or authorization to publish, distribute, and sell the work) will be displayed.

46.     Upon information and belief, Defendant added the six (6) additional pages of advertising and self-promotion deliberately to reinforce the false impression that Defendant owned rights in and to *Fundamentals*. Upon information and belief, the misleading advertising causes or is likely to cause the public, consumers, potential consumers, and the trade to believe, mistakenly, that Defendant owns rights in the work or had authorization to publish it, which is not the case. Plaintiff gave no such rights or authorization to Defendant to publish, revise, alter, advertise, distribute, or sell *Fundamentals*.

47.     After being notified by Plaintiff of its infringement, Defendant continued and, upon information and belief, continues as of the filing of this Second Amended Verified Complaint, knowingly and willfully to infringe Plaintiff's copyright rights by advertising, distributing, and selling in the U.S. copies of *Fundamentals* listing Defendant as the

publisher/rights holder without authorization. A true and correct copy of Defendant's advertisements is attached hereto as Exhibit 5.

48.     Upon information and belief, Defendant has also advertised, distributed, and sold, without authorization, copies of *Fundamentals* in other countries, including but not limited to the United Kingdom, Australia, Philippines and Canada, despite Defendant's own claim on its www.tanbooks.com website that "The title is available for US Distribution only." See Exhibit 5.

49.     Upon information and belief, Defendant has been knowingly and intentionally offering for sale, distributing, and selling thousands of copies of *Fundamentals* with false CMI with an intent to induce, enable, facilitate, or conceal Defendant's willful copyright infringement.

50.     Upon information and belief, Defendant has sold at least 4,110 copies of *Fundamentals.* Upon information and belief, Defendant derived and/or derives substantial revenue or other benefits from its publication and sale of *Fundamentals,* thus profiting from the unauthorized exploitation of Plaintiff's rights at the expense of Plaintiff and the public.

**Title 2 – *This Tremendous Lover***

51.     In 2015, Plaintiff entered into a license agreement with Mount St. Joseph Abbey of Ireland and obtained an exclusive license to publish the English-language work entitled *This Tremendous Lover* that was, upon information and belief, authored by Dom Eugene Boylan (a national or domiciliary of Ireland and first published in Ireland in 1946 ("*This Tremendous Lover*").

52.     Upon information and belief, *This Tremendous Lover* was not published in the U.S. during the 30-day period following its first publication in Ireland, was never in the public domain in Ireland through expiration of the term of copyright protection in that country, but was in the

public domain in the U.S. from 1946, until its copyright was restored on January 1, 1996 under the URAA.

53.     In 2018, Plaintiff expanded its rights and purchased all copyright rights in and to *This Tremendous Lover* from Mount St. Joseph Abbey. Plaintiff is the exclusive owner of the copyright in *This Tremendous Lover.*

54.     Records indicate that *This Tremendous Lover* was a runaway success when it was first published in 1946, selling over a million copies, upon information and belief. Upon information and belief, *This Tremendous Lover* is generally regarded as one of the best books ever written on Christian spirituality and as a timeless classic on the subject.

55.     Upon information and belief, Defendant decided that publishing the renowned *This Tremendous Lover* would be a profitable commercial activity and began publishing it in 2013 without any authorization.

56.     Upon information and belief, in addition to having no right to publish *This Tremendous Lover*, Defendant had no right to create a derivative work of *This Tremendous Lover*. Plaintiff learned that Defendant, without any authorization whatsoever from owners of the copyright and publication rights, created in or around 2013 a revised edition (derivative) of *This Tremendous Lover* ("*Revised Derivative Version*") with additional notes and new introductory essays and, upon information and belief, introduced several errors into the text.

57.     The authorized content of *This Tremendous Lover* contained numerous references to other classic Christian works. Upon information and belief, in numerous places in its unauthorized *Revised Derivative Version,* Defendant intentionally revised the original notes in the format "Author + Title + Publisher + Year of Publication" notes to "Author + Title + **Defendant + Defendant's Year of Publication**" (revised portions in **bold**) and, in one instance in the text, Defendant inserted a new Note promoting Defendant's own title. Upon information

16

and belief, Defendant also added to *This Tremendous Lover* two (2) pages of advertising to promote Defendant's own brands (imprints) and products to readers and purchasers of the book. A true and correct copy of Defendant's revised notes and advertisement pages in the *Revised Derivative Version* is attached hereto as <u>Exhibit 9</u>. Upon information and belief, Defendant added the two pages of advertising and self-promotion deliberately to reinforce the false impression that Defendant owned rights in and to *This Tremendous Lover*. Upon information and belief, Defendant revised the "Author + Title + Publisher + Year of Publication" notes as another way to give readers the misleading impression that Defendant had rights in (or other authorization to publish and sell) the work. Upon information and belief, the misleading advertising and citations cause or are likely to cause the public, consumers, potential consumers, and the trade to believe, mistakenly, that Defendant owns rights in the works or had authorization to publish them, which is not the case. Plaintiff gave no such rights or authorization to Defendant to publish, revise, alter, advertise, distribute, or sell *This Tremendous Lover*.

58. Upon information and belief, in order to conceal its infringement, Defendant inserted and displayed false CMI on the copyright page of the *Revised Derivative Version*, listing itself as the copyright owner with the rights to publish *This Tremendous Lover*. Upon information and belief, such false CMI was included not only in paper copies of the *Revised Derivative Version* sold in the U.S. but also in the ebook (digital) version of the *Revised Derivative Version* created, advertised, distributed, and sold in the U.S. A true and correct copy of Defendant's copyright page from *Revised Derivative Version* is attached hereto as <u>Exhibit 10.</u>

59. Upon information and belief, Defendant intentionally published *Revised Derivative Version* with false CMI from 2013 until today's date despite not having the necessary rights to do so. Upon information and belief, in its quest for profits, and in its attempt to conceal the fact it had no rights in and to *This Tremendous Lover,* Defendant caused irreparable damage

17

to Plaintiff, the owner of all copyright rights in and to *This Tremendous Lover*. Upon information and belief, every time the *Revised Derivative Version* is opened in the future, whether by an individual, in a family circle, school classes, religious courses, monastery, convent and other libraries, such false CMI and misleading advertising (leading readers to believe that Defendant had the right or authorization to publish, distribute, and sell the work) will be displayed.

60.     On or around August 10, 2016, Plaintiff served upon Defendant a cease and desist letter concerning the *Revised Derivative Version.* A true and correct copy of that cease and desist letter is attached hereto as <u>Exhibit 11</u>.

61.     After being notified of its infringing activities (that it had published *This Tremendous Lover* and/or the *Revised Derivative Version* in derogation of Plaintiff's exclusive rights), Defendant did not respond to Plaintiff but, upon information and belief, removed references to the *Revised Derivative Version* from Defendant's www.tanbooks.com website. However, upon information and belief, Defendant continued, and continues as of the filing of this Second Amended Verified Complaint, knowingly and willfully to infringe Plaintiff's copyright rights by creating, advertising, distributing, and selling copies of *Revised Derivative Version* in the U.S.[2] through other websites and/or platforms, including without limitation www.kobo.com. Attached hereto as <u>Exhibit 12</u> is a true and correct copy of a receipt for a purchase of Defendant's unauthorized version from www.kobo.com, and as <u>Exhibit 13</u> true and correct copies of www.kobo.com and www.tanbooks.com screenshots showing the work available for purchase.

62.     Upon information and belief, Defendant derived and/or derives substantial revenue or other benefits from its publication and sale of the *Revised Derivative Version,* thus profiting from the unauthorized exploitation of Plaintiff's rights at the expense of Plaintiff and the public.

---

[2] Upon information and belief, Defendant has also sold unauthorized copies of the *Revised Derivative Version* in other countries, including but not limited to the Philippines and Canada.

**Title 3 – (a) *The Curé d'Ars* and (b) *Le curé d'Ars***

63.     Upon information and belief, the Diocese of Nantes in France is the owner of the copyright rights in the of the underlying French-language work entitled *Le curé d'Ars* that was, upon information and belief, authored by Abbé Francis Trochu (a national and domiciliary of France) and first published in France in 1925 ("*Le curé d'Ars*").

64.     Upon information and belief, *Le curé d'Ars* was not published in the U.S. during the 30-day period following its first publication in France, was never in the public domain in France through expiration of the term of copyright protection in that country, but was in the public domain in the U.S. from 1925 until its copyright was restored on January 1, 1996 under the URAA.

65.     In 2015, Plaintiff entered into a license agreement with the Diocese of Nantes and obtained the exclusive right to publish an English-language translation of the original *Le curé d'Ars.* Also in 2015, Plaintiff purchased and acquired all copyright rights in and to the English-language translation entitled *The Curé d'Ars* that was, upon information and belief, authored by Dom Ernest Graf (a domiciliary of United Kingdom) and first published in 1927 in the U.K. ( "*The Curé d'Ars*").

66.     Upon information and belief, *The Curé d'Ars* was not published in the U.S. during the 30-day period following its first publication in the U.K. in 1927, was never in the public domain in the U.K. through expiration of the term of copyright protection in that country, but was in the public domain in the U.S. from 1927 until its copyright was restored on January 1, 1996 under the URAA.

Case 3:16-cv-00695-FDW-DCK   Document 51-1   Filed 07/23/18   Page 19 of 79

67.     Prior to Plaintiff's publishing, distributing, or selling *The Curé d'Ars* in the U.S., Plaintiff registered *The Curé d'Ars* with the U.S. Copyright Office, receiving U.S. Copyright Registration No. TX5-795-332 dated May 20, 2016.

68.     Upon information and belief, Defendant began publishing *The Curé d'Ars* in or around 1977 in the U.S., and re-typeset its *The Curé d'Ars* in or around 2007.  Upon information and belief, Defendant recently added to its reprint of *The Curé d'Ars* at least three (3) pages of advertising to promote Defendant's own brands (imprints) and products to readers and purchasers of the title. A true and correct copy of a screenshot from Amazon.com showing Defendant's advertisement pages[3] in *The Curé d'Ars*,  is attached hereto as Exhibit 14.

69.     Upon information and belief, in 2016 Defendant was a reliance party pursuant to § 104A of the Copyright Act with respect to both *The Curé d'Ars* and *Le curé d'Ars*.  On or around August 10, 2016, Plaintiff served upon Defendant a NIE regarding *The Curé d'Ars* and *Le curé d'Ars.* A true and correct copy of that NIE is attached hereto as Exhibit 15. After being provided with that NIE by Plaintiff, Defendant had one year in which to sell off any remaining already-existing stock and otherwise was obliged to stop selling *The Curé d'Ars* by August 10, 2017.

70.     Upon information and belief, Defendant made a calculated decision that it would nevertheless continue to sell *The Curé d'Ars* after August 10, 2017.  Upon information and belief, Defendant continues, as of the filing of this Second Amended Verified Complaint, knowingly and wilfully to infringe Plaintiff's copyright rights by publishing and selling, without

---

[3] Upon information and belief, the pages on the Amazon.com *Look Inside* preview numbered 635 and 636 are not available for viewing and are likely Defendant's advertisements as well.

authorization, copies of *The Curé d'Ars* in the U.S.[4]  A true and correct copy of Defendant's advertisements is attached hereto as <u>Exhibit 16</u>.

71.     Upon information and belief, any right that Defendant possibly may have had to publish *The Curé d'Ars* was limited to status as a reliance party and ended in August 2017, after Defendant received Plaintiff's NIE in 2016.

72.     Upon information and belief, the copyright page of *The Curé d'Ars* published by Defendant states false CMI in order to conceal Defendant's infringement.  Upon information and belief, this false and misleading CMI was created digitally using computer software when Defendant retypeset its edition of *The Curé d'Ars* in 2007. A true and correct copy of Defendant's copyright page from *The Curé d'Ars* is attached hereto as <u>Exhibit 17.</u>

73.     Upon information and belief, in its quest for profits, Defendant caused irreparable damage to Plaintiff (and the Diocese of Nantes). Upon information and belief, Defendant provided false CMI in each copy of the title, whether in printed or digital form (ebook). Upon information and belief, Defendant's conduct is permanently displayed in each unauthorized printed copy of the work: every time *The Curé d'Ars* is opened in the future, whether by an individual, in a family circle, school classes, religious courses, monastery, convent and other libraries, such false CMI will be displayed.

74.     Upon information and belief, Defendant added the 3+ pages of advertising and self-promotion deliberately to give the false impression that Defendant owned rights in *The Curé d'Ars*.  Upon information and belief, the misleading advertising causes or is likely to cause the public, consumers, potential consumers, and the trade to believe, mistakenly, that Defendant owns rights in the works or had authorization to publish them, which is not the case.  Plaintiff

---

[4] Upon information and belief, Defendant has also sold unauthorized copies of *The Curé d'Ars* in other countries, including but not limited to the Philippines and Canada.

gave no such rights or authorization to Defendant to publish, revise, alter, advertise, distribute, or sell *The Curé d'Ars*.

**Title 4 – *Catholic Encyclopaedic Dictionary***

75.     Upon information and belief, the Estate of Donald Attwater in United Kingdom is the owner of all copyright rights in and to the English-language work entitled *Catholic Encyclopaedic Dictionary* that was, upon information and belief, authored by Donald Attwater (a national and domicile of the U.K.) and first published in 1931 in the U.K. (*"Catholic Dictionary"*).

76.     Upon information and belief, *Catholic Dictionary* was not published in the U.S. during the 30-day period following its first publication in the U.K., has been protected by copyright since it was first published in 1931, and was never in the public domain in the U.K. through expiration of the term of copyright protection in that country.

77.     Upon information and belief, *Catholic Dictionary* was registered with the U.S. Copyright Office in 1931 (A33195) and renewed in 1958 (R227390); the second edition of *Catholic Dictionary* was registered with the U.S. Copyright Office in 1949 (A30836) and renewed in 1977 (R631053).

78.     In 2015, Plaintiff entered into a license agreement with the Estate of Donald Attwater and obtained the exclusive right to publish *Catholic Dictionary* for the remaining duration of the copyright which continues to today's date.

79.     Upon information and belief, Defendant believed *Catholic Dictionary* was in the public domain in the U.S. and began publishing *Catholic Dictionary* in the U.S. in or about 1997.

Case 3:16-cv-00695-FDW-DCK   Document 51-1   Filed 07/23/18   Page 22 of 79

80.  On September 13, 2016, Plaintiff served upon Defendant a cease and desist letter concerning *Catholic Dictionary*. A true and correct copy of that demand letter is attached hereto as Exhibit 18.

81.  After being notified of its infringing activities in publishing the *Catholic Dictionary* in derogation of Plaintiff's exclusive publishing rights, Defendant did not respond to Plaintiff but, upon information and belief, removed *Catholic Dictionary* from Defendant's www.tanbooks.com website in or around September 2016. However, upon information and belief, Defendant continued, and continues as of the filing of this Second Amended Verified Complaint, knowingly and willfully to infringe Plaintiff's copyright by creating, advertising, distributing, and selling copies of *Catholic Dictionary* in the U.S.[5] through other websites and platforms, including without limitation the website at www.kobo.com. Attached hereto as Exhibit 12 is a true and correct copy of a receipt for a purchase of Defendant's unauthorized version from www.kobo.com, and as Exhibit 19 true and correct copies of www.kobo.com and www.tanbooks.com screenshots showing the work available for purchase.

82.  Upon information and belief, Defendant derived and/or derives revenue or other benefits from its publication and sale of *Catholic Dictionary*, thus profiting from the unauthorized exploitation of Plaintiff's rights to the detriment of Plaintiff.

**Title 5 – (a) *Holy Abandonment***

83.  Upon information and belief, the original work entitled *La Saint Abandon* was authored by Dom Vital Lehodey and first published in 1919. The work is in the public domain in the U.S.

---

[5] Upon information and belief, Defendant has also sold unauthorized copies of the *Catholic Dictionary* in other countries, including but not limited to the Philippines and Canada.

84. In 2015, Plaintiff purchased all copyright rights in and to the English-language translation of *La Saint Abandon*. That translation, titled *Holy Abandonment*, was, upon information and belief, authored by Fr. Ailbe Luddy (domiciliary of Ireland) of Mount Melleray Abbey, Ireland, and first published in 1934 in Ireland ("*Holy Abandonment*").

85. Upon information and belief, *Holy Abandonment* was not published in the U.S. during the 30-day period following its first publication in Ireland, was never in the public domain in Ireland through expiration of the term of copyright protection in that country, but was in the public domain in the U.S. until its copyright was restored on January 1, 1996 under the URAA.

86. Plaintiff registered *Holy Abandonment* with the U.S. Copyright Office, and received U.S. Copyright Registration No. TX-5-795-296 dated May 26, 2016.

87. Upon information and belief, Defendant began publishing *Holy Abandonment* in or about 2004, but had not published it prior to December 8, 1994 and thus was not and could not be a reliance party under the Copyright Act. On or around August 10, 2016, Plaintiff served upon Defendant a cease and desist letter concerning *Holy Abandonment.* A true and correct copy of that demand letter is attached hereto as Exhibit 20.

88. After being notified of its infringing activities in publishing *Holy Abandonment* in derogation of Plaintiff's exclusive publishing rights, Defendant did not respond to Plaintiff but, upon information and belief, removed *Holy Abandonment* from Defendant's www.tanbooks.com website in or around August 2016. However, upon information and belief, Defendant continued, and continues as of the filing of this Second Amended Verified Complaint, knowingly and willfully to infringe Plaintiff's copyright by creating, advertising, distributing, and selling copies of *Holy Abandonment* in the U.S.[6] through other websites, including without limitation

---

[6] Upon information and belief, Defendant has also sold unauthorized copies of the *Holy Abandonment* in other countries, including but not limited to the Philippines and Canada.

Case 3:16-cv-00695-FDW-DCK   Document 51-1   Filed 07/23/18   Page 24 of 79

www.kobo.com. Attached hereto as <u>Exhibit 12</u> is a true and correct copy of a receipt for a purchase of Defendant's unauthorized version from www.kobo.com, and as <u>Exhibit 21</u> true and correct copies of www.kobo.com and www.tanbooks.com screenshots showing the work available for purchase.

89.     Upon information and belief, Defendant derived and/or derives revenue or other benefits from the publication and sale of *Holy Abandonment* without authorization, thus profiting from the unauthorized exploitation of Plaintiff's rights to the detriment of Plaintiff.

**Title 6 – (b) *De Unione sacerdotis cum Sacerdote e victima***

90.     Upon information and belief, The Dominican Province, Province de France is the owner of the copyright rights in and to the underlying work in Latin entitled *De Unione sacerdotis cum Sacerdote e victima* that was, upon information and belief, authored by Reginald Garrigou-Lagrange (a national and domiciliary of France) and first published in 1948 in Italy ("*De Unione*").

91.     Upon information and belief, *De Unione* was not published in the U.S. during the 30-day period following its first publication in Italy and was never in the public domain in Italy through expiration of the term of copyright protection in that country. Upon information and belief, *De Unione* was in the public domain in the U.S. from 1948 (because it did not comply with formalities imposed at any time by U.S. law, and/or lacked national eligibility in the U.S.), until its copyright was restored on January 1, 1996 under the URAA.

92.     In 2016, Plaintiff entered into a license agreement with The Dominican Province, Province de France (represented by its affiliated entity Les Editions du Cerf) and obtained exclusive rights to publish an English-language translation of *De Unione* (among other works, discussed *infra*). (The Dominican Province, Province de France and Les Editions du Cerf will be

referred to hereinafter collectively as "Dominican Province.") Upon information and belief, the existing English-language translation titled *The Priest in Union with Christ* was authored by Gerald W. Shelton (a national and domiciliary of United Kingdom) and first published in 1951 in Ireland ("*The Priest in Union with Christ*").

93.     Upon information and belief, *The Priest in Union with Christ* was not published in the U.S. during the 30-day period following its first publication in Ireland and was never in the public domain in Ireland through expiration of the term of copyright protection in that country. Upon information and belief, *The Priest in Union with Christ* was in the public domain in the U.S. from 1951 (because it did not comply with formalities imposed at any time by U.S. law, and/or lacked national eligibility in the U.S.), until its copyright was restored on January 1, 1996 under the URAA.

94.     Upon information and belief, Defendant began publishing *The Priest in Union with Christ* in or around 2002, after purportedly entering into an agreement with Dominican Province for certain publishing rights for *The Priest in Union with Christ*.[7]

95.     Upon information and belief, on or around September 13, 2017, Dominican Province sent to Defendant a cease and desist letter concerning *The Priest in Union with Christ* (among other works, as discussed *infra*). Upon information and belief, in that letter Dominican Province proposed a resolution to Defendant to resolve Dominican Province's grievances against Defendant.  Upon information and belief, the proposed resolution terms (referred to hereinafter as the "Defendant/Dominican Province 2017 Mutual Release") included the following:  (a) Defendant would cease publishing all works by Fr. Garrigou-Lagrange and would remove all print and digital copies from sale; (b) Defendant would renounce all rights it may have in the

---

[7] Upon information and belief, Dominican Province has stated that this purported agreement was not honored by Defendant.

works by Fr. Garrigou-Lagrange whether as a licensee, Reliance Party or in any other form; and (c) Dominican Province would renounce any claims it may have against Defendant. Upon information and belief, on or around November 7, 2017, Defendant accepted in writing the terms of the Defendant/Dominican Province 2017 Mutual Release set forth in the letter dated September 13, 2017, and considered the matter closed.

96.     Upon information and belief, on or soon after November 7, 2017, and pursuant to the Defendant/Dominican Province 2017 Mutual Release, Defendant removed *The Priest in Union with Christ* from promotion and sale on Defendant's www.tanbooks.com website. However, upon information and belief, Defendant continued knowingly and willfully to infringe Plaintiff's exclusive right to publish any English-language translation by selling copies of *The Priest in Union with Christ* in the U.S. through another website: www.amazon.com.  Attached hereto as Exhibit 22 is a true and correct copy of a receipt for a purchase of Defendant's unauthorized version from www.amazon.com, and as Exhibit 23 a true and correct copy of a www.amazon.com screenshot showing the work available for purchase after November 7, 2017.

97.     Upon information and belief, Defendant derived revenue or other benefits from its unauthorized publication and sale of *The Priest in Union with Christ* after November 7, 2017, thus profiting from the unauthorized exploitation of Plaintiff's rights to the detriment of Plaintiff.

**Title 7 – (b) *Perfection chrietienne***

98.     Upon information and belief, Dominican Province is the owner of the copyright rights in and to the underlying work in French entitled *Perfection chrietienne* that was, upon information and belief, authored by Reginald Garrigou-Lagrange (a national and domiciliary of France) and first published in 1923 in France ("*Perfection chrietienne*").

99. Upon information and belief, *Perfection chrietienne* was not published in the U.S. during the 30-day period following its first publication in France and was never in the public domain in France through expiration of the term of copyright protection in that country. Upon information and belief, *Perfection chrietienne* was in the public domain in the U.S. from 1923 (because it did not comply with formalities imposed at any time by U.S. law, and/or lacked national eligibility in the U.S.), until its copyright was restored on January 1, 1996 under the URAA.

100. In 2016, Plaintiff entered into a license agreement with Dominican Province and obtained exclusive rights to publish an English-language translation of *Perfection chrietienne*. Upon information and belief, the existing English-language translation titled *Christian Perfection and Contemplation* was authored by Timothea Doyle (a national and domiciliary of U.S.) and first published in 1937 in the U.S. ("*Christian Perfection*").

101. Upon information and belief, *Christian Perfection* had been registered with the U.S. Copyright Office (A111703) when it was published in 1937. Upon information and belief, it was not renewed 28 year later and therefore fell into the public domain in the U.S.

102. Upon information and belief, Defendant began publishing *Christian Perfection* in 2003, having proposed to Dominican Province to pay a certain amount for limited publishing rights for *Christian Perfection*, given that Dominican Province owned rights in the French-language work *Perfection chrietienne*, an original work of authorship fixed in a tangible medium of expression. Upon information and belief, Defendant and Dominican Province never formalized an agreement concerning *Christian Perfection* and/or *Perfection chrietienne*, and Defendant never made any payment therefor; accordingly, any right of Defendant to publish that work or a translation never matured and never existed, upon information and belief.

Case 3:16-cv-00695-FDW-DCK   Document 51-1   Filed 07/23/18   Page 28 of 79

103.    Upon information and belief, the Defendant/Dominican Province 2017 Mutual Release included *Christian Perfection* as one of the works at issue.

104.    Upon information and belief, on or soon after November 7, 2017, and pursuant to the Defendant/Dominican Province 2017 Mutual Release, Defendant removed *Christian Perfection* from promotion and sale on Defendant's www.tanbooks.com website. However, upon information and belief, Defendant continued, and continues as of the filing of this Second Amended Verified Complaint, knowingly and willfully to infringe Plaintiff's exclusive right (to publish any English-language translation) by publishing and selling copies of *Christian Perfection* in the U.S. [8] through various channels such as www.kobo.com and www.barnesandnoble.com.  Attached hereto as Exhibit 12 is a true and correct copy of a receipt for a purchase of Defendant's unauthorized version from www.kobo.com, and as Exhibit 24 a true and correct copy of a www.barnesandnoble.com screenshot showing *Christian Perfection* available for purchase after November 7, 2017.

105.    Upon information and belief, Defendant derived and/or derives revenue or other benefits from the publication and sale of *Christian Perfection* without authorization after November 7, 2017, thus profiting from the unauthorized exploitation of Plaintiff's rights to the detriment of Plaintiff.

**Title 8 – (b) *Le Saveur et son amour pour nous***

106.    Upon information and belief, Dominican Province is the owner of the copyright rights in and to the underlying work in French entitled *Le Saveur et son amour pour nous* that was, upon information and belief, authored by Reginald Garrigou-Lagrange (a national and

---

[8] Upon information and belief, Defendant has also sold unauthorized copies of *Christian Perfection* in other countries, including but not limited to the Philippines and Canada.

domiciliary of France) and first published in 1933 in France ("*Le Saveur*"). *Le Saveur* is an original work of authorship fixed in a tangible medium of expression.

107.    Upon information and belief, *Le Saveur* was not published in the U.S. during the 30-day period following its first publication in France and was never in the public domain in France through expiration of the term of copyright protection in that country. Upon information and belief, *Le Saveur* was in the public domain in the U.S. from 1933 (because it did not comply with formalities imposed at any time by U.S. law, and/or lacked national eligibility in the U.S.), until its copyright was restored on January 1, 1996 under the URAA.

108.    In 2016, Plaintiff entered into a license agreement with Dominican Province and obtained exclusive rights to publish an English-language translation of the *Le Saveur*. Upon information and belief, the existing English-language translation titled *Our Savior and His Love for Us* was authored by A. Bouchard and first published in 1951 in the U.S. ("*Our Savior*"). Upon information and belief, *Our Savior* had been registered with the U.S. Copyright Office (A59321) when it was published in 1951. It was not renewed 28 years later and therefore fell into the public domain in the U.S.

109.    Upon information and belief, Defendant began publishing *Our Savior* in 1998, having made a purported agreement with Dominican Province to pay one-off fee of $300 for the right to print only a paperback edition of *Our Savior*. Upon information and belief, at some point thereafter Defendant began publishing the *Our Savior* in ebook (digital) format for which Defendant did not have publishing rights.

110.    Upon information and belief, the Defendant/Dominican Province 2017 Mutual Release included *Our Savior* as one of the works at issue.

111.    Upon information and belief, on or soon after November 7, 2017, and pursuant to the Defendant/Dominican Province 2017 Mutual Release, Defendant removed *Our Savior* from

promotion and sale on Defendant's www.tanbooks.com website. However, upon information and belief, Defendant continued, and continues as of the filing of this Second Amended Verified Complaint, knowingly and willfully to infringe Plaintiff's exclusive right to publish any English-language translation by publishing and selling copies of *Our Savior* in the U.S.[9] through various channels such as www.kobo.com and www.barnesandnoble.com.  Attached hereto as <u>Exhibits 12 and 22</u> are true and correct copies of receipts for a purchase of Defendant's unauthorized version from www.kobo.com and www.amazon.com, and as <u>Exhibit 25</u> a true and correct copy of a www.barnesandnoble.com screenshot showing the work available for purchase.

112.    Upon information and belief, Defendant derived and/or derives revenue or other benefits from the publication and sale of *Our Savior* without authorization after November 7, 2017, thus profiting from the unauthorized exploitation of Plaintiff's rights to the detriment of Plaintiff.

**Title 9 – (b) *La providence et la confiance en Dieu***

113.    Upon information and belief, Dominican Province is the owner of the copyright rights in and to the underlying work in French entitled *La providence et la confiance en Dieu* that was, upon information and belief, authored by Reginald Garrigou-Lagrange (a national and domiciliary of France) and first published in 1932 in France ("*La providence*").

114.    Upon information and belief, *La providence* was not published in the U.S. during the 30-day period following its first publication in France and was never in the public domain in France through expiration of the term of copyright protection in that country.  Upon information and belief, *La providence* was in the public domain in the U.S. from 1932 (because it did not

---

[9] Upon information and belief, Defendant has also sold unauthorized copies of *Our Savior* in other countries, including but not limited to the Philippines and Canada

comply with formalities imposed at any time by U.S. law, and/or lacked national eligibility in the U.S.), until its copyright was restored on January 1, 1996 under the URAA.

115. In 2016, Plaintiff entered into a license agreement with Dominican Province and obtained exclusive rights to publish an English-language translation of *La providence*. Upon information and belief, the existing English-language translation titled *Providence* was authored by Dom Bede Rose (a national and domiciliary of U.S.) and first published in 1937 in the U.S. ("*Providence*").

116. Upon information and belief, *Providence* had been registered with the U.S. Copyright Office (A103548) when it was published in 1937. It was not renewed 28 year later and therefore fell into the public domain in the U.S.

117. Upon information and belief, Defendant began publishing *Providence* in 1998, having made a purported agreement with Dominican Province to pay a one-time fee of $300 for the right to print only a paperback edition of *Providence*. Upon information and belief, at some point after 1998 Defendant began publishing the *Providence* in ebook (digital) format for which Defendant did not have publishing rights.

118. Upon information and belief, the Defendant/Dominican Province 2017 Mutual Release included *Providence* as one of the works at issue.

119. Upon information and belief, on or soon after November 7, 2017, and pursuant to the Defendant/Dominican Province 2017 Mutual Release, Defendant removed *Providence* from promotion and sale on Defendant's www.tanbooks.com website. However, upon information and belief, Defendant continued, and continues as of the filing of this Second Amended Verified Complaint, knowingly and willfully to infringe Plaintiff's exclusive right to publish any English-

language translation by publishing and selling copies of *Providence* in the U.S.[10] through various channels such as www.barnesandnoble.com and www.kobo.com. Attached hereto as <u>Exhibits 12 and 22</u> are true and correct copies of receipts for a purchase of Defendant's unauthorized version from www.kobo.com and www.amazon.com, and as <u>Exhibit 26</u> a true and correct copy of a www.barnesandnoble.com screenshot showing the work available for purchase after November 7, 2017.

120.    Upon information and belief, Defendant derived and/or derives revenue or other benefits from its publication and sale of *Providence* without authorization after November 7, 2017, thus profiting from the unauthorized exploitation of Plaintiff's rights to the detriment of Plaintiff.

### Title 10 – (b) *L'altra vita e la profondità dell'anima*

121.    Upon information and belief, Dominican Province is the owner of the copyright rights in and to the underlying work in Italian entitled *L'altra vita e la profondità dell'anima* that was, upon information and belief, authored by Reginald Garrigou-Lagrange (a national and domiciliary of France) and first published in 1947 in Italy ("*L'altra vita*").

122.    Upon information and belief, *L'altra vita* was not published in the U.S. during the 30-day period following its first publication in Italy and was never in the public domain in Italy through expiration of the term of copyright protection in that country. Upon information and belief, *L'altra vita* was in the public domain in the U.S. from 1947 (because it did not comply with formalities imposed at any time by U.S. law, and/or lacked national eligibility in the U.S.), until its copyright was restored on January 1, 1996 under the URAA.

---

[10] Upon information and belief, Defendant has also sold unauthorized copies of *Providence* in other countries, including but not limited to the Philippines and Canada.

123.     In 2016, Plaintiff entered into a license agreement with Dominican Province and obtained exclusive rights to publish an English-language translation of the *L'altra vita*.  Upon information and belief, the existing English-language translation titled *Life Everlasting* was authored by Patrick Cummins OSB (a national and domiciliary of U.S.) and first published in 1952 in the U.S. ("*Life Everlasting*").

124.     Upon information and belief, *Life Everlasting* had been registered with the U.S. Copyright Office (A69951) when it was published in 1952. Upon information and belief, it was not renewed 28 year later and therefore fell into the public domain in the U.S.

125.     Upon information and belief, Defendant began publishing *Life Everlasting* in 1988.

126.     Upon information and belief, the Defendant/Dominican Province 2017 Mutual Release included *Life Everlasting* as one of the works at issue, given Dominican Province's rights in *L'altra vita*.

127.     Upon information and belief, on or soon after November 7, 2017, and pursuant to the Defendant/Dominican Province 2017 Mutual Release, Defendant removed *Life Everlasting* from promotion and sale on Defendant's www.tanbooks.com website. However, upon information and belief, Defendant continued, and continues as of the filing of this Second Amended Verified Complaint, knowingly and willfully to infringe Plaintiff's exclusive right to publish any English-language translation by publishing and selling copies of *Life Everlasting* in the U.S.[11] through various channels such as www.amazon.com and www.kobo.com.  Attached hereto as Exhibits 12 and 22 are true and correct copies of receipts for a purchase of Defendant's unauthorized version from www.kobo.com and www.amazon.com, and as Exhibit 27 a true and

---

[11] Upon information and belief, Defendant has also sold unauthorized copies of *Life Everlasting* in other countries, including but not limited to the Philippines and Canada.

correct copy of a www.amazon.com screenshot showing the work available for purchase after November 7, 2017.

128.     Upon information and belief, Defendant derived and/or derives revenue or other benefits from the publication and sale of *Life Everlasting* without authorization after November 7, 2017, thus profiting from the unauthorized exploitation of Plaintiff's rights to the detriment of Plaintiff.

**Title 11 – (a) *Mother of the Saviour* and (b) *La mère du Sauveur et notre vie intérieure***

129.     Upon information and belief, Dominican Province is the owner of the copyright rights in and to the underlying work in French entitled *La mère du Sauveur et notre vie intérieure* that was, upon information and belief, authored by Reginald Garrigou-Lagrange (a national and domiciliary of France) and first published in 1947 in France ("*La mère du Sauveur*").

130.     Upon information and belief, *La mère du Sauveur* was not published in the U.S. during the 30-day period following its first publication in France and was never in the public domain in France through expiration of the term of copyright protection in that country.  Upon information and belief, *La mère du Sauveur* was in the public domain in the U.S. from 1947 (because it did not comply with formalities imposed at any time by U.S. law, and/or lacked national eligibility in the U.S.), until its copyright was restored on January 1, 1996 under the URAA.

131.     In 2016, Plaintiff entered into a license agreement with Dominican Province and obtained exclusive rights to publish an English-language translation of *La mère du Sauveur*.

132.     In 2015, Plaintiff purchased all copyright rights in and to the existing English-language translation entitled *Mother of the Saviour* that was, upon information and belief,

authored by Fr. Bernard Kelly (a national or domiciliary of Ireland) and first published in 1949 in Ireland ("*Mother of the Saviour*").

133.    Upon information and belief, *Mother of the Saviour* was not published in the U.S. during the 30-day period following its first publication in Ireland and was never in the public domain in Ireland through expiration of the term of copyright protection in that country.  Upon information and belief, *Mother of the Saviour* was in the public domain in the U.S. from 1949 (because it did not comply with formalities imposed at any time by U.S. law, and/or lacked national eligibility in the U.S.), until its copyright was restored on January 1, 1996 under the URAA.

134.    Upon information and belief, Defendant began publishing *Mother of the Saviour* in or around 1994.

135.    Upon information and belief, the Defendant/Dominican Province 2017 Mutual Release included *Mother of the Saviour* as one of the works at issue.

136.    Upon information and belief, on or soon after November 7, 2017, and pursuant to the Defendant/Dominican Province 2017 Mutual Release, Defendant removed *Mother of the Saviour* from promotion and sale on Defendant's www.tanbooks.com website. However, upon information and belief, Defendant continued, and continues as of the filing of this Second Amended Verified Complaint, knowingly and willfully to infringe Plaintiff's exclusive right to publish any English-language translation by publishing and selling copies of *Mother of the Saviour* in the U.S. [12] through various channels such as www.kobo.com and www.barnesandnoble.com.  Attached hereto as Exhibit 12 is a true and correct copy of a receipt for a purchase of Defendant's unauthorized version from www.kobo.com, and as Exhibit 28 a

_____

[12] Upon information and belief, Defendant has also sold unauthorized copies of *Mother of the Saviour* in other countries, including but not limited to the Philippines and Canada.

true and correct copy of a www.barnesandnoble.com screenshot showing the work available for purchase after November 7, 2017.

137.    Upon information and belief, Defendant derived and/or derives revenue or other benefits from the publication and sale of *Mother of the Saviour* without authorization after November 7, 2017, thus profiting from the unauthorized exploitation of Plaintiff's rights to the detriment of Plaintiff.

**Title 12 – (a) *The Three Ways of the Spiritual Life* and (b) *Les trois conversions et les trois voies***

138.    Upon information and belief, Dominican Province is the owner of the copyright rights in and to the underlying work in French entitled *Les trois conversions et les trois voies* that was, upon information and belief, authored by Reginald Garrigou-Lagrange (a national and domiciliary of France) and first published in 1933 in France ("*Les trois conversions*").

139.    Upon information and belief, *Les trois conversions* was not published in the U.S. during the 30-day period following its first publication in France and was never in the public domain in France through expiration of the term of copyright protection in that country.  Upon information and belief, *Les trois conversions* was in the public domain in the U.S. from 1933 (because it did not comply with formalities imposed at any time by U.S. law, and/or lacked national eligibility in the U.S.), until its copyright was restored on January 1, 1996 under the URAA.

140.    In 2016, Plaintiff entered into a license agreement with Dominican Province and obtained exclusive rights to publish an English-language translation of the *Les trois conversions*.

141.    In 2016, Plaintiff purchased all copyright rights in and to the existing English-language translation entitled *The Three Ways of the Spiritual Life* that was, upon information and

belief, authored by Burns Oates & Washbourne Ltd and first published in 1938 in the United Kingdom ("*The Three Ways*").

142.    Upon information and belief, *The Three Ways* was not published in the U.S. during the 30-day period following its first publication in the UK and was never in the public domain in the UK through expiration of the term of copyright protection in that country.  Upon information and belief, *The Three Ways* was in the public domain in the U.S. from 1938 (because it did not comply with formalities imposed at any time by U.S. law, and/or lacked national eligibility in the U.S.), until its copyright was restored on January 1, 1996 under the URAA.

143.    Upon information and belief, Defendant began publishing *The Three Ways* in or around 1977 and, in 2002, created a derivative of *The Three Ways* entitled *The Three Conversions in the Spiritual Life* ("*The Three Conversions*").

144.    Upon information and belief, the Defendant/Dominican Province 2017 Mutual Release included *The Three Conversions* as one of the works at issue.

145.    Upon information and belief, on or soon after November 7, 2017, and pursuant to the Defendant/Dominican Province 2017 Mutual Release, Defendant removed *The Three Conversions* from promotion and sale on Defendant's www.tanbooks.com website.  However, upon information and belief, Defendant continued, and continues as of the filing of this Second Amended Verified Complaint, knowingly and willfully to infringe Plaintiff's exclusive right to publish any English-language translation by publishing and selling copies of *The Three Conversions* in the U.S.[13] through various channels such as www.kobo.com.  Attached hereto as Exhibits 12 and 22 are true and correct copies of receipts for a purchase of Defendant's unauthorized version from www.kobo.com and www.amazon.com, and as Exhibit 29 a true and

---

[13] Upon information and belief, Defendant has also sold unauthorized copies of *The Three Conversions* in other countries, including but not limited to the Philippines and Canada.

Case 3:16-cv-00695-FDW-DCK   Document 51-1   Filed 07/23/18   Page 38 of 79

correct copy of a www.amazon.com screenshot showing the work available for purchase after November 7, 2017.

146.    Upon information and belief, Defendant derived and/or derives revenue or other benefits from the publication and sale of *The Three Conversions* without authorization after November 7, 2017, thus profiting from the unauthorized exploitation of Plaintiff's rights to the detriment of Plaintiff.

**Title 13 – *La prédestination des saints et la grâce***

147.    Upon information and belief, Dominican Province is the owner of the copyright rights in and to the underlying work in French entitled *La prédestination des saints et la grâce* that was, upon information and belief, authored by Reginald Garrigou-Lagrange (a national and domiciliary of France) and first published in 1936 in France ("*La prédestination*").

148.    Upon information and belief, *La prédestination* was not published in the U.S. during the 30-day period following its first publication in France and was never in the public domain in France through expiration of the term of copyright protection in that country. Upon information and belief, *La prédestination* was in the public domain in the U.S. from 1936 (because it did not comply with formalities imposed at any time by U.S. law, and/or lacked national eligibility in the U.S.), until its copyright was restored on January 1, 1996 under the URAA.

149.    In 2016, Plaintiff entered into a license agreement with Dominican Province and obtained exclusive rights to publish an English-language translation of the *La prédestination*. Upon information and belief, the existing English-language translation titled *Predestination* was authored by Dom Bede Rose (a national and domiciliary of U.S.) and first published in 1939 in the U.S. ("*Predestination*").

150.    Upon information and belief, *Predestination* had been registered with the U.S. Copyright Office (A132738) when it was published in 1939. It was not renewed 28 year later and therefore fell into the public domain in the U.S.

151.    Upon information and belief, Defendant began publishing *Predestination* in or around 1998, having made a purported agreement with Dominican Province to pay one-time fee of $300 for the right to print only a paperback edition of *Predestination*.  Upon information and belief, Defendant began publishing *Predestination* in ebook (digital) format at some point after 1998.

152.    Upon information and belief, the Defendant/Dominican Province 2017 Mutual Release included *Predestination* as one of the works at issue.

153.    Upon information and belief, on or soon after November 7, 2017, and pursuant to the Defendant/Dominican Province 2017 Mutual Release, Defendant removed *Predestination* from promotion and sale on Defendant's www.tanbooks.com website. However, upon information and belief, Defendant continued, and continues as of the filing of this Second Amended Verified Complaint, knowingly and willfully to infringe Plaintiff's exclusive right to publish any English-language translation by publishing and selling copies of *Predestination* in the U.S. [14] through various channels such as www.amazon.com, www.kobo.com, and www.barnesandnoble.com.  Attached hereto as <u>Exhibit 12</u> is a true and correct copy of a receipt for a purchase of Defendant's unauthorized version from www.kobo.com, and as <u>Exhibit 30</u> a true and correct copy of a www.barnesandnoble.com screenshot showing the work available for purchase after November 7, 2017.

---

[14] Upon information and belief, Defendant has also sold unauthorized copies of *Predestination* in other countries, including but not limited to the Philippines and Canada.

154.    Upon information and belief, Defendant derived and/or derives revenue or other benefits from the publication and sale of *Predestination* without authorization after November 7, 2017, thus profiting from the unauthorized exploitation of Plaintiff's rights to the detriment of Plaintiff.

**Summary**

155.    Defendant's above-described actions have been willful and in bad faith.

156.    Defendant is violating Plaintiff's intellectual property rights in a deliberate effort to profit or otherwise benefit from the unauthorized use, distribution, publication, and sale of Plaintiff's Six Owned Works, and the Eleven Exclusively Licensed Works, in which Plaintiff has invested significant resources in order to have exclusive rights to use, distribute, publish, and/or sell such works.

157.    Defendant is profiting from Plaintiff's valuable intellectual property without compensating Plaintiff, thus causing injury to Plaintiff.  Defendant is benefiting from its use of misleading advertising and/or false CMI in multiple publications as described above, thus causing injury to Plaintiff and the public.  If Defendant's conduct is not enjoined, it will continue to injure Plaintiff and the public.  Plaintiff has no adequate remedy at law.

**FIRST CLAIM FOR RELIEF FOR**
**COPYRIGHT INFRINGEMENT UNDER FEDERAL LAW**
**(17 U.S.C. § 101 *et seq.*)**

**Title 1 – (a) *Fundamentals of Catholic Dogma* and (b) *Grundriß der katholischen Dogmatik***

158.    The allegations of all foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

Case 3:16-cv-00695-FDW-DCK   Document 51-1   Filed 07/23/18   Page 41 of 79

159.    Plaintiff is, and has been since 2010, the sole and exclusive owner of all copyright rights in and to the English-language work *Fundamentals*, which is the subject of U.S. Copyright Registration No. TX-6-484-647.  *Fundamentals* is an original work of authorship fixed in a tangible medium of expression.  Plaintiff is, and has been since 2009, the exclusive licensee of the right to publish an English-language translation of the German original work *Grundriß,* which original is the subject of U.S. Copyright Registration No. TX-6-484-646.  *Grundriß* is an original work of authorship fixed in a tangible medium of expression.

160.    Defendant does not own or otherwise hold any valid copyright rights in *Fundamentals* in the U.S.  Defendant does not own or otherwise hold any valid right to publish an English-language translation of *Grundriß* in the U.S.

161.    Defendant had access to *Fundamentals* and to *Grundriß*.

162.    Without Plaintiff's authorization, Defendant copied, published, displayed, advertised, distributed, and/or sold *Fundamentals*, and/or a substantially similar reproduction thereof, in the U.S. in printed (paper) format through Defendant's www.tanbooks.com website, and other websites that may be identified during discovery, in violation of Section 501 of the Copyright Act.  Without Plaintiff's authorization, Defendant copied, published, displayed, advertised, distributed, and/or sold an English-language translation of *Grundriß*, and/or a substantially similar reproduction thereof, in the U.S. in printed (paper) format through Defendant's www.tanbooks.com website, and other websites that may be identified during discovery, in violation of Section 501 of the Copyright Act.

163.    Defendant's aforesaid acts of infringement were willful, intentional, and in reckless disregard of the rights of Plaintiff.

164.    Defendant has received and/or continues to receive substantial revenue and profits arising out of the unauthorized use and exploitation of *Fundamentals* and *Grundriß* to which

Case 3:16-cv-00695-FDW-DCK   Document 51-1   Filed 07/23/18   Page 42 of 79

Defendant is not entitled and, as a direct and proximate result of Defendant's acts of copyright infringement, Plaintiff has sustained and will sustain monetary damage, loss, and injury.

165.    As a result of Defendant's acts of infringement alleged herein and in accordance with Section 504(b) of the Copyright Act, Plaintiff is entitled to recover from Defendant the damages Plaintiff has sustained and will sustain, and any profits obtained by Defendant as a result of or attributable to the infringement.  At present, the amount of such damages and profits cannot be fully ascertained by Plaintiff.

166.    The infringement of Plaintiff's copyright rights by Defendant has caused irreparable injury to Plaintiff, and, unless enjoined by this Court, such infringement will continue to cause substantial and irreparable injury.  In accordance with Section 502 of the Copyright Act, Plaintiff is entitled to injunctive relief to prevent Defendant from further copyright infringement.

**SECOND CLAIM FOR RELIEF FOR
COPYRIGHT INFRINGEMENT UNDER FEDERAL LAW
(17 U.S.C. § 101 *et seq.*)**

**Title 2 – *This Tremendous Lover***

167.    The allegations of all foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

168.    Plaintiff is, and has been since March 1, 2018, the sole and exclusive owner of all copyright rights in and to the English-language work *This Tremendous Lover*.  *This Tremendous Lover* is an original work of authorship fixed in a tangible medium of expression.

169.    Defendant does not own or otherwise hold any valid copyright rights in *This Tremendous Lover* in the U.S.

170.    Defendant had access to *This Tremendous Lover*.

171.    Without Plaintiff's authorization, Defendant copied, published, displayed, advertised, distributed, and/or sold *This Tremendous Lover*, and/or a substantially similar reproduction thereof, in the U.S. in printed (paper) format and in electronic format (ebook) through Defendant's www.tanbooks.com website, and other websites that may be identified during discovery, in violation of Section 501 of the Copyright Act.

172.    Defendant's aforesaid acts of infringement were willful, intentional, and in reckless disregard of the rights of Plaintiff.

173.    Defendant has received and/or continues to receive substantial revenue and profits arising out of the unauthorized use and exploitation of *This Tremendous Lover* to which Defendant is not entitled and, as a direct and proximate result of Defendant's acts of copyright infringement, Plaintiff has sustained and will sustain monetary damage, loss, and injury.

174.    As a result of Defendant's acts of infringement alleged herein and in accordance with Section 504(b) of the Copyright Act, Plaintiff is entitled to recover from Defendant the damages Plaintiff has sustained and will sustain, and any profits obtained by Defendant as a result of or attributable to the infringement.  At present, the amount of such damages and profits cannot be fully ascertained by Plaintiff.

175.    The infringement of Plaintiff's copyright rights by Defendant has caused irreparable injury to Plaintiff, and, unless enjoined by this Court, such infringement will continue to cause substantial and irreparable injury.  In accordance with Section 502 of the Copyright Act, Plaintiff is entitled to injunctive relief to prevent Defendant from further copyright infringement.

### THIRD CLAIM FOR RELIEF FOR
### COPYRIGHT INFRINGEMENT UNDER FEDERAL LAW
### (17 U.S.C. § 101 *et seq.*)

**Title 3 – (a) *The Curé d'Ars* and (b) *Le curé d'Ars***

176.    The allegations of all foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

177.    Plaintiff is, and has been since 2015, the sole and exclusive owner of all copyright rights in and to the English-language work *The Curé d'Ars*, which is the subject of U.S. Copyright Registration No. TX5-795-332.   *The Curé d'Ars* is an original work of authorship fixed in a tangible medium of expression.   Plaintiff is, and has been since 2015, the exclusive licensee of the right to publish an English-language translation of the French work *Le curé d'Ars*, an original work of authorship fixed in a tangible medium of expression

178.    Defendant does not own or otherwise hold any valid copyright rights in *The Curé d'Ars* in the U.S.   Defendant does not own or otherwise hold any valid right to publish an English-language translation of *Le curé d'Ars* in the U.S.

179.    Defendant had access to *The Curé d'Ars* and to *Le curé d'Ars*.

180.    Without Plaintiff's authorization, Defendant copied, published, displayed, advertised, distributed, and/or sold *The Curé d'Ars* and/or a substantially similar reproduction thereof, in the U.S. in printed (paper) format and in electronic format (ebook) through Defendant's www.tanbooks.com website, and other websites that may be identified during discovery, in violation of Section 501 of the Copyright Act.

181.    Without Plaintiff's authorization, Defendant copied, published, displayed, advertised, distributed, and/or sold an English-language translation of *Le curé d'Ars*, and/or a substantially similar reproduction thereof, in the U.S. in printed (paper) format and in electronic format (ebook) through Defendant's www.tanbooks.com website, and other websites that may be identified during discovery, in violation of Section 501 of the Copyright Act.

182.    Defendant's aforesaid acts of infringement were willful, intentional, and in reckless disregard of the rights of Plaintiff.

183.     Defendant has received and/or continues to receive substantial revenue and profits arising out of its unauthorized use and exploitation of *The Curé d'Ars* and to *Le curé d'Ars* to which Defendant is not entitled and, as a direct and proximate result of Defendant's acts of copyright infringement, Plaintiff has sustained and will sustain monetary damage, loss, and injury.

184.     As a result of Defendant's acts of infringement alleged herein and in accordance with Section 504(b) of the Copyright Act, Plaintiff is entitled to recover from Defendant the damages Plaintiff has sustained and will sustain, and any profits obtained by Defendant as a result of or attributable to the infringement.  At present, the amount of such damages and profits cannot be fully ascertained by Plaintiff.

185.     The infringement of Plaintiff's copyright rights by Defendant has caused irreparable injury to Plaintiff, and, unless enjoined by this Court, such infringement will continue to cause substantial and irreparable injury.  In accordance with Section 502 of the Copyright Act, Plaintiff is entitled to injunctive relief to prevent Defendant from further copyright infringement.

**FOURTH CLAIM FOR RELIEF FOR
COPYRIGHT INFRINGEMENT UNDER FEDERAL LAW
(17 U.S.C. § 101 *et seq.*)**

**Title 4 – *Catholic Encyclopaedic Dictionary***

186.     The allegations of all foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

187.     Plaintiff is, and has been since 2015, the sole and exclusive licensee of the exclusive right to publish the English-language work *Catholic Dictionary*, which is the subject of U.S. Copyright Registration Nos. A33195 and R227390, A30836 and R631053.  *Catholic Dictionary* is an original work of authorship fixed in a tangible medium of expression.

188.    Defendant does not own or otherwise hold any valid right to publish *Catholic Dictionary* in the U.S.

189.    Defendant had access to *Catholic Dictionary*.

190.    Without Plaintiff's authorization, Defendant copied, published, displayed, advertised, distributed, and/or sold *Catholic Dictionary* and/or a substantially similar reproduction thereof, in the U.S. in printed (paper) format and in electronic format (ebook) through Defendant's www.tanbooks.com website, and other websites that may be identified during discovery, in violation of Section 501 of the Copyright Act.

191.    Defendant's aforesaid acts of infringement were willful, intentional, and in reckless disregard of the rights of Plaintiff.

192.    Defendant has received revenue and profits arising out of the use and exploitation of *Catholic Dictionary* to which Defendant is not entitled and, as a direct and proximate result of Defendant's acts of copyright infringement, Plaintiff has sustained and will sustain monetary damage, loss, and injury.

193.    As a result of Defendant's acts of infringement alleged herein and in accordance with Section 504(b) of the Copyright Act, Plaintiff is entitled to recover from Defendant the damages Plaintiff has sustained and will sustain, and any profits obtained by Defendant as a result of or attributable to the infringement.  At present, the amount of such damages and profits cannot be fully ascertained by Plaintiff.

194.    The infringement of Plaintiff's copyright rights by Defendant has caused irreparable injury to Plaintiff, and, unless enjoined by this Court, such infringement will continue to cause irreparable injury.  In accordance with Section 502 of the Copyright Act, Plaintiff is entitled to injunctive relief to prevent Defendant from further copyright infringement.

## FIFTH CLAIM FOR RELIEF FOR
## COPYRIGHT INFRINGEMENT UNDER FEDERAL LAW
## (17 U.S.C. § 101 *et seq.*)

**Title 5 – (a) *Holy Abandonment***

195.    The allegations of all foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

196.    Plaintiff is, and has been since 2015, the sole and exclusive owner of all copyright rights in and to the English-language work *Holy Abandonment*, which is the subject of U.S. Copyright Registration No. TX-5-795-296. *Holy Abandonment* is an original work of authorship fixed in a tangible medium of expression.

197.    Defendant does not own or otherwise hold any valid copyright rights in *Holy Abandonment* in the U.S.

198.    Defendant had access to *Holy Abandonment*.

199.    Without Plaintiff's authorization, Defendant copied, published, displayed, advertised, distributed, and/or sold *Holy Abandonment*, and/or a substantially similar reproduction thereof, in the U.S. in printed (paper) format and in electronic format (ebook) on Defendant's www.tanbooks.com website, and other websites that may be identified during discovery, in violation of Section 501 of the Copyright Act.

200.    Defendant's aforesaid acts of infringement were willful, intentional, and in reckless disregard of the rights of Plaintiff.

201.    Defendant has received revenue and profits arising out of the use and exploitation of *Holy Abandonment* to which Defendant is not entitled and, as a direct and proximate result of Defendant's acts of copyright infringement, Plaintiff has sustained and will sustain monetary damage, loss, and injury.

202.    As a result of Defendant's acts of infringement alleged herein and in accordance with Section 504(b) of the Copyright Act, Plaintiff is entitled to recover from Defendant the damages Plaintiff has sustained and will sustain, and any profits obtained by Defendant as a result of or attributable to the infringement.  At present, the amount of such damages and profits cannot be fully ascertained by Plaintiff.

203.    The infringement of Plaintiff's copyright rights by Defendant has caused irreparable injury to Plaintiff, and, unless enjoined by this Court, such infringement will continue to cause irreparable injury.  In accordance with Section 502 of the Copyright Act, Plaintiff is entitled to injunctive relief to prevent Defendant from further copyright infringement.

## SIXTH CLAIM FOR RELIEF FOR
## COPYRIGHT INFRINGEMENT UNDER FEDERAL LAW
## (17 U.S.C. § 101 *et seq.*)

**Title 6 – (b) *De Unione sacerdotis cum Sacerdote e victima***

204.    The allegations of all foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

205.    Plaintiff is, and has been since 2016, the sole and exclusive licensee of the exclusive right to publish an English-language translation of the Latin work *De Unione,* an original work of authorship fixed in a tangible medium of expression.  *De Unione* was first published outside the U.S., in a country that is a signatory to the Berne Convention, and was not published simultaneously in the U.S.; thus, *De Unione* is not a "United States work" under the Copyright Act and is exempt from the registration requirement in Section 411 of the Copyright Act.

206.    Defendant does not own or otherwise hold any valid right to publish an English-language translation of *De Unione* in the U.S.

207. Defendant had access to *De Unione* and/or an English-language version thereof.

208. Without Plaintiff's authorization, and in violation of Plaintiff's exclusive publication rights, Defendant copied, published, displayed, advertised, distributed, and/or sold an English translation of *De Unione* and/or a substantially similar reproduction thereof, in the U.S. in printed (paper) format on the www.amazon.com website, and other websites that may be identified during discovery, in violation of Section 501 of the Copyright Act.

209. Defendant's aforesaid acts of infringement were willful, intentional, and in reckless disregard of the rights of Plaintiff.

210. Defendant has received revenue and profits arising out of the use and exploitation of an English-language translation of *De Unione* to which Defendant is not entitled and, as a direct and proximate result of Defendant's acts of copyright infringement, Plaintiff has sustained and will sustain monetary damage, loss, and injury.

211. As a result of Defendant's acts of infringement alleged herein and in accordance with Section 504(b) of the Copyright Act, Plaintiff is entitled to recover from Defendant the damages Plaintiff has sustained and will sustain, and any profits obtained by Defendant as a result of or attributable to the infringement. At present, the amount of such damages and profits cannot be fully ascertained by Plaintiff.

212. The infringement of Plaintiff's copyright rights by Defendant has caused irreparable injury to Plaintiff, and, unless enjoined by this Court, such infringement will continue to cause irreparable injury. In accordance with Section 502 of the Copyright Act, Plaintiff is entitled to injunctive relief to prevent Defendant from further copyright infringement.

## SEVENTH CLAIM FOR RELIEF FOR
## COPYRIGHT INFRINGEMENT UNDER FEDERAL LAW
## (17 U.S.C. § 101 *et seq.*)

**Title 7 – (b) *Perfection chrietienne***

213.    The allegations of all foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

214.    Plaintiff is, and has been since 2016, the sole and exclusive licensee of the exclusive right to publish an English-language translation of the French work *Perfection chrietienne*, an original work of authorship fixed in a tangible medium of expression. *Perfection chrietienne* was first published outside the U.S., in a country that is a signatory to the Berne Convention, and was not published simultaneously in the U.S.; thus, *Perfection chrietienne* is not a "United States work" under the Copyright Act and is exempt from the registration requirement in Section 411 of the Copyright Act.

215.    Defendant does not own or otherwise hold any valid right to publish an English-language translation of *Perfection chrietienne* in the U.S.

216.    Defendant had access to *Perfection chrietienne* and/or an English-language translation thereof.

217.    Without Plaintiff's authorization, and in violation of Plaintiff's exclusive publication rights, Defendant copied, published, displayed, advertised, distributed, and/or sold an English-language translation of *Perfection chrietienne* and/or a substantially similar reproduction thereof, in the U.S. in electronic format (ebook) on the www.barnesandnoble.com and www.kobo.com websites, and other websites that may be identified during discovery, in violation of Section 501 of the Copyright Act.

51

218.    Defendant's aforesaid acts of infringement were willful, intentional, and in reckless disregard of the rights of Plaintiff.

219.    Defendant has received revenue and profits arising out of the use and exploitation of an English-language translation of *Perfection chrietienne* to which Defendant is not entitled and, as a direct and proximate result of Defendant's acts of copyright infringement, Plaintiff has sustained and will sustain monetary damage, loss, and injury.

220.    As a result of Defendant's acts of infringement alleged herein and in accordance with Section 504(b) of the Copyright Act, Plaintiff is entitled to recover from Defendant the damages Plaintiff has sustained and will sustain, and any profits obtained by Defendant as a result of or attributable to the infringement.  At present, the amount of such damages and profits cannot be fully ascertained by Plaintiff.

221.    The infringement of Plaintiff's copyright rights by Defendant has caused irreparable injury to Plaintiff, and, unless enjoined by this Court, such infringement will continue to cause irreparable injury.  In accordance with Section 502 of the Copyright Act, Plaintiff is entitled to injunctive relief to prevent Defendant from further copyright infringement.

### EIGHTH CLAIM FOR RELIEF FOR
### COPYRIGHT INFRINGEMENT UNDER FEDERAL LAW
### (17 U.S.C. § 101 *et seq.*)

**Title 8 – (b)** *Le Saveur et son amour pour nous*

222.    The allegations of all foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

223.    Plaintiff is, and has been since 2016, the sole and exclusive licensee of the exclusive, valid, and enforceable right to publish an English-language translation of the French original work *Le Saveur*, an original work of authorship fixed in a tangible medium of expression.

*Le Saveur* was first published outside the U.S., in a country that is a signatory to the Berne Convention, and was not published simultaneously in the U.S.; thus, *Le Saveur* is not a "United States work" under the Copyright Act and is exempt from the registration requirement in Section 411 of the Copyright Act.

224.     Defendant does not own or otherwise hold any valid right or other current permission to publish an English-language translation of *Le Saveur* in the U.S.

225.     Defendant had access to *Le Saveur* and/or an English-language version thereof.

226.     Without Plaintiff's authorization, and in violation of Plaintiff's exclusive publication rights, Defendant copied, published, displayed, advertised, distributed, and/or sold an English-language translation of *Le Saveur* and/or a substantially similar reproduction thereof, in the U.S. in printed (paper) format and/or in electronic format (ebook) on the www.amazon.com, www.barnesandnoble.com, and www.kobo.com websites, and other websites that may be identified during discovery, in violation of Section 501 of the Copyright Act.

227.     Defendant's aforesaid acts of infringement were willful, intentional, and in reckless disregard of the rights of Plaintiff.

228.     Defendant has received revenue and profits arising out of the use and exploitation of an English-language translation of *Le Saveur* to which Defendant is not entitled and, as a direct and proximate result of Defendant's acts of copyright infringement, Plaintiff has sustained and will sustain monetary damage, loss, and injury.

229.     As a result of Defendant's acts of infringement alleged herein and in accordance with Section 504(b) of the Copyright Act, Plaintiff is entitled to recover from Defendant the damages Plaintiff has sustained and will sustain, and any profits obtained by Defendant as a result of or attributable to the infringement.  At present, the amount of such damages and profits cannot be fully ascertained by Plaintiff.

230.    The infringement of Plaintiff's copyright rights by Defendant has caused irreparable injury to Plaintiff, and, unless enjoined by this Court, such infringement will continue to cause irreparable injury.   In accordance with Section 502 of the Copyright Act, Plaintiff is entitled to injunctive relief to prevent Defendant from further copyright infringement.

## NINTH CLAIM FOR RELIEF FOR
## COPYRIGHT INFRINGEMENT UNDER FEDERAL LAW
### (17 U.S.C. § 101 *et seq.*)

**Title 9 – (b) *La providence et la confiance en Dieu***

231.    The allegations of all foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

232.    Plaintiff is, and has been since 2016, the sole and exclusive licensee of the exclusive, valid, and enforceable right to publish an English-language translation of the French original work *La providence*, an original work of authorship fixed in a tangible medium of expression.  *La providence* was first published outside the U.S., in a country that is a signatory to the Berne Convention, and was not published simultaneously in the U.S.; thus, *La providence* is not a "United States work" under the Copyright Act and is exempt from the registration requirement in Section 411 of the Copyright Act.

233.    Defendant does not own or otherwise hold any valid right or other current permission to publish an English-language translation of *La providence* in the U.S.

234.    Defendant had access to *La providence* and/or an English-language version thereof.

235.    Without Plaintiff's authorization, and in violation of Plaintiff's exclusive publication rights, Defendant copied, published, displayed, advertised, distributed, and/or sold an English-language translation of *La providence* and/or a substantially similar reproduction thereof, in the U.S. in printed (paper) format and in electronic format (ebook) on www.amazon.com and

www.kobo.com websites, and other websites that may be identified during discovery, in violation of Section 501 of the Copyright Act.

236.     Defendant's acts of infringement were willful, intentional, and in reckless disregard of the rights of Plaintiff.

237.     Defendant has received revenue and profits arising out of the use and exploitation of an English-language translation of *La providence* to which Defendant is not entitled and, as a direct and proximate result of Defendant's acts of copyright infringement, Plaintiff has sustained and will sustain monetary damage, loss, and injury.

238.     As a result of Defendant's acts of infringement alleged herein and in accordance with Section 504(b) of the Copyright Act, Plaintiff is entitled to recover from Defendant the damages Plaintiff has sustained and will sustain, and any profits obtained by Defendant as a result of or attributable to the infringement.  At present, the amount of such damages and profits cannot be fully ascertained by Plaintiff.

239.     The infringement of Plaintiff's copyright rights by Defendant has caused irreparable injury to Plaintiff, and, unless enjoined by this Court, such infringement will continue to cause irreparable injury.  In accordance with Section 502 of the Copyright Act, Plaintiff is entitled to injunctive relief to prevent Defendant from further copyright infringement.

### TENTH CLAIM FOR RELIEF FOR
### COPYRIGHT INFRINGEMENT UNDER FEDERAL LAW
### (17 U.S.C. § 101 *et seq.*)

**Title 10 – (b) *L'altra vita e la profondità dell'anima***

240.     The allegations of all foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

241.    Plaintiff is, and has been since 2016, the sole and exclusive licensee of the exclusive, valid, and enforceable right to publish an English-language translation of the Italian original work *L'altra vita*, an original work of authorship fixed in a tangible medium of expression. *L'altra vita* was first published outside the U.S., in a country that is a signatory to the Berne Convention, and was not published simultaneously in the U.S.; thus, *L'altra vita* is not a "United States work" under the Copyright Act and is exempt from the registration requirement in Section 411 of the Copyright Act.

242.    Defendant does not own or otherwise hold any valid right or other current permission to publish an English-language translation of *L'altra vita* in the U.S.

243.    Defendant had access to *L'altra vita* and/or an English-language version thereof.

244.    Without Plaintiff's authorization, and in violation of Plaintiff's exclusive publication rights, Defendant copied, published, displayed, advertised, distributed, and/or sold an English-language translation of *L'altra vita* and/or a substantially similar reproduction thereof, in the U.S. in printed (paper) format and in electronic format (ebook) on www.amazon.com and www.kobo.com websites, and other websites that may be identified during discovery, in violation of Section 501 of the Copyright Act.

245.    Defendant's acts of infringement were willful, intentional, and in reckless disregard of the rights of Plaintiff.

246.    Defendant has received revenue and profits arising out of the use and exploitation of an English-language translation of *L'altra vita* to which Defendant is not entitled and, as a direct and proximate result of Defendant's acts of copyright infringement, Plaintiff has sustained and will sustain monetary damage, loss, and injury.

247.    As a result of Defendant's acts of infringement alleged herein and in accordance with Section 504(b) of the Copyright Act, Plaintiff is entitled to recover from Defendant the

damages Plaintiff has sustained and will sustain, and any profits obtained by Defendant as a result of or attributable to the infringement. At present, the amount of such damages and profits cannot be fully ascertained by Plaintiff.

248. The infringement of Plaintiff's copyright rights by Defendant has caused irreparable injury to Plaintiff, and, unless enjoined by this Court, such infringement will continue to cause irreparable injury. In accordance with Section 502 of the Copyright Act, Plaintiff is entitled to injunctive relief to prevent Defendant from further copyright infringement.

### ELEVENTH CLAIM FOR RELIEF FOR COPYRIGHT INFRINGEMENT UNDER FEDERAL LAW (17 U.S.C. § 101 *et seq.*)

**Title 11 – (a) *Mother of the Saviour* and (b) *La mère du Sauveur et notre vie intérieure***

249. The allegations of all foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

250. Plaintiff is, and has been since 2015, the sole and exclusive owner of all copyright rights in and to the English-language work *Mother of the Saviour*. *Mother of the Saviour* is an original work of authorship fixed in a tangible medium of expression. Plaintiff is, and has been since 2016, the exclusive licensee of the right to publish an English-language translation of the French original work *La mère du Sauveur*, an original work of authorship fixed in a tangible medium of expression.

251. Defendant does not own or otherwise hold any valid copyright rights in *Mother of the Saviour* in the U.S. Defendant does not own or otherwise hold any valid right to publish an English-language translation of *La mère du Sauveur* in the U.S.

252. *Mother of the Saviour* was first published outside the U.S., in a country that is a signatory to the Berne Convention, and was not published simultaneously in the U.S.; thus,

*Mother of the Saviour* is not a "United States work" under the Copyright Act and is exempt from the registration requirement in Section 411 of the Copyright Act.

253.     *La mère du Sauveur* was first published outside the U.S., in a country that is a signatory to the Berne Convention, and was not published simultaneously in the U.S.; thus, *La mère du Sauveur* is not a "United States work" under the Copyright Act and is exempt from the registration requirement in Section 411 of the Copyright Act.

254.     Defendant had access to *Mother of the Saviour* and to *La mère du Sauveur*.

255.     Without Plaintiff's authorization, and in violation of Plaintiff's exclusive publication rights, Defendant copied, published, displayed, advertised, distributed, and/or sold *Mother of the Saviour* and/or a substantially similar reproduction thereof, in the U.S. in electronic format (ebook) on www.barnesandnoble.com and www.kobo.com websites, and other websites that may be identified during discovery, in violation of Section 501 of the Copyright Act.

256.     Without Plaintiff's authorization, Defendant copied, published, displayed, advertised, distributed, and/or sold an English-language translation of *La mère du Sauveur*, and/or a substantially similar reproduction thereof, in the U.S. in electronic format (ebook) on www.barnesandnoble.com and www.kobo.com websites, and other websites that may be identified during discovery, in violation of Section 501 of the Copyright Act.

257.     Defendant's acts of infringement were willful, intentional, and in reckless disregard of the rights of Plaintiff.

258.     Defendant has received revenue and profits arising out of the use and exploitation of *Mother of the Saviour* and to *La mère du Sauveur* to which Defendant is not entitled and, as a direct and proximate result of Defendant's acts of copyright infringement, Plaintiff has sustained and will sustain monetary damage, loss, and injury.

259. As a result of Defendant's acts of infringement alleged herein and in accordance with Section 504(b) of the Copyright Act, Plaintiff is entitled to recover from Defendant the damages Plaintiff has sustained and will sustain, and any profits obtained by Defendant as a result of or attributable to the infringement. At present, the amount of such damages and profits cannot be fully ascertained by Plaintiff.

260. The infringement of Plaintiff's copyright rights by Defendant has caused irreparable injury to Plaintiff, and, unless enjoined by this Court, such infringement will continue to cause irreparable injury. In accordance with Section 502 of the Copyright Act, Plaintiff is entitled to injunctive relief to prevent Defendant from further copyright infringement

## TWELFTH CLAIM FOR RELIEF FOR
## COPYRIGHT INFRINGEMENT UNDER FEDERAL LAW
## (17 U.S.C. § 101 *et seq.*)

**Title 12 – (a) *The Three Ways of the Spiritual Life*
    and (b) *Les trois conversions et les trois voies***

261. The allegations of all foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

262. Plaintiff is, and has been since 2016, the sole and exclusive owner of all copyright rights in and to the English-language work *The Three Ways*. *The Three Ways* is an original work of authorship fixed in a tangible medium of expression. Plaintiff is, and has been since 2016, the exclusive licensee of the right to publish an English-language translation of the French original work *Les trois conversions*. *Les trois conversions* is an original work of authorship fixed in a tangible medium of expression.

263.     Defendant does not own or otherwise hold any valid copyright rights in *The Three Ways* in the U.S.  Defendant does not own or otherwise hold any valid right to publish an English-language translation of *Les trois conversions* in the U.S.

264.     *The Three Ways* was first published outside the U.S., in a country that is a signatory to the Berne Convention, and was not published simultaneously in the U.S.; thus, *The Three Ways* is not a "United States work" under the Copyright Act and is exempt from the registration requirement in Section 411 of the Copyright Act.

265.     *Les trois conversions* was first published outside the U.S., in a country that is a signatory to the Berne Convention, and was not published simultaneously in the U.S.; thus, *Les trois conversions* is not a "United States work" under the Copyright Act and is exempt from the registration requirement in Section 411 of the Copyright Act.

266.     Defendant had access to *The Three Ways* and to *Les trois conversions*.

267.     Without Plaintiff's authorization, and in violation of Plaintiff's exclusive publication rights, Defendant copied, published, displayed, advertised, distributed, and/or sold *The Three Ways* and/or a substantially similar reproduction thereof, in the U.S. in printed (paper) format and in electronic format (ebook) on www.amazon.com, www.barnesandnoble.com and www.kobo.com websites, and other websites that may be identified during discovery, in violation of Section 501 of the Copyright Act.

268.     Without Plaintiff's authorization, and in violation of Plaintiff's exclusive publication rights, Defendant copied, published, displayed, advertised, distributed, and/or sold an English-language translation of *Les trois conversions*, and/or a substantially similar reproduction thereof, in the U.S. in printed (paper) format and in electronic format (ebook) on www.amazon.com, www.barnesandnoble.com and www.kobo.com websites, and other websites that may be identified during discovery, in violation of Section 501 of the Copyright Act.

Case 3:16-cv-00695-FDW-DCK   Document 51-1   Filed 07/23/18   Page 60 of 79

269. Defendant's acts of infringement were willful, intentional, and in reckless disregard of the rights of Plaintiff.

270. Defendant has received revenue and profits arising out of the use and exploitation of *The Three Ways* and to *Les trois conversions* to which Defendant is not entitled and, as a direct and proximate result of Defendant's acts of copyright infringement, Plaintiff has sustained and will sustain monetary damage, loss, and injury.

271. As a result of Defendant's acts of infringement alleged herein and in accordance with Section 504(b) of the Copyright Act, Plaintiff is entitled to recover from Defendant the damages Plaintiff has sustained and will sustain, and any profits obtained by Defendant as a result of or attributable to the infringement. At present, the amount of such damages and profits cannot be fully ascertained by Plaintiff.

272. The infringement of Plaintiff's copyright rights by Defendant has caused irreparable injury to Plaintiff, and, unless enjoined by this Court, such infringement will continue to cause irreparable injury. In accordance with Section 502 of the Copyright Act, Plaintiff is entitled to injunctive relief to prevent Defendant from further copyright infringement.

## THIRTEENTH CLAIM FOR RELIEF FOR
## COPYRIGHT INFRINGEMENT UNDER FEDERAL LAW
### (17 U.S.C. § 101 *et seq.*)

**Title 13 – *La prédestination***

273. The allegations of all foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

274. Plaintiff is, and has been since 2016, the sole and exclusive licensee of the exclusive right to publish an English-language translation of the French original work *La prédestination*, an original work of authorship fixed in a tangible medium of expression. *La*

*prédestination* was first published outside the U.S., in a country that is a signatory to the Berne Convention, and was not published simultaneously in the U.S.; thus, *La prédestination* is not a "United States work" under the Copyright Act and is exempt from the registration requirement in Section 411 of the Copyright Act.

275.     Defendant does not own or otherwise hold any valid right to publish an English-language translation of *La prédestination* in the U.S.

276.     Defendant had access to *La prédestination* and/or an English-language translation thereof.

277.     Without Plaintiff's authorization, and in violation of Plaintiff's exclusive publication rights, Defendant copied, published, displayed, advertised, distributed, and/or sold an English-language translation of *La prédestination* and/or a substantially similar reproduction thereof, in the U.S. in electronic format (ebook) on www.barnesandnoble.com and www.kobo.com websites website, and other websites that may be identified during discovery, in violation of Section 501 of the Copyright Act.

278.     Defendant's acts of infringement were willful, intentional, and in reckless disregard of the rights of Plaintiff.

279.     Defendant has received revenue and profits arising out of the use and exploitation of an English-language translation of *La prédestination* to which Defendant is not entitled and, as a direct and proximate result of Defendant's acts of copyright infringement, Plaintiff has sustained and will sustain monetary damage, loss, and injury.

280.     As a result of Defendant's acts of infringement alleged herein and in accordance with Section 504(b) of the Copyright Act, Plaintiff is entitled to recover from Defendant the damages Plaintiff has sustained and will sustain, and any profits obtained by Defendant as a

result of or attributable to the infringement. At present, the amount of such damages and profits cannot be fully ascertained by Plaintiff.

281. The infringement of Plaintiff's copyright rights by Defendant has caused irreparable injury to Plaintiff, and, unless enjoined by this Court, such infringement will continue to cause irreparable injury. In accordance with Section 502 of the Copyright Act, Plaintiff is entitled to injunctive relief to prevent Defendant from further copyright infringement.

## FOURTEENTH CLAIM FOR RELIEF FOR
## VIOLATIONS OF THE DIGITAL MILLENNIUM COPYRIGHT ACT
### (17 U.S.C. § 1202 *et seq.*)

**Title 1 –** *Fundamentals of Catholic Dogma*

282. The allegations of all foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

283. Plaintiff is, and has been since 2010, the sole and exclusive owner of all rights, title, and interests in the English-language translation *Fundamentals*. Plaintiff is, and has been since 2009, the sole and exclusive licensee of the right to publish any English-language translation of the German-language original work *Grundriß*.

284. *Fundamentals* and *Grundriß* are original works of authorship subject to the full protection of the U.S. copyright laws.

285. *Fundamentals* contains CMI such as the title and other information identifying the work; the name of, and other identifying information about the author of the work; the name of, and other identifying information about the copyright owner of the work; and/or the terms and conditions for use of the work.

286. In violation of 17 U.S.C. § 1202(a), Defendant, knowingly and with the intent to induce, enable, facilitate, or conceal infringement, provided CMI for *Fundamentals* that is false.

287.   In violation of 17 U.S.C. § 1202(a), Defendant, knowingly and with the intent to induce, enable, facilitate, or conceal infringement, distributed copies of *Fundamentals* that contained false CMI.

288.   In violation of 17 U.S.C. § 1202(b), Defendant, without the authority of the copyright owner or the law, intentionally altered or removed the CMI for *Fundamentals* knowing or having reasonable grounds to know that doing so would induce, enable, facilitate, or conceal an infringement of a right under the Copyright Act.

289.   In violation of 17 U.S.C. § 1202(b), Defendant, without the authority of the copyright owner or the law, has distributed copies of *Fundamentals* knowing that the CMI has been removed or altered without authority of the copyright owner or the law, knowing or having reasonable grounds to know that doing so would induce, enable, facilitate, or conceal an infringement of any right under the Copyright Act.

290.   Defendant has violated 17 U.S.C. § 1202 with respect to *Fundamentals* numerous times, by distributing infringing copies of *Fundamentals* with false CMI.

291.   The infringement that has been induced, enabled, facilitated, or concealed under the statute is, at a minimum, an infringement of Plaintiff's exclusive right under the preamble to 17 U.S.C. 106 to authorize (or set the terms for) the reproduction and distribution of copies of works it owns, as well as Plaintiff's exclusive right under 17 U.S.C. 106(3) to "distribute copies … of the copyrighted work to the public by sale or other transfer of ownership."

292.   The conduct of Defendant is intentional at a minimum as Defendant is fully aware of the true copyright owners of *Fundamentals* and despite such knowledge Defendant continues to distribute copies of *Fundamentals* knowing it contains false CMI which is causing deliberate misrepresentation to the public about true identity of the copyright holders in *Fundamentals* and is causing grave damage to Plaintiff.

293.     Defendant's violations of 17 U.S.C. § 1202 entitle Plaintiff to recover, among other things, and if it so elects as provided in 17 U.S.C. § 1203(c)(3)(B), "an award of statutory damages for each violation of Section 1202 in the sum of not less than $2,500 or more than $25,000."

294.     While the work continues to be sold by Defendant, Plaintiff cannot ascertain the exact damage that it has suffered. Plaintiff will request from Defendant the number of copies sold or distributed with false CMI. When Defendant is found to have committed one violation of 17 U.S.C. § 1202 for each of the copies of *Fundamentals* with false CMI that has been sold, Plaintiff would be entitled to recover, among other things, and if it so elects, statutory damages against Defendant of between $2,500 and $25,000 for each copy of *Fundamentals* that has been distributed in violation of 17 U.S.C. § 1202.

## FIFTEENTH CLAIM FOR RELIEF FOR
## VIOLATIONS OF THE DIGITAL MILLENNIUM COPYRIGHT ACT
## (17 U.S.C. § 1202 *et seq.*)

**Title 2 – *This Tremendous Lover***

295.     The allegations of all foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

296.     Plaintiff is, and has been since 2018, the sole and exclusive owner of all rights, title, and interests in the English-language work *This Tremendous Lover*.

297.     *This Tremendous Lover* is an original work of authorship subject to the full protection of the U.S. copyright laws.

298.     *This Tremendous Lover* contains CMI such as the title and other information identifying the work; the name of, and other identifying information about, the author of the work;

the name of, and other identifying information about, the copyright owner of the work; and/or the terms and conditions for use of the work.

299.    In violation of 17 U.S.C. § 1202(a), Defendant, knowingly and with the intent to induce, enable, facilitate, or conceal infringement, provided CMI for *This Tremendous Lover* that is false.

300.    In violation of 17 U.S.C. § 1202(a), Defendant, knowingly and with the intent to induce, enable, facilitate, or conceal infringement, distributed copies of *This Tremendous Lover* that contained false CMI.

301.    In violation of 17 U.S.C. § 1202(b), Defendant, without the authority of the copyright owner or the law, intentionally altered or removed the CMI for *This Tremendous Lover* knowing or having reasonable grounds to know that doing so would induce, enable, facilitate, or conceal an infringement of a right under the Copyright Act.

302.    In violation of 17 U.S.C. § 1202(b), Defendant, without the authority of the copyright owner or the law, has distributed copies of *This Tremendous Lover* knowing that the CMI has been removed or altered without authority of the copyright owner or the law, knowing or having reasonable grounds to know that doing so would induce, enable, facilitate, or conceal an infringement of any right under the Copyright Act.

303.    Defendant has violated 17 U.S.C. § 1202 with respect to *This Tremendous Lover* numerous times, by distributing infringing copies of *This Tremendous Lover* with false CMI.

304.    The infringement that has been induced, enabled, facilitated, or concealed under the statute is, at a minimum, an infringement of Plaintiff's exclusive right to authorize (or set the terms for) the reproduction and distribution of copies of works it owns, as well as Plaintiff's exclusive right under 17 U.S.C. 106(3) to "distribute copies … of the copyrighted work to the public by sale or other transfer of ownership."

305.    The conduct of Defendant is intentional as Defendant is aware of the true rights holders in *This Tremendous Lover* and, despite such knowledge, continues to distribute copies of *This Tremendous Lover* knowing they contain false CMI which is causing deliberate misrepresentation to the public about true identity of the copyright holders in *This Tremendous Lover* and is causing injury to Plaintiff.

306.    Defendant's violations of the DMCA entitle Plaintiff to recover, among other things, and if it so elects as provided in 17 U.S.C. § 1203(c)(3)(B), "an award of statutory damages for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000."

307.    While the work continues to be sold by Defendant, Plaintiff cannot ascertain the exact damage that it has suffered. Plaintiff will request from Defendant the number of copies sold or distributed with false CMI. When Defendant is found to have committed one violation of 17 U.S.C. § 1202 for each of the copies of *This Tremendous Lover* with false CMI that has been sold, Plaintiff would be entitled to recover, among other things, and if it so elects, statutory damages against Defendant of between $2,500 and $25,000 for each copy of *This Tremendous Lover* that has been distributed in violation of 17 U.S.C. § 1202.

## SIXTEENTH CLAIM FOR RELIEF FOR
## VIOLATIONS OF THE DIGITAL MILLENNIUM COPYRIGHT ACT
## (17 U.S.C. § 1202 *et seq.*)

**Title 3 – *The Curé d'Ars***

308.    The allegations of all foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

309.    Plaintiff is, and has been since 2015, the sole and exclusive owner of all rights, title, and interests in the English-language translation *The Curé d'Ars*.  Plaintiff is, and has been

67

since 2015, the sole and exclusive licensee of the right to publish any English-language translation of the German-language original work *Le curé d'Ars.*

310. *The Curé d'Ars* and *Le curé d'Ars* are original works of authorship subject to the full protection of the U.S. copyright laws.

311. *The Curé d'Ars* contains CMI such as the title and other information identifying the work; the name of, and other identifying information about the author of the work; the name of, and other identifying information about the copyright owner of the work; and/or the terms and conditions for use of the work.

312. In violation of 17 U.S.C. § 1202(a), Defendant, knowingly and with the intent to induce, enable, facilitate, or conceal infringement, provided CMI for *The Curé d'Ars* that is false.

313. In violation of 17 U.S.C. § 1202(a), Defendant, knowingly and with the intent to induce, enable, facilitate, or conceal infringement, distributed copies of *The Curé d'Ars* that contained false CMI.

314. In violation of 17 U.S.C. § 1202(b), Defendant, without the authority of the copyright owner or the law, intentionally altered or removed the CMI for *The Curé d'Ars* knowing or having reasonable grounds to know that doing so would induce, enable, facilitate, or conceal an infringement of a right under the Copyright Act.

315. In violation of 17 U.S.C. § 1202(b), Defendant, without the authority of the copyright owner or the law, has distributed copies of *The Curé d'Ars* knowing that the CMI has been removed or altered without authority of the copyright owner or the law, knowing or having reasonable grounds to know that doing so would induce, enable, facilitate, or conceal an infringement of any right under the Copyright Act.

316. Defendant has violated the DMCA with respect to *The Curé d'Ars* numerous times, by distributing infringing copies of *The Curé d'Ars* with false CMI.

317. The infringement that has been induced, enabled, facilitated, or concealed is, at a minimum, an infringement of Plaintiff's exclusive right to authorize (or set the terms for) the reproduction and distribution of copies of works it owns, as well as Plaintiff's exclusive right under 17 U.S.C. 106(3) to "distribute copies … of the copyrighted work to the public by sale or other transfer of ownership."

318. The conduct of Defendant is intentional, as Defendant is aware of the true rights holders in *The Curé d'Ars* and, despite such knowledge, Defendant continues to distribute copies of *The Curé d'Ars* knowing it contains false CMI which is causing deliberate misrepresentation to the public about true identity of the copyright holders in *The Curé d'Ars* and is causing grave damage to Plaintiff.

319. Defendant's violations of 17 U.S.C. § 1202 entitle Plaintiff to recover, among other things, and if it so elects as provided in 17 U.S.C. § 1203(c)(3)(B), "an award of statutory damages for each violation of Section 1202 in the sum of not less than $2,500 or more than $25,000."

320. While the work continues to be sold by Defendant, Plaintiff cannot ascertain the exact damage that it has suffered. Plaintiff will request from Defendant the number of copies sold or distributed with false CMI. When Defendant is found to have committed one violation of 17 U.S.C. § 1202 for each of the copies of *The Curé d'Ars* with false CMI that has been sold, Plaintiff would be entitled to recover, among other things, and if it so elects, statutory damages against Defendant of between $2,500 and $25,000 for each copy of *The Curé d'Ars* that has been distributed in violation of the DMCA.

## SEVENTEENTH CLAIM FOR RELIEF FOR
## Violations of the North Carolina Unfair and Deceptive Trade Practices Act
## (N.C. Gen. Stat. § 75 - 1.1)

**Title 1 – *Fundamentals of Catholic Dogma***

321.    The allegations of all foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

322.    Defendant's addition to and alteration of *Fundamentals* with six pages of advertising – six pages of material promoting Defendant's products and brand, and deceptively implying that Defendant had rights in and to *Fundamentals* – has caused and is likely to cause the public, consumers, potential consumers, and the trade to believe, mistakenly, that Defendant owned copyright rights in *Fundamentals* or was otherwise authorized to publish, offer for sale, distribute, and sell *Fundamentals*.

323.    Defendant's addition to and alteration of *Fundamentals* with six pages of advertising – six pages of material promoting Defendant's products and brand, and deceptively implying that Defendant had rights in and to *Fundamentals* – was in commerce, affected commerce, and is consumer-oriented.

324.    Defendant's addition to and alteration of Fundamentals with six pages of advertising – six pages of material promoting Defendant's products and Defendant's brand, and deceptively implying that Defendant had rights in and to *Fundamentals* – create a likelihood of confusion regarding the source and owner of *Fundamentals*.

325.    Defendant's addition to and alteration of *Fundamentals* with six pages of advertising – six pages of material promoting Defendant's products and  brand, and deceptively implying that Defendant had rights in and to *Fundamentals* – proximately caused injury to Plaintiff, the party that actually held and holds rights in *Fundamentals*.

326.    Defendant's use of Plaintiff's *Fundamentals* to promote Defendant and Defendant's other products, deceived and is likely to deceive consumers and potential consumers.

327.    Defendant's use of Plaintiff's *Fundamentals* as a vehicle to promote Defendant and its products was done willfully to divert business away from Plaintiff, to benefit from Plaintiff's copyright rights, and/or to damage Plaintiff's reputation. Defendant's unauthorized and intentional use of *Fundamentals* as alleged herein is misleading in a material way as to the origin and true owner of *Fundamentals*, and has caused injury to Plaintiff and the public, in violation of North Carolina's Unfair and Deceptive Trade Practices Act.

328.    The actions and conduct described herein are unfair and deceptive, oppressive, injurious to Plaintiff, and manifest an inequitable assertion of competition.

329.    Defendant's unfair and deceptive acts and practices were in or affecting commerce.

330.    The aforesaid conduct of Defendant has caused, and unless restrained by this Court will continue to cause, serious and irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.  The public has been and is likely to be deceived and damaged as a result of Defendant's deceptive trade practices or acts.

331.    The aforesaid conduct of Defendant is causing irreparable injury to Plaintiff and to its goodwill and reputation, and will continue to both damage the Plaintiff and deceive the public unless enjoined by this Court.

332.    As a result of Defendant's unfair and deceptive acts, Plaintiff has been damaged in an amount to be proven at trial, and is entitled to recover treble damages and attorneys' fees pursuant to N.C.G.S. § 75.1.1, *et se*q.


**EIGHTEENTH CLAIM FOR RELIEF FOR**
**Violations of the North Carolina Unfair and Deceptive Trade Practices Act**
**(N.C. Gen. Stat. § 75 - 1.1)**

**Title 2 – *This Tremendous Lover***

333.    The allegations of all foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

334.    Defendant's addition to and alteration of *This Tremendous Lover* with two pages of advertising – two pages of material promoting Defendant's products and brand, and deceptively implying that Defendant had rights in and to *This Tremendous Lover* – has caused and is likely to cause the public, consumers, potential consumers, and the trade to believe, mistakenly, that Defendant owned copyright rights in *This Tremendous Lover* or was otherwise authorized to publish, offer for sale, distribute, and sell *This Tremendous Lover*.

335.    Defendant's addition to and alteration of *This Tremendous Lover* with two pages of advertising – two pages of material promoting Defendant's products and brand, and deceptively implying that Defendant had rights in and to *This Tremendous Lover* – was in commerce, affected commerce, and is consumer-oriented.

336.    Defendant's addition to and alteration of *This Tremendous Lover* with two pages of advertising – two pages of material promoting Defendant's products and brand, and deceptively implying that Defendant had rights in and to *This Tremendous Lover* – create a likelihood of confusion regarding the source and owner of *This Tremendous Lover*.

337.    Defendant's addition to and alteration of *This Tremendous Lover* with two pages of advertising – two pages of material promoting Defendant's products and Defendant's brand, and deceptively implying that Defendant had rights in and to *This Tremendous Lover* – proximately caused injury to Plaintiff, who holds rights in *This Tremendous Lover*.

338.    Defendant's use of Plaintiff's *This Tremendous Lover* to promote Defendant and Defendant's other products, deceived and is likely to deceive consumers and potential consumers.

339.    Defendant's use of Plaintiff's *This Tremendous Lover* as a vehicle to promote Defendant and its products was done willfully to divert business from Plaintiff, to benefit from

Plaintiff's copyright rights, and/or to damage Plaintiff's reputation. Defendant's unauthorized and intentional use of *This Tremendous Lover* as alleged herein is misleading in a material way as to the origin and true owner of *This Tremendous Lover*, and has caused injury to Plaintiff and the public, in violation of North Carolina's Unfair and Deceptive Trade Practices Act.

340.    The actions and conduct described herein are unfair and deceptive, oppressive, injurious to Plaintiff, and manifest an inequitable assertion of competition.

341.    Defendant's unfair and deceptive acts and practices were in or affecting commerce.

342.    The aforesaid conduct of Defendant has caused, and unless restrained by this Court will continue to cause, serious and irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.  The public has been and is likely to be deceived and damaged as a result of Defendant's deceptive trade practices or acts.

343.    The aforesaid conduct of Defendant is causing irreparable injury to Plaintiff and to its goodwill and reputation, and will continue to both damage the Plaintiff and deceive the public unless enjoined by this Court.  As a result of Defendant's unfair and deceptive acts, Plaintiff has been damaged in an amount to be proven at trial, and is entitled to recover treble damages and attorneys' fees pursuant to N.C.G.S. § 75.1.1, *et se*q.

## NINETEENTH CLAIM FOR RELIEF FOR
### Violations of the North Carolina Unfair and Deceptive Trade Practices Act
### (N.C. Gen. Stat. § 75 - 1.1)

**Title 3 –** *The Curé d'Ars*

344.    The allegations of all foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein

345.    Defendant's addition to and alteration of *The Curé d'Ars* with at least three (3) pages of advertising – at least three (3) pages of material promoting Defendant's products and

Case 3:16-cv-00695-FDW-DCK   Document 51-1   Filed 07/23/18   Page 73 of 79

Defendant's brand, and deceptively implying that Defendant had rights in and to *The Curé d'Ars* – has caused and is likely to cause the public, consumers, potential consumers, and the trade to believe, mistakenly, that Defendant owned copyright rights in *The Curé d'Ars* or was otherwise authorized to publish, offer for sale, distribute, and sell *Curé d'Ars*.

346. Defendant's addition to and alteration of *The Curé d'Ars* with at least three (3) pages of advertising – at least three (3) pages of material promoting Defendant's products and Defendant's brand, and deceptively implying that Defendant had rights in and to *The Curé d'Ars* – was in commerce, affected commerce, and is consumer-oriented.

347. Defendant's addition to and alteration of *The Curé d'Ars* with at least three (3) pages of advertising – at least three (3) pages of material promoting Defendant's products and Defendant's brand, and deceptively implying that Defendant had rights in and to *The Curé d'Ars* – create a likelihood of confusion regarding the source and owner of *The Curé d'Ars*.

348. Defendant's addition to and alteration of *The Curé d'Ars* with at least three (3) pages of advertising – at least three (3) pages of material promoting Defendant's products and Defendant's brand, and deceptively implying that Defendant had rights in and to *The Curé d'Ars* – proximately caused injury to Plaintiff, the party that actually held and holds rights in *The Curé d'Ars*.

349. Defendant's unauthorized use of Plaintiff's *The Curé d'Ars* to promote Defendant and Defendant's other products, deceived and is likely to deceive the public, consumers, potential consumers, and the trade, causing them to believe mistakenly that Defendant has rights or authorization to publish and sell *The Curé d'Ars*.

350. Defendant's unauthorized use of *The Curé d'Ars* as a vehicle to promote Defendant and its products was done willfully to divert business from Plaintiff, to benefit from

74

Plaintiff's copyright rights, to lead consumers and readers to believe that Defendant has rights in the work, and/or to damage Plaintiff's reputation.

351. Defendant's unfair and deceptive acts and practices were in or affecting commerce.

352. The aforesaid conduct of Defendant has caused, and unless restrained by this Court will continue to cause, serious and irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law. The public has been and is likely to be deceived and damaged as a result of Defendant's deceptive trade practices or acts.

353. The aforesaid conduct of Defendant is causing irreparable injury to Plaintiff and to its goodwill and reputation, and will continue to both damage the Plaintiff and deceive the public unless enjoined by this Court.

354. As a result of Defendant's unfair and deceptive acts, Plaintiff has been damaged in an amount to be proven at trial, and is entitled to recover treble damages and attorneys' fees pursuant to N.C.G.S. § 75.1.1, *et se*q.

## PRAYER FOR RELIEF; JURY DEMAND

WHEREFORE, for the reasons set forth above, the Plaintiff respectfully prays that the Court enters judgment against Defendant as follows:

1. That Plaintiff recover from Defendant and is awarded, under 17 U.S.C. §§ 504(b), 504(c), 1203(b)(3), 1203(c)(1), 1203(c)(2), and/or 1203(c)(3), and N.C.G.S. § 75-16 and other applicable law, the actual damages, lost profits, punitive damages, statutory damages, and treble damages as are available, that are related to Defendant's willful infringement and/or other misconduct alleged herein, in amounts to be proved at trial;

2.     That Plaintiff is awarded, under 17 U.S.C. §§ 505, 1203(b)(4), and/or 1203(b)(5), and/or N.C.G.S. § 75-16.1, and/or other applicable law, costs and disbursements of this action, including Plaintiff's reasonable attorneys' fees and expenses in this action;

3.     That Plaintiff is awarded, under 17 U.S.C. § 1203 and N.C.G.S. § 75-16, and other applicable law, exemplary, treble and/or punitive damages, as the Court finds appropriate, to deter any future willful infringement and/or other misconduct by Defendant;

4.     That Plaintiff is awarded pre-judgment and post-judgment interest on each and every damage award;

5.     That an order be issued permanently enjoining Defendant and its officers, directors, owners, parents, partners, affiliates, employees, agents, servants, attorneys, representatives, successors, and assigns, and any and all persons in active concert or participation with any of them, and any and all persons acting for, with, by, through, or under any of them, from the following:

a.   engaging in the misconduct referenced in this Second Amended Verified Complaint;

b.   imitating, copying, or making unauthorized use of Plaintiff's Six Owned Works, Eleven Exclusively Licensed Works, or content thereof;

c.   importing, exporting, manufacturing, printing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any product that is or includes any copy, simulation, reproduction, counterfeit, or colorable imitation of Plaintiff's Six Owned Works, Eleven Exclusively Licensed Works, or content thereof;

d.   making any false representations or false descriptions of fact concerning or relating to Plaintiff, or Plaintiff's Six Owned Works, Eleven Exclusively Licensed Works, or content thereof;

e. performing any act which is likely to lead members of the trade or public to believe that any product manufactured, distributed, advertised, or sold by Defendant is in any manner associated or connected with Plaintiff, or is sold, manufactured, licensed, sponsored, approved, or otherwise authorized by Plaintiff; and

f. further infringing the rights of Plaintiff in and to any of its intellectual property or otherwise damaging Plaintiff's goodwill or business reputation;

6. That Defendant be ordered to recall immediately, at Defendant's cost, from all distributors, retailers, online retailers, sellers, online sellers, and other recipients any and all infringing products, physical or digital;

7. That Defendant be ordered to account for and disgorge any and all profits that are attributable to Defendant's wrongful conduct, and that Plaintiff be awarded the greater of (a) three times Defendant's profits, or (b) three times any damages sustained by Plaintiff;

8. That a constructive trust be imposed on all of Defendant's funds and assets that arise out of its wrongful conduct;

9. That Defendant be ordered to make available to Plaintiff for review, inspection, and copying all books, records (including all hard drives and external drives on or for computers used at any time for any business purposes, including servers, as well as all computer disks and back up disks or similar technology) and other documents and things concerning all transactions relating to the manufacturing, printing, advertising, distributing, or sale of infringing products described herein;

10. That Defendant be ordered to deliver to Plaintiff's counsel, for destruction at Defendant's costs, all products, packaging, promotional material, advertising material, catalogs and any other items that bear, contain, or incorporate Plaintiff's Six Owned Works, Eleven

Exclusively Licensed Works, and/or any copy, simulation, reproduction, counterfeit, or colorable imitation thereof;

11.     That Defendant be ordered to file with this Court and serve upon Plaintiff's counsel, within thirty (30) days after service of the judgment demanded herein, a written report submitted under oath setting forth in detail the manner in which Defendant has complied with the judgment;

12.     For trial by jury on all issues; and

13.     That Plaintiff receives such other and further relief as to the Court may seem just and proper.

Respectfully submitted this 23rd day of July, 2018.

*Attorneys for Plaintiff*

/s/ Mark W. Ishman
Mark W. Ishman
N.C. State Bar No. 27908
ISHMAN LAW FIRM, P.C.
9660 Falls of Neuse Road, Box 138-350
Raleigh, North Carolina 27615
Telephone: (919) 468-3266
Email: mishman@ishmanlaw.com

Kristin G. Garris
N.C. State Bar No. 38767
TANNENBAUM HELPERN SYRACUSE &
HIRSCHTRITT LLP
900 Third Avenue
New York, New York 10022
Tel: (212) 508-6783
Email: garris@thsh.com

## CERTIFICATE OF SERVICE

I, the undersigned attorney do hereby certify that I have served all parties in this action with a copy of the **PLAINTIFF'S SECOND AMENDED VERIFIED COMPLAINT** by electronically filing the same *via Pacer* to the address listed below:

Jonathan E. Buchan, Jr, Esq.
jbuchan@essexrichards.com
Essex Richards, P.A.
1701 South Blvd.
Charlotte, NC 28203

Natalie Dawn Potter, Esq.
npotter@essexrichards.com, hbadger@essexrichards.com
Essex Richards, P.A.
1701 South Blvd.
Charlotte, NC 28203

This the 23rd day of July, 2018.

*Attorneys for Plaintiff*

/s/ Mark W. Ishman
Mark W. Ishman
N.C. State Bar No. 27908
ISHMAN LAW FIRM, P.C.
9660 Falls of Neuse Road, Box 138-350
Raleigh, North Carolina 27615
Telephone: (919) 468-3266
Email: mishman@ishmanlaw.com

Kristin G. Garris
N.C. State Bar No.38767
TANNENBAUM HELPERN SYRACUSE &
HIRSCHTRITT LLP
900 Third Avenue
New York, New York 10022
Tel: (212) 508-6783
Email: garris@thsh.com