IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:16-cv-00695-GCM

| | | |
|---|---|---|
| BARONIUS PRESS, LTD.,<br><br>Plaintiff,<br><br>v.<br><br>SAINT BENEDICT PRESS LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED VERIFIED COMPLAINT AND SUPPLEMENT PLEADING AND INCORPORATED SUPPORTING MEMORANDUM OF LAW** |

Defendant respectfully submits this Response in Opposition to Plaintiff's Motion for Leave to File a Second Amended Verified Complaint and Supplement Pleading and Incorporated Supporting Memorandum of Law. (Doc. No. 51) ("Motion for Leave").

## INTRODUCTION

Plaintiff's Motion for Leave should be denied on the grounds that: 1) Plaintiff unduly delayed in bringing the Motion for Leave; 2) Plaintiff's proposed amendments adding claims for violations of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §75.1, ("UDTP") are futile; and 3) allowing the Motion for Leave will cause substantial prejudice to Defendant.

## SUMMARY OF RESPONSE

Contrary to statements in Plaintiff's Motion for Leave, Plaintiff is not seeking leave to "amend" its First Amended Verified Complaint ("First Amended Complaint"), but instead is seeking leave to re-write its First Amended Complaint in its entirety.

Plaintiff's proposed Second Amended Verified Complaint ("Second Amended Complaint") seeks to add 18 new claims for relief including copyright infringement claims for

12 new works not previously included in this copyright litigation and is 129 pages and 287 paragraphs longer than the First Amended Complaint. Defendant cannot identify a single paragraph in the 354 paragraphs in the proposed Second Amended Complaint that is the same as those in the 67 paragraphs of the First Amended Complaint.

Plaintiff's Motion for Leave should be denied on multiple grounds. First, Plaintiff has unduly delayed in bringing its Motion for Leave. Plaintiff has not discovered any "new" facts; and has had knowledge of the facts it now contends are "new" since at least November of 2017 and in some instances as early as at least June 19, 2016. Second, the UDTP claims that Plaintiff now seeks to add are futile in that they are mere recitals of the elements of a UDTP claim and are preempted by the United States Copyright Act, 17 U.S.C. §101 *et seq.* Lastly, Plaintiff will be substantially and unduly prejudiced if Plaintiff's Motion for Leave is allowed because Plaintiff would essentially be required to defend itself against an entirely different case than the one it has been involved in over the past two years. In addition, the proposed amendments would require substantial discovery involving third parties that Defendant does not have adequate time to conduct before trial and would result in the Offer of Judgment Defendant served upon Plaintiff being moot, which could result in Defendant forfeiting costs and fees that it would be entitled to if judgment were to be entered in Defendant's favor in the current case.

## RESPONSE

The decision to grant or deny a party's motion for leave to amend a pleading is within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962). Although Fed. R. Civ. P. 15(a) states that leave should be freely given when justice requires it, "leave to amend is not to be granted automatically." *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987). It is appropriate for the district court to deny a party's motion for leave to amend a pleading for

reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman* 371 U.S. at 182. In this case, all of the listed grounds in *Foman* for denying leave are present, and Plaintiff's Motion for Leave should therefore be denied.

## I. Plaintiff Unduly Delayed In Bringing Its Motion For Leave To File Second Amended Verified Complaint.

Plaintiff contends in its Motion for Leave that it is seeking to add "recently discovered, recently investigated facts" including "Facts Arising in 2018, Learned in 2018, and/or Investigated and Supported in 2018." (Doc. No. 51, p. 1; Doc. No. 51, p. 3). Plaintiff's Motion for Leave states that Plaintiff is seeking to "assert claims that could not have been brought earlier due to newly discovered facts and/or newly investigated facts and/or medical hardships that delayed Plaintiff." (Doc. No. 51, ¶ 19).

Although Plaintiff contends that these claims could not have been brought sooner, the exhibits attached to Plaintiff's proposed Second Amended Complaint and the discovery exchanged flatly contradict Plaintiff's statements. Plaintiff's Motion for Leave is not based on "newly discovered" or "newly investigated" facts, but on facts that Plaintiff knew, or reasonably should have known, long before filing its July 23, 2018 Motion for Leave, or before experiencing any medical hardships[1].

---

[1] Although Plaintiff lists three or four different reasons in its Motion for Leave for moving to amend at this delayed time, including medical hardship, at no point does Plaintiff clearly state in its Motion for Leave exactly why it is moving to amend two years after the Complaint was filed. Instead of providing a clear basis in its Motion for Leave, Plaintiff states "and/or" each time it references a reason and refuses to commit to any of the reasons it has given; regardless, according to Plaintiff's affidavit, Plaintiff's representative experienced medical hardship in March of 2018, well after Plaintiff possessed the alleged facts it now relies upon in filing its Motion for Leave. The medical hardships Plaintiff references in its Motion for Leave were outlined in affidavits attached to Plaintiff's Motion to Seal. (Doc. No. 32).

For the first time in almost two years litigating this case Plaintiff seeks to add claims of copyright infringement regarding 12 entirely different works, three claims for relief under the Digital Millennium Copyright Act, and three UDTP claims. Although Plaintiff is just now moving to amend its First Amended Complaint, Plaintiff has had knowledge of virtually all of the facts that it relies upon in bringing its Motion for Leave since 2016, or at the latest, November 24, 2017.

**A. Plaintiff has not discovered any "new facts" regarding the additional works.**

The only work that has been at issue in this case since it was filed two years ago is a book, *Fundamentals of Catholic Dogma* ("*Fundamentals*"). Plaintiff's Motion for Leave seeks to add twelve different works, also books, to this litigation two years after it was initiated. The new works that Plaintiff seeks to add after almost two years of litigating this case are as follows[2]:

1. *This Tremendous Lover*
2. *The Curé d'Ars*
3. *Catholic Encyclopaedic Dictionary*
4. *Holy Abandonment*
5. *The Priest in Union with Christ* (Garrigou-Lagrange Title)
6. *Christian Perfection and Contemplation (*Garrigou-Lagrange Title)
7. *Our Savior and His Love for Us* (Garrigou-Lagrange Title)
8. *Providence* (Garrigou-Lagrange Title)
9. *Life Everlasting* (Garrigou-Lagrange Title)
10. *Mother of the Savior* (Garrigou-Lagrange Title)
11. *The Three Ways of the Spiritual Life* (Garrigou-Lagrange Title)
12. *Predestination* (Garrigou-Lagrange Title)

Titles 1 through 4 are addressed first. The Garrigou-Lagrange Titles are addressed after titles 1 through 4. The new proposed claims regarding *Fundamentals* is discussed in a subsequent section.

[2] For ease of reference, Defendant used the same title names Plaintiff uses in the table contained on page 6 of Plaintiff's proposed Second Amended Complaint although the actual names of the titles may be slightly different.

1. **<u>Plaintiff has not discovered any "new facts" regarding *This Tremendous Lover, The Curé d' Ars, Catholic Encyclopaedic Dictionary*, and *Holy Abandonment*.</u>**

a. **Plaintiff concedes in its Motion for Leave that it knew of the alleged "new facts" regarding *This Tremendous Lover, The Curé d'Ars, Catholic Encyclopaedic Dictionary* and *Holy Abandonment* in 2016.**

As stated in paragraphs 60 and 87 of Plaintiff's proposed Second Amended Complaint, on August 10, 2016 Plaintiff sent Defendant letters demanding that Defendant cease and desist selling *This Tremendous Lover* and *Holy Abandonment*. (Doc. No. 51-31; Doc. No. 51-40). As stated in paragraph 69 of Plaintiff's proposed Second Amended Complaint, on August 10, 2016, Plaintiff also sent Defendant a Notice of Intent to Enforce a Copyright regarding *The Curé d' Ars*. (Doc. No. 51-35). On August 24, 2016, one month before Plaintiff filed its Verified Complaint, and almost four months before Plaintiff filed its First Amended Complaint, Plaintiff sent Defendant a cease and desist letter regarding *Fundamentals*. (Exhibit 1). In the August 24, 2016 *Fundamentals* demand letter, Plaintiff also accused Defendant of infringing on *The Curé d'Ars*, *This Tremendous Lover*, and *Holy Abandonment*. On page two, in the second to last paragraph of the August 24, 2016 *Fundamentals* letter, Plaintiff states:

> For the benefit of doubt, we are prepared to give you an additional seven days (until 31st August 2016) to provide us with the necessary documents that prove you are allowed to publish the *Holy Abandonment*, *This Tremendous Lover*, and *The Curé d'Ars*.

(Exhibit 1).

As stated in paragraph 80 of Plaintiff's proposed Second Amended Complaint, on September 13, 2016 Plaintiff sent Defendant two cease and desist letters demanding that Defendant cease publishing the *Catholic Encyclopaedic Dictionary*. (Doc. No. 51-38).

Defendant did not respond to Plaintiff's August 10, 2016, August 24, 2016 or September 13, 2016 demand letters, and Plaintiff filed its Verified Complaint approximately one month later

on September 29, 2016, and its First Amended Complaint almost four months later on December 21, 2016. These Complaints asserted claims of infringement only in regard to *Fundamentals* and never mentioned these other works, or any other works.

**b. Exhibits to Plaintiff's Proposed Second Amended Complaint show that Plaintiff knew the alleged "new facts" regarding *This Tremendous Lover, The Curé d'Ars, Catholic Encyclopaedic Dictionary* and *Holy Abandonment* in 2016 before the Verified Complaint and the First Amended Complaint were filed.**

Exhibits 13, 19, and 21 of Plaintiff's proposed Second Amended Complaint purport to show screenshots of the works for sale on Defendant's website. Exhibit 13, purports to be a screen shot from Defendant's website showing Defendant advertising *This Tremendous Lover* for sale. (Doc. No. 51-33). A close look at the lower left-hand section of Exhibit 13 reveals the date September 13, 2016, which was sixteen days __before__ Plaintiff filed its Verified Complaint and over three months __before__ Plaintiff filed its First Amended Complaint. A close-up of the lower left-hand corner showing the date is below[3]:




Exhibits 19 and 21 to the proposed Second Amended Complaint also purport to be screenshots showing Defendant selling *Holy Abandonment* and *Catholic Encyclopaedic Dictionary* on Defendant's website. (Doc. No. 51-39; Doc. No. 51-41). Both screenshots are dated October 10, 2016[4], which is over two months __before__ Plaintiff filed its First Amended Complaint.

---

[3] The date is September 13, 2016 and is written as "20160913."

[4] Both Exhibit 19 and 21 to the proposed Second Amended Complaint show the date in the lower left hand corner and are dated October 10, 2016 and is written as "20161010". (Doc. No. 51-39; Doc. No. 51-41).

Plaintiff's Motion for Leave should not be allowed because Plaintiff was well aware of the alleged "new facts" before filing its Verified Complaint and well before filing its First Amended Complaint. Plaintiff knew when it filed its Motion for Leave that such "new facts" were not "new" at all. Motions to amend a complaint are founded in bad faith when they are based on facts known by the plaintiff prior to plaintiff initiating the lawsuit. *Bailey v. Polk County*, No. 1:10cv264, 2011 U.S. Dist. LEXIS 112022, at *14 (W.D.N.C. Sept. 29, 2011)(Finding Plaintiff's motion to amend the Complaint both "dilatory" and made in "bad faith" when it was based on facts made available to plaintiff prior to the filing the lawsuit). The record clearly indicates that Plaintiff had knowledge of the facts and claims it now seeks to add in 2016.

**c. Plaintiff's Verified Complaint and responses to Defendant's discovery requests establish that Plaintiff has long since known about the alleged "new facts" regarding *This Tremendous Lover, The Curé d'Ars, Catholic Encyclopaedic Dictionary*, and *Holy Abandonment.***

Paragraphs 41 of Plaintiff's Verified Complaint, filed on September 29, 2016 and Plaintiff's First Amended Complaint, filed on December 21, 2016, both stated the following:

> Plaintiff's investigation into Defendant's activities regarding other potential breaches of Plaintiff's copyright(s) is ongoing, and upon information and belief, there may be additional acts of infringement or unlawful activity by the Defendant. Plaintiff reserves its right to amend its Verified Complaint upon completion of its investigation.

(Doc. No. 1; Doc. No. 16).

On October 13, 2017, Defendant served Plaintiff with Defendant's First Set of Interrogatories and Requests for Production of Documents. Interrogatory Number 10 of Defendant's First Set of Interrogatories requested that Plaintiff:

> State the substance of all facts that You allege support Your allegation in paragraph [41][5] of the Amended Complaint that "there may be additional acts of infringement or unlawful activity by Defendant."

In response to Defendant's Interrogatory Number 10, Plaintiff responded on November 20, 2017 as follows:

> *Cure d'Ars*
> *This Tremendous Lover*
> *Catholic Dictionary*
> *Holy Abandonment*
>
> Plaintiff's investigation of Defendant's additional acts of infringement and/or unlawful activity(ies) by Defendant is currently ongoing. As a result, Plaintiff's discovery is still ongoing, and expressly reserves the right to supplement, clarify, revise, or correct any or all of the answers and objections herein this Response to Request No. 10, and to assert additional objections or privileges, in one or more subsequent supplemental answer(s).

(Exhibit 2).

Plaintiff's own pleadings and discovery responses show that neither Plaintiff's investigation regarding the additional works, nor the facts it now puts forward in support of its Motion for Leave and proposed Second Amended Complaint, are "new" at all.

**2. <u>Plaintiff has not discovered any "new facts" regarding The Garrigou-Lagrange Titles.</u>**

Titles 5 through 12 in the list of titles Plaintiff seeks to add are referred to herein as the "Garrigou-Lagrange Titles" because they all share the same author, Gerald W. Shelton Garrigou-Lagrange. As with *This Tremendous Lover, The Curé d'Ars, Catholic Encyclopaedic Dictionary,* and *Holy Abandonment*, Plaintiff has had knowledge of the facts it now claims to rely on in its proposed Second Amended Complaint since 2016, or at the latest November 2017.

---

[5] Defendant's First Set of Discovery incorrectly referred to paragraph 41 as paragraph 48.

In support of its infringement allegations regarding the Garrigou-Lagrange Titles, Plaintiff alleges in its proposed Second Amended Complaint that Defendant entered into a "Mutual Release" on November 7, 2017 with The Dominican Province, Province de France regarding Defendant's prior sales of the Garrigou-Lagrange Titles. (Doc. No. 51-1). The proposed Second Amended Complaint further alleges that Defendant infringed upon Plaintiff's exclusive rights when it allegedly continued to sell the Garrigou-Lagrange Titles after November 7, 2017. (Doc. No. 51-1).

Plaintiff's own documents clearly show that Plaintiff had knowledge of the "new facts" regarding the Garrigou-Lagrange Titles as early as November 16, 2017, which was nine days after Plaintiff alleges that Defendant entered into the Mutual Release that is the foundation for all of Plaintiff's infringement claims regarding the Garrigou-Lagrange Titles. Plaintiff attaches several exhibits to its proposed Second Amended Complaint in support of Plaintiff's allegations that Defendant was infringing on Plaintiff's exclusive rights by publishing or selling the Garrigou-Lagrange Titles after November 7, 2017. Five of exhibits show that Plaintiff had knowledge of the facts Plaintiff is relying on in its Motion for Leave regarding the Garrigou-Lagrange Titles as early as November 16, 2017 and November 20, 2017:

- Exhibit 22 to Plaintiff's proposed Second Amended Complaint purports to show an Amazon order being placed November 20, 2017[6] by Plaintiff's 30(b)(6) representative, Pavel "Paul" Kejik, for five of the eight Garrigou-Lagrange Titles: 1) *Life Everlasting*; 2) *Our Savior and His Love for Us*; 3) *The Priest in Union with Christ*; 4) *The Three Ways of the Spiritual Life*; 5) *Providence*. According to Exhibit 22, these titles were to be delivered to Mr. Kejik at a hotel in Charlotte, NC. (Doc. No. 51-42).

- Exhibit 23 to Plaintiff's proposed Second Verified Complaint purports to show an Amazon order for the Garrigou-Lagrange title *The Priest in Union with Christ.* The

[6] On November 28, 2017, the parties engaged in a mediation in this case in Charlotte, N.C.

upper left hand corner of Exhibit 23 shows that Exhibit 23 is dated November 16, 2017[7]. (Doc. No. 51-43).

- Exhibit 27 to Plaintiff's proposed Second Verified Complaint, purports to show an Amazon order for the Garrigou-Lagrange title *Life Everlasting*. The upper left hand corner of Exhibit 27 shows that Exhibit 27 is dated November 16, 2017[8]. (Doc. No. 51-47).

- Exhibit 28 to Plaintiff's proposed Second Verified Complaint, purports to show the following Garrigou-Lagrange Titles being ordered from Barnes & Noble: 1) *The Three Ways of the Spiritual Life*; 2) *Predestination*; 3) *Our Savior and His Love for Us*; 4) *Christian Perfection and Contemplation*; 5) *Mother of the Savior*. The upper left hand corner of Exhibit 28 shows that Exhibit 28 is dated November 16, 2017[9]. (Doc. No. 51-48).

- Exhibit 29 to Plaintiff's proposed Second Amended Complaint purports to show the purchase of the Garrigou-Lagrange Title *The Three Ways of the Spiritual Life* from Amazon. The upper left hand corner of Exhibit 29 show that Exhibit 29 is dated November 16, 2017[10]. (Doc. No. 51-49).

Exhibits 22, 23, 27, 28 and 29 combined show that Plaintiff had knowledge at least as early as November 16, 2017 of the alleged "new facts" that Plaintiff now puts forward.

**B. <u>Plaintiff has not discovered any "new facts" regarding *Fundamentals*.</u>**

*Fundamentals* is the only work at issue in Plaintiff's Verified Complaint or its First Amended Complaint and has been the only work at issue in this case in the two years since this case was filed. In its Motion for Leave, Plaintiff proposes to assert two new claims as to *Fundamentals*. The new claims that Plaintiff is now moving this Court to add after two years of litigation are: (1) one claim for violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. §1202 *et seq.*, and (2) one claim for unfair and deceptive trade Practices, N.C. Gen. Stat. §75-1.1.

---

[7] The date is November 16, 2017 and printed as: "20171116."
[8] The date is November 16, 2017 and printed as: "20171116."
[9] The date is November 16, 2017 and printed as: "20171116."
[10] The date is November 16, 2017 and printed as: "20171116."

As with the additional works, Plaintiff had the information it now alleges to be "newly discovered and/or investigated facts" it relies upon in support of its DMCA claim since at least June 19, 2017. Plaintiff has had the information it now alleges to be newly discovered and/or investigated facts it relies upon in support of its new UDTP claim regarding *Fundamentals* since at least November 24, 2017.

In paragraph 41 of the proposed Second Amended Complaint, Plaintiff alleges for the first time that "Defendant added six (6) pages of advertising to promote Defendant's own brands (imprints) and products to the readers of the title." (Doc. No. 51-1, ¶ 41). In paragraph 45, Plaintiff alleges for the first time that "Defendant has caused irreparable damage to Plaintiff ... by providing false [copyright management information] and adding six (6) pages of advertising to promote Defendant's own brands (imprints) and products in each copy of *Fundamentals.*" (Doc. No. 51-1, ¶ 45).

In paragraphs 44-50, Plaintiff alleges for the first time that "Defendant knowingly and deliberately published, provided, and distributed *Fundamentals* with false copyright management information ("CMI") with an intent to induce, enable, facilitate or conceal the fact that Defendant did not have any copyright rights in *Fundamentals*...." (Doc. No. 51-1, ¶ 44).

Plaintiff relies on these "new" factual allegations in its proposed Second Amended Complaint to assert its claim for violation of the DMCA and to assert a UDTP claim. (Doc. No. 51-1).

Plaintiff has had the facts it relies upon for its DMCA claims and that it now contends are "new" since at least June 19, 2017. In conjunction with Plaintiff's Initial Disclosures, Plaintiff served Defendant with documents bates stamped BP 00001 to BP 00801. Included with the documents produced by Plaintiff to Defendant on June 19, 2017 was a copy of *Fundamentals*.

This copy of *Fundamentals* produced by Plaintiff on June 19, 2017 included a copyright page bates stamped BP 00307. Document bates stamped BP 00307 includes the following on the copyright page:

> First published by TAN Books in 1974. Reprinted by TAN as successor-in-interest to B. Herder Book Company and in accordance with 104A(d)(3) of Title 17 of the US Code.
>
> TAN Books
> Charlotte, North Carolina
> www.TANBooks.com
> 1974

Document BP 00307, which was produced by Plaintiff to Defendant on June 19, 2017, is the exact same document that Plaintiff lists as Exhibit 8 to Plaintiff's proposed Second Amended Complaint and that Plaintiff now seeks to rely upon as "new facts" in moving to amend its First Amended Complaint to add a claim under the DMCA. (Exhibit 3).

Plaintiff served Defendant with discovery requests on October 20, 2017. Request for Production of Documents number 42 of Plaintiff's First Set of Written Discovery asked that Defendant "Produce any revised edition(s) of *Fundamentals* that You directed, authored or participated in some small or substantial way." On November 24, 2017, in response to Plaintiff's First Set of Written Discovery, Defendant produced a copy of *Fundamentals* containing the bates stamped documents SBPP-1942 to SBPP-01947. Documents SBPP-1942 to SBPP-01947 are the exact same six pages of advertisements that Plaintiff now relies upon to attempt to assert a new UDTP claim. (Doc. No. 51-26; Exhibit 4).

For Plaintiff to claim that the facts it is relying upon to bring its DMCA and UDTP claims are "new" or "newly discovered" is flagrantly false as Plaintiff has had the "new facts" it relies upon for its DMCA claim since at least June 19, 2017 and the "new facts" it relies upon for its UDTP claim since at least November 24, 2017.

## C. <u>Plaintiff unduly delayed in bringing its Motion for Leave.</u>

"[A] motion to amend should be made as soon as the necessity for altering the pleading becomes apparent." *Deasy v. Hill*, 833 F.2d 38, 41 (4th Cir. 1987). When a party delays in moving to amend its pleading, it "is acting contrary to the spirit of [Fed. R. Civ. P. 15(a)]." *Id.* Denial of a motion to amend a pleading is proper when the reasons a party gives for waiting to amend its pleading, like here, are not supported by the record. *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 440-41 (4th Cir. 2011) (Upholding the district court's denial of a motion to amend to add a counterclaim and finding undue delay and prejudice when the record did not support the moving party's assertion that it couldn't move to amend its pleading until it received certain financial information and had the financial information interpreted by an expert.); *Jones v. HSBC Bank USA, N.A.*, 444 Fed. Appx. 640, 643 (4th Cir. 2011). (Upholding the district court's denial of Plaintiff's motion to amend his complaint despite Plaintiff's contention that he only recently learned of the facts supporting amending his complaint when the record contained ample evidence that the moving Plaintiff either knew, or should have known, of the facts considerably earlier.).

As Plaintiff has had the information necessary to bring the claims it now seeks to add since at least June 19, 2017 and November 24, 2017, Plaintiff cannot in good faith state that it just discovered the facts it now attempts to rely upon.

## II. <u>Plaintiff's Proposed Claims Pursuant to N.C. Gen. Stat. §75.1 *et al* Are Futile.</u>

Plaintiff's claims for unfair and deceptive trade practices pursuant to N.C. Gen. Stat. §75.1 *et al.* should not be allowed because such amendments are preempted by the Copyright Act and therefore the amendments would be futile.

As Plaintiff concedes in its Motion for Leave, Plaintiff's previous UDTP claim was dismissed with prejudice by the Court on August 8, 2017 because Plaintiff's UDTP claim was not quantitatively different from its copyright infringement claim and was therefore preempted by the Copyright Act. (Doc. No. 51; Doc. No. 27). Because Plaintiff seeks to again assert the same kind of facts that it asserted in support of its UDTP claim in its First Amended Complaint, Defendant repeats here much of the same arguments it relied upon in Defendant's Brief in Support of its Motion to Dismiss Count II of Plaintiff's First Amended Complaint. (Doc. No. 20).

In paragraphs 321 through 354 of Plaintiff's proposed Second Amended Complaint, Plaintiff seeks to add three North Carolina UDTP claims. Although Plaintiff seeks to add UDTP claims for three separate works (*Fundamentals, This Tremendous Lover,* and *The Curé d'Ars)*[11], the basis for asserting the claims are the same: that Defendant added advertisements to the back of its printings of each work.[12]

Paragraph 322 of Plaintiff's proposed Second Amended Complaint states:

> Defendant's addition to and alternation of *Fundamentals* with six pages of advertising – six pages of material promoting Defendant's products and brand, and deceptively implying that Defendant had rights in and to *Fundamentals* – has caused and is likely to cause the public, consumers, potential consumers and the trade to believe, mistakenly, that Defendant owned copyright rights in *Fundamentals* or was otherwise authorized to publish, offer for sale, distribute, and sell *Fundamentals.*

Although paragraph 322 deals only with *Fundamentals*, Plaintiff relies on the exact same facts for asserting its UDTP claims for *This Tremendous Lover,* and *The Curé d'Ars;* therefore, the below

---

[11] Defendant maintains that none of the claims regarding any of the 12 new works should be allowed for reasons stated elsewhere in this Response.

[12] Plaintiff alleges that Defendant added six pages of advertisements to *Fundamentals*, three pages of advertisements to *This Tremendous Lover* and three pages of advertisements to *The Curé d'Ars*. (Doc. No. 51, ¶¶15-16; Doc. No. 51-1, ¶46).

analysis applies to all UDTP claims regarding all three works. (Doc. No. 51-1, ¶¶ 322, 334, and 335).

In determining whether or not an amendment to a pleading will be futile, the court applies the same standard as it does when deciding a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6). *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).

While the non-movant's factual allegations are presumed true in deciding if an amendment to a pleading would be futile, legal conclusions disguised as factual allegations are not entitled to the same presumption, and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007)); *United Healthcare Servs. v. Richards*, No. 3:09-CV-215, 2010 U.S. Dist. LEXIS 104318, at *7-8 (W.D.N.C. July 2, 2010); *Rutledge v. High Point Reg'l Health Sys.*, 558 F. Supp. 2d 611, 616 (M.D.N.C. 2008).

The Seventeenth, Eighteenth, and Nineteenth claims for violation of North Carolina's UDTP statute in Plaintiff's proposed Second Amended Complaint fail to state a claim for which relief can be granted and are futile because (1) the Seventeenth, Eighteenth, and Nineteenth claims for relief are based on conclusory allegations which merely present a formulaic recitation of the elements of that claim, and (2) the UDTP claims are preempted by the Copyright Act.

The Copyright Act, 17 U.S.C. § 301(a), states in part:

> On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright…in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright… are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

The Copyright Act is one of the few federal statutes with enough force to completely preempt a state law claim. *Rosciszewski v. Arete Assocs.*, 1 F.3d 225, 231 (4th Cir. 1993) (holding that the Virginia Computer Crimes Act was preempted by the Copyright Act where the core of both causes of action was the unauthorized copying of a computer program). When deciding if a state law claim is preempted by the Copyright Act, the court determines whether: (1) the work is "within the scope of the subject-matter of copyright…" and (2) whether "the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright…."*Id.* at 229 (internal citations omitted).

As *Fundamentals, This Tremendous Lover,* and *The Curé d'Ars* are literary works to which Plaintiff claims exclusive rights, the works fall "within the subject matter of copyright" and the first prong of the preemption test is satisfied. 17 U.S.C. §102(a)(1); *Rutledge*, 558 F. Supp. 2d at 616.

To determine if the remaining prong of the preemption test is met, the Fourth Circuit applies the "extra element" test:

> State-law claims that infringe one of the exclusive rights contained in [17 U.S.C.] §106 are preempted by [17 U.S.C.] §301(a) if the right defined by state law may be abridged by an act which, in and of itself, would infringe one of the exclusive rights…. However, if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action,…there is no preemption, provided that the extra element changes the nature of the action so that it is *qualitatively* different from a copyright infringement claim.

*Rosciszewski*, 1 F.3d at 229-30 (emphasis in original) (internal citations omitted); *Rutledge*, 558 F. Supp. 2d at 617. Pursuant to 17 U.S.C. § 106, an owner of a copyright has the exclusive right to (1) reproduce the work, (2) prepare derivative works based on the work, (3) distribute copies of

the work, (4) perform the work publicly, (5) display the work publicly and (6) in the case of sound recordings, perform the work publicly by means of digital audio transmission. *Id.* at 230.

Therefore, state law claims that assert infringement of one of the exclusive rights outlined in 17 U.S.C. §106 are preempted by the Copyright Act if the rights granted by state law are equivalent to any of the exclusive rights granted by 17 U.S.C. §106. *Bell v. E. Davis Int'l, Inc.,* 197 F. Supp. 2d 449, 463 (W.D.N.C. 2002) (holding that plaintiff's UDTP claim was preempted by the Copyright Act because plaintiff was "not required to prove any 'extra element' under the North Carolina law."), *aff'd*, 45 Fed. Appx. 253 (4th Cir. 2002); *Rutledge,* 558 F. Supp. 2d at 620 (holding that plaintiff's North Carolina UDTP claim was preempted by the Copyright Act because the UDTP claim rested on nothing more than the unauthorized "reproduction, display and distribution of the allegedly protected materials.").

In applying the "extra element" test, the Fourth Circuit compares the "required" or "necessary" elements of the state law claim to the Copyright Act. *Rosciszewski*, 1 F.3d at 229-30; *Rutledge,* 558 F. Supp. 2d at 618. To avoid preemption, the extra element must be such that it causes the state law claim to stand apart from the copyright infringement claim, and the state law claim must incorporate elements beyond those necessary to prove copyright infringement. *Rosciszewski*, 1 F.3d at 230; *Bell,* 197 F. Supp. 2d at 463. In cases "[w]here courts have found an extra element sufficient to avoid preemption…the record frequently, but not always, reflects a separate cause of action alleging the additional claim." *Rutledge*, 558 F. Supp. 2d at 617-18. It is noteworthy that no such separate cause of action is alleged here.

To establish a copyright infringement claim, a plaintiff must show that plaintiff holds a valid copyright and "encroachment on one of the exclusive section 106 rights conferred by the copyright." *Id.* at 619. To establish an unfair and deceptive trade practices claim, a plaintiff must

show that: (1) the defendant engaged in conduct that was unfair or deceptive; (2) the complained of act were in and affecting commerce; and (3) the act injured the plaintiff. N.C. Gen. Stat. §75.1 (2016); *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001).

Plaintiff's three UDTP claims fail because Plaintiff has not alleged any elements sufficient to establish that its UDTP claim is *qualitatively* different from its copyright infringement claims. *Rosciszewski*, 1 F.3d at 229-30 (finding plaintiff's Virginia Computer Crimes Act claim preempted by the Copyright Act where the core of the claim is the unauthorized copying of a computer program); *Iconbazaar, L.L.C. v. Am. Online, Inc.*, 308 F. Supp. 2d 630, 637 (M.D.N.C. 2004) (dismissing plaintiff's North Carolina UDTP claim and finding it preempted by the Copyright Act because "there are no additional elements *required* in order to state an unfair trade practices claim than there are required to state a copyright claim.") (emphasis in original); *Bell*, 197 F. Supp. 2d. at 463 (finding that plaintiff's North Carolina UDTP claim was preempted by the Copyright Act because plaintiff was not required to prove any extra element to establish the UDTP claim); *Blood v. Titan Sports, Inc.*, No. 3:94-CV-307, 1997 U.S. Dist. LEXIS 24485 (W.D.N.C. May 13, 1997) (finding that all of plaintiff's state law claims, including plaintiff's UDTP claim, were preempted by the Copyright Act because the claims did not require elements beyond those necessary to prove copyright infringement).

Here, Plaintiff merely alleges that Defendant's additions of advertisements for other works to the back of *Fundamentals, This Tremendous Lover,* and *The Curé d'Ars*:

> has caused and is likely to cause the public, consumers, potential customers, and the trade to believe, mistakenly, that Defendant owned copyright rights in [*Fundamentals, This Tremendous Lover,* and *The Curé d'Ars*] or was otherwise authorized to publish, offer for sale, distribute, and sell [*Fundamentals, This Tremendous Lover,* and *The Curé d'Ars*].

(Doc No. 51-1, ¶¶ 322, 334, 345).

Plaintiff further alleges that the addition of the advertisements:

> deceptively impl[ied] that Defendant had rights in and to [*Fundamentals, This Tremendous Lover,* and *The Curé d'Ars*] – was in and commerce, affected commerce, and is consumer-oriented.

(Doc No. 51-1, ¶¶ 323, 335, 346).

And would:

> [c]reate a likelihood of confusion regarding the source and owner of [*Fundamentals, This Tremendous Lover,* and *The Curé d'Ars*].

(Doc No. 51-1 ¶¶ 324, 336, 347).

The UDTP claims that Plaintiff seeks to add are nothing more than copyright infringement claims in thin disguise. Plaintiff's UDTP claims require nothing more than the same elements required to establish a copyright infringement claim because all copyright infringement claims require that the plaintiff allege that the defendant committed an act that was unfair, deceptive or misrepresentative, was in and affecting commerce, and resulted in an injury to the plaintiff. *See Bell,* 197 F. Supp. 2d. at 463 (finding that plaintiff's North Carolina UDTP claim was preempted by the Copyright Act because plaintiff was not required to prove any extra element to establish a UDTP claim); *Rutledge*, 558 F. Supp. 2d at 619 (finding that North Carolina UDTP claim does not require an element in addition to those necessary to constitute a prima facie claim of copyright infringement).

Even those courts that appear to have looked beyond the "elements" of the claims and considered the underlying factual allegations of the state law claims have consistently found that the UDTP claim is preempted by the Copyright Act <u>unless</u> the plaintiff makes a factual allegation that makes the UDTP claim *qualitatively* different from the copyright claim. *Id.* Such "extra elements" in an unfair competition claim that might avoid preemption include allegations of a

"breach of fiduciary duty, breach of a confidential relationship, [or] palming off[13] of the defendant's products as those of the plaintiff's," none of which are alleged here. *Id.* at 617; *Old S. Home Co. v. Keystone Realty Grp.*, 233 F. Supp. 2d 734, 738 (M.D.N.C. 2002) (dismissing plaintiff's North Carolina UDTP claim and finding it preempted by the Copyright Act because plaintiff did not allege that defendants "violated any right other than the exclusive rights guaranteed under Section 106 of Copyright Act."); *Blood,* 1997 U.S. Dist. LEXIS 24485, at *32 (finding that plaintiff failed to show -- as a legal or factual matter -- why his state law claims [including his UDTP claim] were not preempted by the Copyright Act). *Cf. Innovative Med. Prods. v. Felmet*, 472 F. Supp. 2d 678, 683 (M.D.N.C. 2006) (denying copyright preemption where plaintiff alleged more than the "unfair copying or distribution of copies" inherent in a copyright claim, and, in addition, alleged that defendant "passed off" its goods as those of the plaintiff).

Plaintiff's UDTP claim is preempted regardless of whether the court analyzes solely the elements of the UDTP claim or, in addition, considers the "facts" Plaintiff has alleged to support them. Should the court look only to the necessary and required elements of the claim – as in *Rosciszewski*, *Iconbazaar,* and *Bell,* Plaintiff's UDTP claim should be dismissed because the UDTP claim does not require any extra element so as to make the claim qualitatively different from the copyright infringement claim. Plaintiff has not alleged here any facts sufficient to save the UDTP claim from preemption. Plaintiff's UDTP claim rests entirely on Defendant's alleged copying, advertising, publishing, and selling of Plaintiff's work, which is the crux of a copyright

---

[13] "Palming off" or "passing off" occurs when the defendant misrepresents to the public that a work created by the defendant was created by the plaintiff – as when an infringer sells a lookalike of a name brand product and advertises it as being manufactured by the owner of the name brand. "Reverse palming off" or "reverse passing off" occurs when the defendant represents to the public that the alleged copyrighted work is his own. *Rutledge*, 558 F. Supp. 2d at 620-21; 1.1 Nimmer on Copyright §1.01 (2015). An allegation of palming off or passing off may avoid the preemption of a UDTP claim, but an allegation of reverse palming off or reverse passing off will not avoid preemption, since the allegations are the basis of a copyright claim. *Rutledge*, 558 F. Supp. 2d at 621.

infringement claim. *Old S. Home Co.*, 233 F. Supp. 2d at 737 (holding that allegations that defendant infringed plaintiff's copyrights in order to unfairly compete were insufficient to overcome preemption by the Copyright Act); *Rutledge*, 558 F. 2d at 620 (holding that plaintiff's UDTP claim was preempted because no free-standing cause of action for misrepresentation asserted, and the acts upon which the UDTP claim was predicated are not different from those giving rise to the Copyright Act); 1-1 *Nimmer on Copyright* § 1.01 (2015).

Plaintiff's Motion for Leave should be denied as Plaintiff's UDTP claims are again preempted by the Copyright Act and, therefore, are futile.

## III. Defendant Will Be Prejudiced If The Motion For Leave Is Allowed.

Defendant shall suffer substantial prejudice if Plaintiff's Motion for Leave is allowed.

The proposed Second Amended Complaint is 129 pages and 287 paragraphs longer than Plaintiff's First Amended Complaint, seeks to add claims relating to 12 completely different works (none of which are related to *Fundamentals*) and seeks to add 18 new claims for relief. Of the 18 new claims, 16 are solely related to the 12 new works. None of the 16 claims relating to the new works relate to, or arise out of, the same transactions or occurrences as the factual basis for the infringement claim asserted in Plaintiff's First Amended Complaint. As stated above, the remaining two new proposed claims were claims Plaintiff has long since had knowledge of and should not be allowed to be added at this stage of the litigation.

"Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing. . . . [and] the further the case progressed … the more likely it is that the amendment will prejudice the defendant or that a court will find bad faith on the plaintiff's part." *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 439 (4th Cir. 2011). In determining if a party should be allowed to amend a pleading, the court looks to "the particular

circumstances presented, including previous opportunities to amend and the reason for the amendment." *Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278 (4th Cir. 2018); *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.,* 43 F.3d 922, 940 (4th Cir. 1995) (Finding that the district court did not abuse its discretion where the proposed amendment would have substantially changed the nature of the litigation and would have required substantial new discovery involving third parties); *see, Deasy v. Hill*, 833 F.2d 38, 42 (4th Cir. 1987) ("Belated claims which change the character of litigation are not favored."); *Fairfield Resorts, Inc. v. Fairfield Mts. Prop. Owners Ass'n,* No. 1:06 CV 191, 2007 U.S. Dist. LEXIS 5239, at *26 (W.D.N.C. Jan. 19, 2007) (Denying Plaintiff's motion for leave to file a second amended complaint when the proposed amendment sought to add five state law claims for damages that would have required "extensive fact-specific discovery on entirely new allegations" nearly tripling its claims when discovery was set to close in less than one month and despite the parties having jointly moved to extend the discovery deadline.).

For the almost two years that this case has been ongoing it has been about one work and only one work – *Fundamentals of Catholic Dogma*. Not only does this case involve complicated facts, but it also involves complicated law with liability turning on the interpretation and application of a sparsely litigated aspect of U.S. Copyright law sometimes referred to as the "restoration act." As Plaintiff itself has stated in prior pleadings, this current case is one of "legal complexity" with a "lack of case law on point" and involving the "production of over a half-century of discoverable evidence." (Doc. No. 31, ¶ 28; Doc. No. 37, p. 6).

Plaintiff's Motion for Leave proposes to add 12 new works, all older works with different publication dates, different countries of origin, and different authors than *Fundamentals.* Plaintiff's proposed Second Amended Complaint alleges that the restoration act is applicable to

some of the additional works and not applicable to others, that Defendant had rights to some of the works at one time and no rights to others. To allow the Motion for Leave at this juncture of the litigation would unduly burden Defendant in that Defendant, now facing a February 11, 2018 trial date, would be hard pressed to complete discovery on the new claims.

The parties have already engaged in extensive discovery in this case with Defendant having deposed Plaintiff, Defendant having retained an expert witness and produced an expert witness, report, and the parties having exchanged five separate sets of discovery and over seven-thousand documents to date. In addition to the extensive discovery, the parties have engaged in two day long settlement conferences and one meditation, which resulted in Defendant serving an Offer of Judgment on Plaintiff. Pursuant to Fed. R. Civ. P. 68, Defendant justifiably relied upon the limited issues contained in Plaintiff's First Amended Complaint to calculate the figure presented in its Offer for Judgment. Defendant served its Offer for Judgment not just as a means to limit the costs and/or attorney fees that Defendant would have to pay Plaintiff should Plaintiff succeed at trial, but so Defendant would also have an opportunity to recover costs and attorney fees should Defendant succeed at trial.

Allowing Plaintiff's Motion for Leave at this stage of the litigation would thus substantially prejudice Defendant in numerous ways in that it would:

1. Drastically expand and alter the nature of the litigation as it raises entirely new issues and new works that do NOT relate to, or arise out of, the same transactions or occurrences as the factual basis alleged in support of the claim asserted in the First Amended Complaint thereby requiring Defendant to litigate an entirely new and different case under a short time frame;

2. Require substantial new discovery including possible discovery involving third parties in other countries thereby placing Defendant at a severe disadvantage in that Defendant would have to expend considerable resources to try and gather the facts necessary to defend itself and Defendant would not have adequate time to complete discovery before trial; and

3. Make the Offer of Judgment Defendant served on Plaintiff moot thereby preventing Defendant from obtaining costs and attorney fees that it may otherwise be entitled to should Defendant succeed at trial.

In summary, justice requires that Plaintiff's Motion for Leave be denied.

## CONCLUSION

As Plaintiff unduly delayed in bringing its Motion for Leave, the Motion for Leave seeks to add futile claims and would substantially prejudice the Defendant if it is allowed, Saint Benedict Press, LLC, requests that Plaintiff's Motion for Leave to File A Second Amended Verified Complaint and Supplement Pleading and Incorporated Supporting Memorandum of Law be DENIED.

This the 22nd day of August, 2018.

/s/ Natalie D. Potter
Natalie D. Potter, N.C. State Bar No. 34574
Jonathan E. Buchan, N.C. State Bar No. 8205
Attorneys for Defendant
Essex Richards, PA
1701 South Blvd.
Charlotte, NC 28203
Telephone: (704) 377-4300
Facsimile: (704) 372-1357
Email: npotter@essexrichard.com
Email: jbuchan@essexrichards.com

**CERTIFICATE OF SERVICE**

I hereby certify I electronically filed this document through the CM/ECF system, which will send a notice of electronic filing to:

Mark W. Ishman
Ishman Law Firm, P.C.
mishman@ishmanlaw.com
*Attorney for Plaintiff*

Kristin G. Garris
Tannenbaum Helpern Syracuse & Hirschtritt, LLP
garris@thsh.com
*Attorney for Plaintiff*

This the 22nd day of August, 2018.

/s/ Natalie D. Potter

Natalie D. Potter, N.C. State Bar No. 34574
Jonathan E. Buchan, N.C. State Bar No. 8205
Attorneys for Defendant
Essex Richards, P.A.
1701 South Blvd.
Charlotte, NC 28203
Telephone: (704) 377-4300
Facsimile: (704) 372-1357
Email: npotter@essexrichards.com
Email: jbuchan@essexrichards.com