IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:16-cv-00695-GCM

| | |
|---|---|
| BARONIUS PRESS, LTD., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SAINT BENEDICT PRESS LLC, | ) |
| | ) |
|     Defendant. | ) |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION
TO COMPEL DEFENDANT TO CORRECT DESIGNATION OF NON-
SENSITIVE, NON-TRADE SECRET DOCUMENTS FROM ATTORNEYS'
EYES ONLY TO CONFIDENTIAL AND MEMORANDUM IN SUPPORT OF
DEFENDANT'S FIRST MOTION FOR A PROTECTIVE ORDER**

Defendant Saint Benedict Press, LLC ("Saint Benedict"), by and through its undersigned counsel, submits this Response to Plaintiff's Motion to Compel Defendant to Correct Designation of Non-Sensitive, Non-Trade Secret Documents from Attorneys' Eyes Only to Confidential and Memorandum in Support of Defendant's Motion for a Protective Order ("Response and Memorandum").

**I.    INTRODUCTION**

This case is a copyright infringement case involving a single work, the English translation of a book, *Fundamentals of Catholic Dogma* (the "Work"), originally published in the 1950's. The Work had been published by Defendant's predecessor, TAN Books and Publishing, Inc. ("TAN"), since 1974. Defendant acquired certain assets of TAN in 2008 after TAN filed for bankruptcy,

1

including TAN's rights to publish the Work. Plaintiff and Defendant are competitors in the Catholic book publishing business. Both parties claim rights to publish the Work.

Plaintiff's Motion to Compel Defendant to Correct Designation of Non-Sensitive, Non-Trade Secret Documents from Attorneys' Eyes Only to Confidential (Doc. 61) ("Plaintiff's Second Motion to Compel") seeks to have this Court direct Defendant to remove the "Attorneys' Eyes Only" designation from:

(1) a draft of the never-published re-typesetting of the Work prepared by Defendant, although Plaintiff's counsel has not articulated any reason whatsoever that there is a need for Plaintiff to see this confidential and proprietary information;

(2) correspondence between Defendant and one of its consultants, which Plaintiff itself contends "are of no use to Plaintiff;" and

(3) customer service emails related to the Work. Plaintiff rebuffed Defendant's offer to allow redaction and de-designation of specific documents that Plaintiff has a need to use, and the majority of which Plaintiff alleges were "not requested and/or related" to the case. (Plaintiff has, since filing its Second Motion to Compel, now reversed course on Defendant's offer, and decided to accept it. *See* Section IV, pp. 9-12, *infra*.)

To be clear, Defendant, in efforts to be transparent in responding to Plaintiff's extensive and wide-ranging discovery requests, has produced documents responsive to Plaintiff's requests but has marked certain of them for "Attorney's Eyes Only," as contemplated by the parties and provided for by the Court's entry of the March 21, 2017 Consent Protective Order in this case. (Doc. No. 26)

Defendant is baffled by Plaintiff's motives for filing Plaintiff's Second Motion to Compel. Plaintiff fails to articulate any practical, litigation-related reason it needs to share this confidential and proprietary information with its client. Questions regarding its motives in seeking to remove

2

the "Attorneys' Eyes Only" designation from these documents are raised by: (1) Plaintiff's omitting certain material facts from Plaintiff's Second Motion to Compel; (2) the very nature of Plaintiff's Second Motion to Compel which seeks to have the "Attorneys' Eyes Only" designation removed from specific documents that Plaintiff itself argues "are of no use to Plaintiff" but are in fact documents that Plaintiff could use to compete unfairly against Defendant; (3) Plaintiff's rebuffing of Defendant's offer to redact and remove the "Attorneys' Eyes Only" designation from documents that Plaintiff's counsel claims it needs to disclose to Plaintiff; and (4) Plaintiff's failure to request a conference with the Court prior to filing Plaintiff's Second Motion to Compel as required by the September 25, 2017 Pretrial Order and Case Management Plan. (Doc. No. 29)

## II.     THE DRAFT OF THE UNPUBLISHED RE-TYPESETTING IS CONFIDENTIAL AND PROPRIETARY BUSINESS INFORMATION.

Early in the discovery process, on November 24, 2017, Defendant produced to Plaintiff a PDF of a re-typeset version of the Work which Defendant had prepared and contemplated publishing but did not publish (the "Re-typesetting"). This draft Re-typesetting was Bates stamped SBPP-00650 to SBPP-01379. Defense counsel at that time mistakenly understood that this draft Re-typesetting of the Work had actually been published and sold by Defendant, and for that reason produced to Plaintiff's counsel a PDF of this draft Re-typesetting on November 24, 2017, without the "Attorneys' Eyes Only" designation.

On March 9, 2018, Defendant produced to Plaintiff a PDF of what Defendant's counsel then under stood was a never-published draft re-typesetting, Bates stamped SBPP-02318 to SBPP-03047 (the "AEO Re-typesetting"). The AEO Re-typesetting was marked "Confidential – Attorneys' Eyes Only" because it was a draft of the Work that was never published, which Defendant did not want its competitor, the Plaintiff, to be able to access and take advantage of.

On May 10, 2018, Plaintiff sent Defendant two letters demanding that Defendant supplement Defendant's discovery responses. (Doc. No. 39-3; Exhibit 1 Letter from Mark Ishman, Counsel for Plaintiff to Natalie Potter and Jonathan Buchan, Counsel for Defendant (May 10, 2018)) On June 26, 2018, Defendant responded to both letters in a single nineteen-page response. (Doc. No. 47-3) In preparing Defendant's June 26, 2018 response, Defendant realized that the document produced on November 24, 2017 and Bates stamped SBPP-00650 to SBPP-01379 was the same document as the AEO Re-typesetting. Upon realizing this, Defendant so notified Plaintiff in its June 26, 2018 response and informed Plaintiff that both the November 24, 2017 production of that document and the March 9, 2018 production of that same document were designated as for "Attorneys' Eyes Only".[1] (Doc. No. 47-3)

Contrary to Plaintiff's statements in Plaintiff's Second Motion to Compel (Doc. No. 61, p. 3), Defendant <u>did</u> fully respond to Plaintiff's May 10, 2018 request in Defendant's June 26, 2018 letter. Plaintiff conveniently failed to include in Plaintiff's Second Motion to Compel Defendant's <u>entire</u> June 26, 2018 response to the relevant portion of Plaintiff's May 10, 2018 letter. Plaintiff's May 10, 2018 request is below in red font. Defendant's entire response to this portion of Plaintiff's request is below Plaintiff's request, with the portions of Defendant's response that were omitted from Plaintiff's Second Motion to Compel **bolded**:

---

[1] On February 2, 2018, Defendant had responded to a demand by Plaintiff that Defendant supplement its response to Plaintiff's Request for Production of Documents No. 42, which asked that Defendant "Produce any revised edition(s) of the [Work] that you directed, authored or participated in some small or substantial way." Defendant responded by stating "Saint Benedict has already produced to Plaintiff the only edition it has sold. We are in the process of obtaining a copy of the updated, unpublished edition and will produce it once we receive it, subject to the "attorney's eyes only" designation." (Doc. No. 47-2, p. 4)

4

Plaintiff's May 10, 2018 request for supplementation:

> **Produce the latest copy of TAN's new hard cover revised edition of Fundamentals, including Patrick Madrid's introduction, or confirm Documents SBPP-00650 - SBPP-1379 is the final file by responding to this Request that no other documents exists.**

Defendant's complete response to the above demand in Plaintiff's May 10, 2018 request for supplementation:

> Defendant incorporates its prior responses to Plaintiff's request for supplementation and adds that Defendant has produced both the draft version of Defendant's typesetting (see SBPP-00650 to SBPP-01379 and SBPP-02318 to SBPP-03047 (SBPP-00650 to SBPP-01379 should have been produced with the "Attorney Eyes Only – Confidential" designation and hereby designates it as such)) and the version that Defendant is currently selling. **Defendant is currently printing and selling the same edition of the work as TAN sold prior to Defendant's acquisition of TAN, changing only the cover and the copyright page. A copy of the version Defendant is currently selling was previously produced bearing bates stamp numbers SBPP-01382 to SBPP-01947 on November 24, 2017.** Defendant did not print a version of the work with an introduction from Patrick Madrid.

(Doc. No. 47-3, p. 15)

Not only did Plaintiff's Second Motion to Compel omit Defendant's <u>full</u> response to the May 10, 2018 demand for supplementation, but Plaintiff's Motion also failed to identify or articulate a litigation-related <u>reason</u> why Plaintiff's counsel needs to show the Re-typesetting or the AEO Re-typesetting (together the "Re-typesettings") to his client. Instead, Plaintiff argues that the Re-typesettings should be given to Plaintiff because "Plaintiff owns the complete copyright in the work…." Plaintiff's argument ignores the fact that Defendant has: (1) challenged the validity of the existence of an alleged valid copyright to the Work; (2) alleged that Defendant has rights in the Work; and (3) challenged Plaintiff's claims to the Work. (Doc. No. 17, p. 13) Plaintiff cannot rely on a "fact" that has yet to be proven in this case to gain access to proprietary and trade secret information. Plaintiff's only "need" for this unpublished version would be to use it to unfairly compete against Defendant.

5
Case 3:16-cv-00695-FDW-DCK   Document 69   Filed 09/25/18   Page 5 of 15

Documents are often withheld from the eyes of the parties themselves when the parties are, as they are in this case, competitors, and when the material to be disclosed could give the other party a competitive advantage. *See Layne Christensen Co. v. Purolite Co.,* 271 F.R.D. 240, 247 (D. Kan. 2010) ("A two-tier protective order that allows the parties in good faith to designate certain limited materials as 'Attorneys' Eyes Only' constitutes a practical and cost-effective way to protect their respective interests in their most sensitive information from a competitor, while complying with their obligations for discovery."); *Mainstreet Collection, Inc. v. Kirkland's, Inc.,* 270 F.R.D. 238, 246-47 (E.D.N.C. 2010) (declining to redesignate documents produced as "Highly Confidential – Attorneys' Eyes Only" to permit non-producing party access, finding information was "commercial or competitively sensitive information" even where parties were not direct competitors.)

Defendant began taking steps to re-typeset the Work in 2011. Defendant's Re-typesettings include corrections made to the original translation. Defendant ceased working on the Re-typesettings after this dispute arose with the Plaintiff and never published the Re-typesettings. Defendant considers the Re-typesettings to be proprietary information and a trade secret. Exhibit 2, Affidavit of John Conor Gallagher, ¶¶ 13-14.

Even Plaintiff has acknowledged the proprietary nature of the PDF Re-typesettings by itself refusing to produce to Defendant the PDF of its published version of the Work. (*See* Exhibit 3**,** (Email from Mark W. Ishman, Counsel for Plaintiff, to Natalie Potter, Counsel for Defendant (Sept. 10, 2018)): "With regards to your request of a pdf file, I spoke to my client about it. I was told that the PDF file my client has is a master file to produce Fundamental [sic], and there is **no way** the PDF file [sic] leaving their secure storage."[2]). (emphasis in original)

---

[2] This email from Plaintiff's counsel was in response to Defendant's counsel's request for a copy of the Work that Plaintiff alleges to be printing and selling. Plaintiff eventually produced a hard copy of the Work that Plaintiff is alleged to be selling, and Defendant no longer had a need for the PDF file.

6
Case 3:16-cv-00695-FDW-DCK   Document 69   Filed 09/25/18   Page 6 of 15

Just as Plaintiff did not want Defendant having access to a PDF file of Plaintiff's **published** version of the Work, Defendant does not want Plaintiff to have access to PDF files, or any other version, of Defendant's draft 730-page **unpublished** version of the Work with its contemplated changes. Plaintiff could use the Re-typesettings as a template by which to revise and make corrections to its own version of the Work.

Defendant, in good faith, inadvertently produced the Re-typesetting to Plaintiff's counsel in November 2017. Exhibit 2, ¶13. Had Defendant's counsel realized that Defendant was producing the unpublished draft of the Re-typesetting when it first produced it, Defendant's counsel would have marked it "Attorneys' Eyes Only." Plaintiff now seeks access to a document that Plaintiff does not need to pursue its case, but could use to unfairly compete against Defendant.

Pursuant to Defendant's First Motion for a Protective Order, filed contemporaneously herewith, Defendant is seeking an order from this Court confirming the designating of the Re-typesetting (SBPP-00650 to SBPP-01379) as "Attorneys' Eyes Only."

Defendant has no objection to the Re-typesetting being filed with the Court under seal for the Court's review and consideration.

### III. PLAINTIFF'S REQUEST THAT THE COURT REMOVE THE AEO DESIGNATION FROM SEVEN PAGES OF DOCUMENTS (SBPP-03386 TO SBPP- 03392) THAT "ARE NO USE TO PLAINTIFF" IS UNWARRANTED.

Plaintiff, curiously, seeks in its Second Motion to Compel, to have the Court direct the removal of the "Attorneys' Eyes Only" designation from seven pages produced to Plaintiff by Defendant and Bates stamped SBPP-03386 to SBPP-03392. These seven pages deal with Defendant's communications and negotiations with Patrick Madrid, a consultant of Defendant, who assisted with the Re-typesettings.

Plaintiff's Second Motion to Compel alleges that Plaintiff served Defendant with "Supplemental Requests for Production" seeking information about Mr. Madrid; however, Plaintiff did not serve Defendant a formal supplemental request, but instead, Plaintiff sought an informal <u>expansion</u> of its Request for Production of Document No. 42 in Plaintiff's May 10, 2018 letter. (Doc. No. 39-3) Plaintiff's initial Request for Production No. 42 asked that Defendant:

> No. 42  Produce any revised edition(s) of *Fundamentals* that You directed, authored or participated in [sic] some small or substantial way.

Plaintiff, under the mistaken belief that Defendant had printed a version of the Work with an introduction drafted by Patrick Madrid, demanded in its May 10, 2018 letter that Defendant:

> **Produce the latest copy of TAN's new hard cover revised edition of Fundamentals, including Patrick Madrid's introduction, or confirm Documents SBPP-00650 - SBPP-1379 is the final file by responding to this Request that no other documents exists.**

(Doc. No. 39-3, pp. 8-10)

As reflected in Defendant's full June 26, 2018 response to this portion of Plaintiff's May 10, 2018 letter, Defendant responded by referencing the Bates stamped range of the documents already produced to Plaintiff reflecting the only version of the Work that Defendant has published, stating that:

> "Defendant did not print a version of the work with an introduction by Patrick Madrid."

(Doc. No. 47-3, p. 15)

In good faith, and to demonstrate Defendant's transparency in the discovery process, on June 27, 2018, Defendant produced to Plaintiff all documents that it was able to identify regarding Patrick Madrid and the Work. Exhibit 4, Letter from Natalie Potter, Counsel for Defendant, to Mark W. Ishman, Counsel for Plaintiff (June 27, 2018). These documents consisted of **only seven pages** total. Defendant produced these seven pages – not to "put burden on Plaintiff's attorney and

8
Case 3:16-cv-00695-FDW-DCK   Document 69   Filed 09/25/18   Page 8 of 15

… to increase Plaintiff's costs," as Plaintiff claims, but because Defendant believed that they related to the Work, consisted of only a very small number of pages (seven pages total), and would satisfy Plaintiff's concerns regarding Mr. Madrid.

Defendant marked these seven pages as "Attorney Eyes Only" because they dealt with negotiations and financial arrangements with one of Defendant's consultants, Mr. Madrid, who had only a tangential involvement with the Work. Defendant considers its confidential arrangements with consultants to be proprietary because Defendant's competitors, such as Plaintiff, could use the information to negotiate better arrangements with Defendant's consultants.

Just as with Plaintiff's demand regarding Defendant's Re-typesettings, Plaintiff does not even attempt to articulate any reason whatsoever as to why Plaintiff's counsel needs to show Plaintiff these seven pages. In fact, Plaintiff's motion establishes that Plaintiff's counsel has <u>no reason</u> to show his client these seven pages, arguing that these seven pages "do not relate to the current case and are of no use to Plaintiff." (Doc. No. 61, p. 5) Therefore, the only reason Plaintiff's counsel would need to provide Plaintiff with these seven pages is so Plaintiff could use them to Plaintiff's competitive advantage, or to needlessly require Defendant to incur time and resources in responding to Plaintiff's meritless assertions regarding these documents.

Finally, Plaintiff fails to allege any facts supporting its sweeping, unfounded accusation that Defendant produced these seven pages "to put the burden on Plaintiff's attorney and as such to increase Plaintiff's cost." It is inconceivable that it took Plaintiff's attorney more than ten minutes to review the seven pages; however, Defendant has had to expend considerable time responding to Plaintiff's unwarranted motion. If any party has purposefully increased the cost of this litigation, it is Plaintiff, by the filing of its unwarranted and unsupported motion.

Defendant has no objection to Plaintiff's counsel filing the seven pages under seal for the Court's consideration.

## IV. DEFENDANT'S CUSTOMER NAMES, CONTACT INFORMATION AND WHOLESALE TRADE TERMS AND PRICING IS PROPRIETARY AND A TRADE SECRET.

The most telling question about Plaintiff's motives in filing its Second Motion to Compel arises in the section of Plaintiff's motion regarding the customer emails that were produced by Defendant to Plaintiff and which were wholesale and retail customer service emails bearing Bates stamped numbers SBPP-03084 to SBPP-03385 ("Customer Emails").

Defendant produced the Customer Emails in response to Plaintiff's Request for Production No. 8, which asked that Defendant:

> Provide all email correspondence of any sales prospect or customer (i.e., an inquirer) enquiring about *Fundamentals* and asking/seeking when *Fundamentals* will be back in stock/for sale. This Request also seeks TAN's responses to those inquirers for the period March 2011 - March 2014.

To which Defendant responded:

> All customer service emails from prior to 2014 were lost during an exchange server migration. Defendant is in the process of gathering and reviewing customer service emails from January 1, 2014 to March 31, 2014. It is unknown whether or not any of the customer service emails are responsive to this Request. Defendant will supplement its response to this Request at a later time if responsive emails are located. See also documents bates stamped SBPP-00292 to 00295, which were previously produced.

(Doc. No. 47-4, p. 6)

Defendant reasonably understood Plaintiff's request to be seeking all customer emails regarding the Work.

In response to Plaintiff's May 10, 2018[3] letter, Defendant produced to Plaintiff on June 26, 2018, 302 pages which were wholesale and retail customer service emails asking about the Work,

---

[3] Plaintiff states in its Second Motion to Compel that "Defendant stated to Plaintiff during its March 15, 2018 meet and confer conference call that it would not be supplementing any more of its responses to Plaintiff's discovery requests." (Doc. No. 61, p. 9) Plaintiff's counsel appears confused, because this is not a true statement. In support of the statement, Plaintiff cites to "(Dkt. No. 47.5; Ex. 4 to Memorandum in Opposition)" which is a March 15, 2018 email between Defense counsel, Natalie D. Potter, and Plaintiff's counsel, Mark Ishman, whereby Ms. Potter states

purchasing the Work and/or placing back orders for the Work ("Customer Emails"). Prior to producing the Customer Emails, Defense counsel reviewed the documents it received from Defendant and removed any emails that did not appear related to the Work. Prior to producing the Customer Emails, Defendant marked them as "Confidential – For Attorney's Eyes Only" because the Customer Emails contained customer names, customer contact information, and wholesale customer pricing and wholesale customer terms. This is propriety customer information that Defendant does not want its competitor, the Plaintiff, to be able to access. Exhibit 2, ¶¶ 4-7.

On August 29, 2018, Defendant's counsel, Natalie Potter, sent a letter to Plaintiff's counsel, Mark Ishman, making the following offer to resolve this dispute:

> If there are certain, specific, documents that you need to show your client that you would like us to redact, my client is willing to consider such a request, however, it is not willing to incur the hours of time and the associated expense to redact such information from all 300 plus pages of document without some further explanation as to why undergoing such an expense would be necessary.

(Doc. No. 61-3 p. 2)

On August 31, 2018, during the meet and confer telephone conference regarding the "Attorneys' Eyes Only" designation of Customer Emails, Ms. Potter <u>again</u> offered to Plaintiff's counsel, Mark Ishman, the option of Defendant redacting confidential information from specific documents identified by Plaintiff and removing the "Attorneys' Eyes Only" designation from the redacted documents so that Plaintiff's counsel could show Plaintiff the documents or otherwise

---

that Defendant has produced "all non-privileged documents responsive to [Mr. Ishman's] request." (Doc. No. 47-5) What Plaintiff fails to disclose in its Second Motion to Compel is that this statement was in reference to <u>completely different</u> discovery requests. This exchange between the parties was in reference to a letter from Mark Ishman to defense counsel dated January 10, 2018. (Doc. No. 39-2) This January 10, 2018 letter does <u>not</u> ask Defendant to supplement Defendant's response to Request No. 8, and Plaintiff did not ask Defendant about supplementing its response to Request No. 8 **until** its 12-page May 10, 2018 letter. (Doc. No. 39-3) Plaintiff in fact did not ask that Defendant remove the "Attorneys' Eyes Only" designation from the Customer Emails until August 8, 2018, and Defendant responded to Plaintiff's request on August 29, 2018. (Doc. Nos. 61-2; 61-3) Defendant's counsel notes that during that time period, it was deeply engaged in preparing its Response in Opposition to Plaintiff's Motion for Leave to File a Second Amended Complaint (Doc. 57), which Defendant filed on August 23, 2018.

11

use them as Plaintiff's counsel deemed necessary. (Doc. Nos. 61, p. 7; 61-3, p. 2) During the same August 31, 2018 teleconference, Defendant's counsel also offered, as an alternative to Defendant's counsel redacting specific documents, that Plaintiff's counsel could redact the confidential information from the documents, share the redacted versions with Defendant, and upon Defendant's satisfaction that all confidential information had been removed, Defendant would agree that the "Attorney's Eyes Only" designation would not apply to the redacted documents.

Plaintiff flatly rebuffed Defendant's offer and instead of working with Defendant to find a solution that would work for both parties, Plaintiff chose to file its Second Motion to Compel.

<u>After</u> the filing of its Second Motion to Compel, and <u>after</u> subjecting Defendant to the time and expense of addressing this issue in drafting this Response, Plaintiff on September 20, 2018 at 4:40 p.m. – nine days after filing its Second Motion to Compel – sent Defendant's counsel a letter regarding this very issue. Having finally analyzed Defendant's practical solution, Plaintiff offered to accept the precise proposal Defendant had offered to Plaintiff just weeks before. Exhibit 5 Letter from Mark W. Ishman, Counsel for Plaintiff to Jonathan Buchan and Natalie Potter, Counsel for Defendant (Sept. 20, 2018).

Despite Defendant's standing offer of this very solution, at no time prior to September 20 had Plaintiff ever requested that specific documents be redacted so that Plaintiff could use the documents, or submitted any redacted documents for Defendant's consideration. Nor had Plaintiff asked Defendant to consent to Plaintiff submitting the documents to the Court under seal for its review and determination, to which Defendant would have readily consented.

In any event, Plaintiff's vague reference in its Second Motion to Compel to its inability to use the Customer Emails "in its Reply to Defendant's Response in Opposition to Plaintiff's Motion For Leave to File a Second Amended Verified Complaint and Supplementing Pleading," (Doc. 61, p. 2) has no merit. Plaintiff filed that Reply on September 7, 2018, nine days <u>after</u> Defendant

12
Case 3:16-cv-00695-FDW-DCK   Document 69   Filed 09/25/18   Page 12 of 15

first made the offer to allow redacted documents to be disclosed (which Plaintiff has now accepted). Plaintiff chose not to work with Defendant in resolving the discovery dispute in good faith and, instead, filed Plaintiff's Second Motion to Compel.

Aside from these vague references about needing the Customer Emails for its Reply to Defendant's Response in Opposition, Plaintiff's counsel offers no reason why Plaintiff's counsel needs to show the Customer Emails to Plaintiff. Instead, Plaintiff on the one hand cites to cases dealing with a party's failure to respond to discovery requests, while on the other hand arguing that Defendant has been too expansive in responding to Plaintiff's discovery requests.

Although Plaintiff alleges that Defendant has overused the "Attorneys' Eyes Only" designation, the facts do not support Plaintiff's statements. The parties clearly contemplated at the beginning of this litigation that certain information be designated as "Attorneys' Eyes Only" as provided for in the March 21, 2017 Consent Protective Order. Plaintiff's counsel in fact invoked the "Attorneys' Eyes Only" protection several times during the Rule 30(b)(6) deposition of Plaintiff Baronius Press.

In Plaintiff's calculation of the number of documents that Defendant has marked with as for Attorneys' Eyes Only, Plaintiff includes Defendant's draft 730-page unpublished Re-typesetting of the Work. Besides the draft Re-typesetting, Defendant produced its Customer Emails which amounted to 302 documents, and 54 other documents. The 54 other documents included loan documents relating to Defendant's purchase of TAN, and other documents containing customer information. Defendant has not overused or abused the "Attorneys' Eyes Only" designation.

Finally, just as Plaintiff chose not to work with Defendant in coming up with an acceptable solution for both parties -- which Plaintiff has now reconsidered and reversed course on -- Plaintiff chose not to follow the September 25, 2017 Pretrial Order and Case Management Plan and request

a conference with the Court before filing Plaintiff's Second Motion to Compel. Had Plaintiff requested such a conference, it is likely that its motion would not have been necessary as Defendant is, and has always been, willing to work with the Plaintiff to resolve discovery disputes.

## V. CONCLUSION

For the foregoing reasons Defendant, Saint Benedict Press, LLC, requests that: (1) its Motion for a Protective Order be GRANTED; and (2) Plaintiff's Motion to Compel Defendant to Correct Designation of Non-Sensitive, Non-Trade Secret Documents from Attorneys' Eyes Only to Confidential be DENIED.

Respectfully submitted this 25th day of September, 2018.

/s/ Jonathan E. Buchan
Jonathan E. Buchan, N.C. State Bar No. 8205
Natalie D. Potter, N.C. State Bar No. 34574
Attorneys for Defendant
Essex Richards, PA
1701 South Blvd.
Charlotte, NC 28203
Telephone: (704) 377-4300
Fax: (704) 372-1357
Email: jbuchan@essexrichards.com
Email: npotter@essexrichard.com

# CERTIFICATE OF SERVICE

I hereby certify I electronically filed this document through the CM/ECF system, which will send a notice of electronic filing to:

>Mark W. Ishman
>Ishman Law Firm, P.C.
>mishman@ishmanlaw.com
>*Attorney for Plaintiff*
>
>
>Kristin G. Garris
>Tannenbaum Helpern Syracuse & Hirschtritt, LLP
>garris@thsh.com
>*Attorney for Plaintiff*
>
>
>Luke J. Farley, Sr.
>Conner Gwyn Schenck, PLLC
>lfarley@cgspllc.com
>*Attorney for Brent Klaske, a non-party witness*

This the 25<u>th</u> of September, 2018.

>/s/ Jonathan E. Buchan
>Jonathan E. Buchan, N.C. State Bar No. 8205
>Natalie D. Potter, N.C. State Bar No. 34574
>Attorneys for Defendant
>Essex Richards, P.A.
>1701 South Blvd.
>Charlotte, NC 28203
>Telephone: (704) 377-4300
>Fax: (704) 372-1357
>Email: jbuchan@essexrichards.com
>Email: npotter@essexrichards.com