IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Case No. 3:16-cv-00695-GCM

| | |
|---|---|
| Baronius Press Ltd., | ) |
|          Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| Saint Benedict Press LLC, | ) |
|          Defendant. | ) |
| | ) |

**PLAINTIFF'S REPLY TO AND REFUTATION OF DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL DEFENDANT TO CORRECT DESIGNATION OF NON-SENSITVE, NON-TRADE SECRET DOCUMENTS FROM ATTORNEYS' EYES ONLY TO CONFIDENTIAL**

Plaintiff Baronius Press, Ltd. ("**Plaintiff**") respectfully submits this Reply to and Refutation of Defendant's Response to Plaintiff's Motion to Compel Defendant to Correct Designation of Non-Sensitive, Non-Trade Secret Documents From Attorneys' Eyes Only to Confidential (Dkt. No. 69) filed September 25, 2018 ("**Response**").

**I.      NATURE OF THE CASE**

The current case is a copyright infringement case for willful copyright infringement by Defendant, in violation of the Copyright Act of the United States, 17 U.S.C. § 101 *et seq* concerning its restored literary work *Fundamentals of Catholic Dogma* (*"**Fundamentals**"*).

**II.     DEFENDANT CLAIMS TO HAVE RIGHTS IN *FUNDAMENTALS***

In response to Plaintiff's Motion to Compel Defendant to Correct Designation of Non-Sensitive, Non-Trade Secret Documents from Attorneys' Eyes Only to Confidential (Doc. 61) ("**Second Motion**"), Defendant states that it has:

(1) challenged the validity of the existence of an alleged valid copyright to the Work; (2) alleged that Defendant has rights in the Work; and (3) challenged Plaintiff's claims to the Work. (Doc. No. 17, p. 13)

(Doc. No. 69, p. 5)

First, this argument by Defendant is not relevant to whether Defendant should designate non-sensitive, non-trade secret documents from attorneys' eyes only ("**AEO**") to confidential, and accordingly should not be considered by the Court.

Second, since the beginning of this lawsuit, Defendant has not disclosed any evidence that would support its points (1) and (3) above. Defendant has claimed various reasons to have the right to publish *Fundamentals* namely  (i) "as the successor-in-interest to B. Herder of St. Louis, to whom Mercier Press granted exclusive US copublication rights" (ii) "[Defendant's] publication rights to *Fundamentals* have been recognized by the U.S. Bankruptcy Court for the Northern District of Illinois, Western Division" (iii) "After extensive expert review and public notice, the Court certified Defendant's publication rights to *Fundamentals* by name when Saint Benedict Press LLC acquired Defendant in 2008". Defendant has not disclosed any evidence to support its claims and it is currently being compelled by Plaintiff's Motion To Compel Discovery Responses And Production (Doc. No. 39). Moreover, the recent deposition testimony by Mary Frances Lester and documents she produced further proves that Defendant never had the rights to publish *Fundamentals,* therefore Defendant's claim in point (2) "that it has rights in the Work" is pure falsehood. **Defendant does not have, and never had any rights** **in** *Fundamentals***.**

Last, Defendant claims to be a reliance party under §104A(d)(3) which Plaintiff's strongly contests. Even if we were to assume for hypothetical purposes that Defendant was a reliance party, Defendant would still not have any rights **in** *Fundamentals*, but only the right to

continue to exploit the Work.[1]

Plaintiff has alleged that Defendant willfully infringed its copyright rights in *Fundamentals*. Plaintiff is the sole party with the copyright rights to *Fundamentals*. Discovery is now completed (September 28, 2018), and Defendant did not produce any agreement (executed or otherwise) that it has rights to *Fundamentals*, and any evidence of an agreement, such as royalty payments to the copyright owner.

Therefore, such "rights" argument by Defendant is irrelevant to Plaintiff's motion to designate non-sensitive, non-trade secret documents from attorneys eyes only AEO to confidential, and accordingly should not be considered by the Court.

### III.     DEFENDANT CLAIMS THAT IT HAS FULLY RESPONDED TO PLAINTIFF'S MAY 10, 2018 REQUEST

Defendant in its response claims that it "did fully respond to Plaintiff's May 10, 2018 request in Defendant's June 26, 2018 letter" and states that "Plaintiff conveniently failed to include in Plaintiff's Second Motion to Compel Defendant's entire June 26, 2018 response." (Doc. No. 69, p. 4) To support its claims, Defendant quotes both, the complete Request by Plaintiff and the complete Response by Defendant. (Doc. No. 69, p. 5) Nevertheless, the complete Response by Defendant **does not** answer the Request made by Plaintiff to "confirm Documents SBPP-00650 - SBPP- 1379 are the final file," *i.e.*, the final version of the new re-typeset edition of *Fundamentals* ("Re-typeset Draft") Defendant made.

Therefore, Defendant's "June 26, 2018" argument is also irrelevant because it does not address the designation of non-sensitive, non-trade secret documents from AEO to confidential, and accordingly should not be considered by the Court.

---

[1] 104A(d)(3)(ii) – a reliance party may continue to exploit that derivative work for the duration of the restored copyright if the reliance party pays to the owner of the restored copyright reasonable compensation for conduct which would be subject to a remedy for infringement but for the provisions of this paragraph.

3

IV. **DEFENDANT CLAIMS THAT THE RE-TYPESET DRAFT OF *FUNDAMENTALS* (SBPP-00650 TO SBPP-1379) IS CONFIDENTIAL AND PROPRIETARY BUSINESS INFORMATION.**

Defendant in its response made a statement that:

> Defendant began taking steps to re-typeset the Work in 2011. Defendant's Re-typesettings include corrections made to the original translation. Defendant ceased working on the Re-typesettings after this dispute arose with the Plaintiff and never published the Re-typesettings. Defendant considers the Re-typesettings to be proprietary information and a trade secret. Exhibit 2, Affidavit of John Conor Gallagher, ¶¶ 13-14.
> (Doc. No. 69, p. 6)

By implementing corrections into the original 1955 Mercier Press edition "Original 1955 Edition" Defendant created a derivative edition "Re-typeset Draft". Defendant has no right to create a derivative or to publish it. Defendant's statement supported by the sworn affidavit of its Publisher John Conor Gallagher (N.C. State Bar No. 6625) that it considers the Re-typeset Draft of *Fundamentals* "to be proprietary information and a trade secret" (Doc. No. 69, p. 5 and Exhibit 2, Affidavit of John Conor Gallagher, ¶¶ 13-14.) shows the intentional misinterpretation of the definition of "Trade secret" as defined by the North Carolina Trade Secrets Protection Act[2]. Where is the "independent actual or potential commercial value" or the "economic value" Defendant would make when, under the US Copyright Act it is not allowed to use the derivative work it created?

Plaintiff' engaged two editors who worked over several years and made substantial changes to the "Original 1955 Edition", thoroughly proofread the work both in-house and by

---

[2] N.C. Gen. Stat. § 66-152

   (3) "Trade secret" means business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:

   a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and

   b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

contracted proofreader and submitted the new revised edition of *Fundamentals* for a 'Nihil Obstat' and 'Imprimatur'.[3] Therefore Defendant's claim that "Plaintiff's only 'need' for this unpublished version would be to use it to unfairly compete against Defendant" (Doc. No. 69, p. 5) and that "Plaintiff could use the [Re-typeset Draft] as a template by which to revise and make corrections to its own version of the Work." (Doc. No. 69, p. 7) is Defendant's flight of fantasy.

Defendant tries to further confuse matters by claiming that the proprietary nature of Plaintiff's master PDF file of the final published work "PDF Master" and Defendant's unfinished "Re-typeset Draft" are of equal value to each party. Plaintiff owns the copyright to the "Original 1955 Edition" and to the new derivative edition of *Fundamentals* published in 2018. Defendant's request to produce the "PDF Master" of the *Fundamentals* is like asking the Treasury to produce a master plate for its $100 bill note instead of the note itself. If the "PDF Master" leaked on the internet, whether deliberately or accidentally by any party handling the file, *i.e.*, Plaintiff's attorney, Defendant's attorney or Defendant, it would have devastating consequences for Plaintiff's ability to sell the work.

The Pretrial Order and Case Management Plan (Doc. No. 20 p. 3) defines that "privileged documents inadvertently produced may be 'clawed back' by the party that produced them within 14 days of being served with written notice of the inadvertent disclosure by the party who received the document". Defendant knew about its alleged "inadvertent release" since at May 10,

---

[3] What are "imprimatur" and "nihil obstat" in Catholic books? (http://catholicstraightanswers.com/what-are-imprimatur-and-nihil-obstat-in-catholic-book/)

   The review process would then begin with the author submitting the manuscript to the *censor deputatus,* who is appointed by the bishop or other ecclesiastical authority to make such examinations. If the censor deputatus finds no doctrinal error in the work, he grants a *nihil obstat* attesting to this. Translated as "nothing stands in the way," the *nihil obstat* indicates that the manuscript can be safely forwarded to the bishop for his review and decision.

   Similarly, a member of a religious community would submit his work to his major superior. If the work is found free of doctrinal error, the major superior grants an *imprimi potest,* translated as "it is able to be printed." With this approval, the manuscript is then forwarded to the bishop for his review and decision.

If the bishop concurs that the work is free from doctrinal error, he grants an *imprimatur*. From the Latin *imprimere*, meaning to impress or to stamp an imprint, *imprimatur* translates, "let it be printed." Technically, this is the bishop's official declaration that the book is free from doctrinal error and has been approved for publication by a censor.

2018 and it made a request on June 26, 2018 for the documents to be designated as for "Attorneys' Eyes Only". (Doc. No. 47-3) and waited until September 25, 2018, i.e. **three months later** to file for a Motion for a Protective Order (Doc. No. 68). *See also Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 258 (D.Md. 2008) (holding that there is a waiver of a privilege and its protection with "inadvertent production [of attorney-client work product] 'because once disclosed, there can no longer be any expectation of confidentiality.'")

In the recent deposition of Mary Frances Lester ("Witness") on September 10 and 24, 2018, new documents relating to the preparation of Defendant's Re-typeset Draft were produced by the Witness: (i) An invoice listing all the corrections and changes made to Defendant's Re-typeset Draft (Exhibit 1) and (ii) email correspondence with Sebrina Higdon of TAN Books dated November 29, 2012 (Exhibit 2) in which Sebrina Higdon states that "*Fundamentals* just became a new priority (again!)" and that she was working on the Re-typeset Draft. This email and Defendant's statement that "Defendant ceased working on the Re-typesettings after this dispute arose with the Plaintiff [*i.e.*, March 22, 2013]…"(Doc. No. 69, p. 6) seems to be in direct conflict with the document bates no. SBPP-00273 in which Defendant shows a screenshot of the latest production file for Defendant's Re-typeset Draft with a stamp date "Nov 30, 2012, 12:16 PM" (Exhibit 3).

Plaintiff asked its editor to compare the Defendant's Re-Typeset Draft to its Original 1955 edition to see what changes Defendant made to its Re-typeset Draft and created a list of the editorial changes, (see Exhibit 4). While Plaintiff made over 600 changes that it has recorded in its notes and at least the same amount that were implemented but not noted. Upon information and belief it would appear that Defendant only made a mere 32 editorial changes to the Original 1955 Edition while also introducing new mistakes into its Re-Typeset Draft. (See Exhibit 4).

The question is, why Defendant waited for so long to file the Motion for a Protective Order that claims that "Plaintiff's only 'need' for this unpublished version would be to use it to unfairly compete against Defendant" (Doc. No. 69, p. 5) and that "Plaintiff could use the [Re-typeset Draft] as a template by which to revise and make corrections to its own version of the Work." The editorial changes to Defendant's Re-typeset Draft are minimal and Defendant's claims of trade secret and proprietary business information on Defendant's Re-typeset Draft are futile. Plaintiff has already published its edition of *Fundamentals*, which in terms of editorial and corrections is substantially superior to Defendant's Re-typeset Draft.

It is not a coincidence that the Motion for a Protective Order comes only a day after the deposition of Mary Frances Lester in which new evidence relating to Defendant's Re-typeset Draft was disclosed. By re-designating Defendant's Re-typeset Draft as AEO, Plaintiff would lose the ability to quickly analyze and cross-examine any testimonies relating to Re-typeset Draft in the upcoming depositions of Defendant's employees/contractors as such analyses requires an expert and is not in the abilities of Plaintiff's attorney.

Consequently, Defendant's "re-typeset draft" argument is also irrelevant because it is being used by Defendant as a "shield" in its attempt to impair the use of evidence that shows its continued and willful infringement of Plaintiff's copyright rights, and accordingly such argument should not be considered by the Court.

V.      **AEO – Documents Bates No. SBPP-03386 to SBPP-03392**

> Defendant marked these seven pages as "Attorney Eyes Only" because they dealt with negotiations and financial arrangements with one of Defendant's consultants, Mr. Madrid, who had only a tangential involvement with the Work. Defendant considers its confidential arrangements with consultants to be proprietary because Defendant's competitors, such as Plaintiff, could use the information to negotiate better arrangements with Defendant's consultants. (Doc. 69, p. 9)

7

It is inconceivable that it took Plaintiff's attorney more than ten minutes to review the seven pages; however, Defendant has had to expend considerable time responding to Plaintiff's unwarranted motion. (Doc. 69, p. 9)

If it only takes 10 minutes to review the seven pages, why did Defendant's attorney in its review of the files not realize that they do not relate to Plaintiff request in any way and were not discoverable?

**VI.      AEO – Documents Bates No. SBPP-03084 to SBPP-03385**

On October 20, 2017, Plaintiff in its First Set of Written Discovery Requests made the following request No 8 ("Request")

> Provide all email correspondence of any sales prospect or customer (i.e., an inquirer) enquiring about *Fundamentals* and asking/seeking when Fundamentals will be back in stock/for sale. This Request also seeks TAN's responses to those inquirers for the period March 2011 - March 2014.

Defendant in its Reply states that:

> Defendant reasonably understood Plaintiff's request to be seeking all customer emails regarding the Work.  (Doc. 69, p. 10)

> In response to Plaintiff's May 10, 2018 letter, Defendant produced to Plaintiff on June 26, 2018, 302 pages which were wholesale and retail customer service emails asking about the Work, purchasing the Work and/or placing back orders for the Work ("Customer Emails"). Prior to producing the Customer Emails, Defence counsel reviewed the documents it received from Defendant and removed any emails that did not appear related to the Work. (Doc. 69, p. 10-11)

8

11/9/2017                Good Will Publishers Mail - Re: Inbox Search: Fundamentals of Catholic Dogma

Our copyright attorney has requested that we conduct a search of the  CustomerService@tanbooks.com inbox for any emails,
orders, or correspondence regarding:

**Fundamentals of Catholic Dogma**

The search date range would be: 2008 forward.

Could you schedule that this week?

(Doc. 61-4, p. 2)

If Defendant reasonably understood Plaintiff's request to be seeking all customer emails regarding the Work, why it has only disclosed some emails? The latest email in the batch is October 11, 2017 and since Defendant continues to sell *Fundamentals* as of the filing of this Reply, it would have received more "Customer Emails" which were not included in the released documents. The answer to the question is that Defendant's attorneys had asked Defendant to gather all of the emails in November 2017 and only disclosed those emails seven **(7) months later** as a response to Plaintiff's Motion to Compel Discovery Responses and Production from Defendant (Doc. No. 39).

On August 29, 2018, Defendant's counsel, Natalie Potter, sent a letter to Plaintiff's counsel Mark Ishman, making the following offer

> If there are certain, specific, documents that you need to show your client that you would like us to redact, my client is willing to consider such a request, however, it is not willing to incur the hours of time and the associated expense to redact such information from all 300 plus pages of document without some further explanation as to why undergoing such an expense would be necessary. (Doc. No. 61-3 p. 2)

Subject to and without waiving any objections, Plaintiff redacted the only 41 pages that relate to the initial Request Plaintiff made ("**Requested documents**") out of the 302 pages of documents produced by Defendant and sent it to Defendant for review on September 20, 2018. Defendant's counsel replied on the same day and he stated that:

I am unable to address the issues raised in your email sent today at 4:38 pm regarding the De-Designation of AEO Documents. That is an issue that has been handled exclusively by Natalie, who is headed as we speak to a generally uninhabited island off the coast of Vancouver Island until sometime late next week, returning to Charlotte the following weekend. I don't know her exact schedule but I am not expecting to hear from her anytime soon, but will ask her about this if we speak.

On October 1, 2018 at 5:55 p.m., Plaintiff's attorney received an email from Defendant's attorney that "[she] will review them as quickly as [she] can and get back to [me]." As of the filing of this Reply, Plaintiff is still awaiting a response from Defendant on this issue.

## VII.    CONCLUSION

Plaintiff seeks an order under Federal Rule of Civil Procedure 26(g) or Rule 37 requiring Defendant to remedy what Plaintiff asserts is improper document designation, in bad faith and to pay the costs incurred by Plaintiff as a result of this motion and the costs associated with reviewing and analyzing Defendant's improperly designated AEO documents.

Respectfully submitted this 2nd day of October, 2018.

*Attorneys for Plaintiff*

/s/ Mark W. Ishman
Mark W. Ishman
N.C. State Bar No. 27908
ISHMAN LAW FIRM, P.C.
9660 Falls of Neuse Road, Box 138-350
Raleigh, North Carolina 27615
Telephone: (919) 468-3266
Email: mishman@ishmanlaw.com

Kristin G. Garris
N.C. State Bar No. 38767
TANNENBAUM HELPERN SYRACUSE &
HIRSCHTRITT LLP

900 Third Avenue
New York, New York 10022
Tel: (212) 508-6783
Email: garris@thsh.com

11

**CERTIFICATE OF SERVICE**

I, the undersigned attorney do hereby certify that I have served all parties in this action with a copy of this PLAINTIFF'S REPLY TO AND REFUTATION OF DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL DEFENDANT TO CORRECT DESIGNATION OF NON-SENSITVE, NON-TRADE SECRET DOCUMENTS FROM ATTORNEYS' EYES ONLY TO CONFIDENTIAL by electronically filing the same *via Pacer* and forwarding to the email addresses listed below:

> Jonathan E. Buchan, Jr, Esq.
> jbuchan@essexrichards.com
> Natalie Dawn Potter, Esq.
> npotter@essexrichards.com, hbadger@essexrichards.com
> Essex Richards, P.A.
> 1701 South Blvd.
> Charlotte, NC 28203

This the 2nd day of October, 2018.

*Attorneys for Plaintiff*

/s/ Mark W. Ishman
Mark W. Ishman
N.C. State Bar No. 27908
ISHMAN LAW FIRM, P.C.
9660 Falls of Neuse Road, Box 138-350
Raleigh, North Carolina 27615
Telephone: (919) 468-3266
Email: mishman@ishmanlaw.com

Kristin G. Garris
N.C. State Bar No.38767
TANNENBAUM HELPERN SYRACUSE & HIRSCHTRITT LLP
900 Third Avenue
New York, New York 10022
Tel: (212) 508-6783
Email: garris@thsh.com