IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Case No. 3:16-cv-00695

| | |
|---|---|
| Baronius Press, Ltd. <br> Plaintiff, | ) <br> ) <br> ) |
| v. | ) <br> ) <br> ) |
| Saint Benedict Press LLC, <br> Defendant. | ) <br> ) <br> ) <br> ) |

**MEMORANDUM OF LAW IN SUPPORT ("MEMORANDUM") OF PLAINTIFF'S MOTION TO RECUSE ("MOTION") THE HON. GRAHAM C. MULLEN ("JUDGE MULLEN"), SENIOR JUDGE OF THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA ("COURT")**

Plaintiff Baronius Press, Ltd. ("Plaintiff") respectfully submits this Memorandum in Support of the Motion pursuant to LcvR 7.1(c). As set forth in the Motion, the litigating parties appeared before the Court for a hearing on inter alia discover matters on October 3, 2018 ("Hearing"). Judge Mullen, presiding, referring to Defendant's counsel, observed:

> I know the family you represent and have high regard for them. I've known them for basically most of my life and so I believe what you're telling me.

Mot. Ex. 1, 31:9-11.

The Court's observations at the Hearing reflected or gave rise to grounds for recusal pursuant to the controlling federal statute and pursuant to applicable canons of judicial conduct because the preexisting and prolonged closeness between the Gallagher family and Judge Mullen puts in question the Court's impartiality in the matter before it. *See* 28 U.S.C. § 455(b)(1) (the Judge "shall … disqualify himself" … "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings"); *see*

1

*also* Code of Conduct for United States Judges, Canon 2A ("[a] judge should not allow family … relationships to influence judicial conduct or judgment ...").

The grounds for recusal in this case are stronger than those that led the Court to recuse in *Leto v. World Recovery Service, LLC,* 3:14-CV-489 (United States Dist. Ct., W.D.N.C. Order dated April 13, 2015). In *Leto,* the Hon. Frank Whitney recused upon learning that the defendant had recently been his student at a law school seminar course. Notably, the *Leto* court recused sua sponte "in the interests of avoiding the appearance of any impartiality *(sic)*" even though the Court noted that Judge Whitney's former student had not requested recusal and the circumstances did not require recusal. The *Leto* Court's relationship with the defendant was neither as close nor as prolonged as that between Judge Mullen and the Gallagher family. Nor, unlike in this litigation, did the record indicate whether Judge Whitney had formed any opinion concerning his former student that could have colored his views in the matter.

Notably, Judge Whitney recused sua sponte even though entry of default judgment against and with the consent of a represented party was all that remained to be done. *Leto,* moreover, appears to have been a straightforward collection case in which any opinion Judge Whitney had formed of his former student in a law school class would have had much impact one way or the other. Equally notably, counsel for the defendant took the initiative to bring to Judge Whitney's attention the relationship, such as it was, with his former pupil. Defendants in this case surely missed opportunities to bring to this Court's attention the relationship between the Defendant and the Gallaghers.

In contrast, as this Court emphasized throughout the Hearing, a host of sharply contested issues remain open in this active litigation. Mot. Ex. 1. Thus, where recusal was the better course even in the attenuated circumstances *Leto* presented, the considerations favoring

2

recusal in the instant litigation would seem to be insurmountable. Judge Mullen would have to set aside his "high regard" and inclination to "believe" the Gallaghers from having known them "basically most of [his] life" to be able to continue presiding impartially in this litigation.

The instant case is distinguishable from this Court's analysis of the proper standard for recusal pursuant to 28 U.S.C. § 455(b)(1) in *State v. Short,* 1:15-CV-0044 (United States District Ct., W.D.N.C., Order dated January 11, 2016). Stating that "[d]isqualification is required if a reasonable factual basis exists for doubting the judge's impartiality," the *Short* Court denied recusal because the defendant had failed to show an "extrajudicial or personal" source of the alleged bias that would have invited recusal.

In this, it is precisely that "extrajudicial" and deeply "personal." element that stands out in this litigation: the positive impression Judge Mullen formed from his nearly lifelong family association that in and of itself inclines the Court to believe the Gallaghers. Mot. Ex. 1, 31:9-11. Thus, recusal, unwarranted and properly denied as it was in *Short,* would still be the better course here.

*Rice v. McKenzie, 581 F.2d 1114 (4th Cir. 1978) (vacating and remanding)* recognized circumstances calling for recusal even if the judge acted "without any actual bias or prejudice" and had no "personal bias or prejudice or personal knowledge of any disputed fact." *Rice* pointed out that recusal was proper if "the appearance of impartiality to the general public" was in question even if there was no lack of "faith in the integrity of a particular judge." *Rice, at 1116-1117.*

In this litigation, Judge Mullen's long-standing and close relationship with the Gallagher family puts in question the "appearance of impartiality" even though Judge Mullen may have been and may have continued discharging the judicial office "without any actual bias

3

or prejudice," and with "faith and integrity" unquestioned. *Rice* calls for recusal as the better course of action here.

The nearly lifelong association between Judge Mullen and the Gallagher family, the "high regard" in which Judge Mullen holds the Gallaghers, and Judge Mullen's consequent predisposition to "believe" them, Mot. Ex. 1, 31:9-11, is far from a "trivial risk of bias" that reflects nothing more than a moving party's "ingenuity in finding conflicts around every corner." *United States. v. DeTemple, 162 F.3d 279, 287-288 (4th Cir. 1998) (recusal not required)*. *DeTemple* alleged a number of past instances where defendant had crossed paths with the judge but none of these amounted to anything substantial as would constitute grounds for recusal. Judge Mullen's close and prolonged relationship with the Gallaghers, such that Judge Mullen has formed an impression of their credibility outside of this litigation, is in clear contrast with the attenuated and sporadic past interactions between the judge and the defendant in *DeTemple*. Thus, recusal is the better course here even though not required in *DeTemple*.

*United States v. Cherry, 330 F.3d 668 (4th Cir. 2003) (recusal not required)* discussed a number of factual situations from that and other recusal cases. Recusal requires something than a "tangential" or "attenuated" relationship between the judge and the matter or parties before the court. *Cherry, at 665*. For instance, "less (sic) than a dozen personal contacts" with someone "during the course of [his] life" or a long lost relationship with the child of the judge's deceased godparents did not constitute grounds for recusal. *Cherry, at 666*. Even a "close friendship" might not be disqualifying if the person in question has but a "tangential relationship" with the matter. Unlike the facts discussed in Cherry, Judge Mullen has had a lifelong connection with the Gallaghers which inclined the Court to "believe" them at the Hearing and might potentially so incline the Court over the remaining course of the litigation. Ex. 1, 31:9-11.

Further, inextricably tied as are the Gallaghers with Defendant, their relationship with Judge Mullen is anything but peripheral to the litigation. Thus, recusal, not required in Cherry, is the better course following the disclosure from the Hearing.

*United States v. Carmichael*, 762 F.2d 158 (4th Cir. 1984) *(recusal not required)* denied a recusal request from a defendant who had fared poorly before the trial judge. During the proceedings, the judge had expressed repeatedly and in no uncertain terms his less than favorable view of the defendant and his prospects in the proceedings. *Carmichael*, at 161-162. The appellate opinion is peppered with choice examples of the trial judge's exasperation with the defendant and his litigation tactics. *Carmichael*, at 161-162. A judge's unfavorable view of one party or its cause, expressed strongly and repeatedly, is not in and of itself cause for recusal. *See Carmichael*, at 161-162. But that ceases to be true when the judge's personal knowledge rather than what the judge has learned in course of presiding over the case is the source of such views. *See Carmichael*, at 161-162. As in *Carmichael*, this Court openly expressed its views about certain aspects of this litigation throughout the Hearing. *See* Ex. 1 generally.

A reasonable and objective person could potentially discern some connection between one or more of this Court's remarks during the Hearing and Judge Mullen's relationship with the Gallagher family. *See* Ex. 1 (throughout). For instance, even the Court's *unexceptionable* admonition to settle this proverbial and literal federal case over a tract of limited circulation could be misconstrued as Judge Mullen's concern for the welfare of the Gallaghers or as stemming from Judge Mullen's independent knowledge about the Defendant's financial condition or litigation resources. Even if nothing else this Court said at the Hearing was more than anything the trial judge in Carmichael had said, or indeed many a judge has said, to counsel appearing before him, recusal would be the better result in this litigation.

5

Plaintiff therefore respectfully requests the recusal of Judge Mullen from this litigation and its reassignment to another Judge of this Honorable Court without such connections with the Gallagher family or with Defendant as may provide grounds for recusal.

Respectfully submitted this 30th day of October, 2018.

*Attorneys for Plaintiff*

/s/ Bikash Roy
Bikash Roy
North Carolina State Bar. No. 28382
P.O. Box 1215
Angier, North Carolina 27501
Tel: (919) 215-8626
Email: bikashroy02@gmail.com

# **CERTIFICATE OF SERVICE**

I, Bikash Roy, do hereby certify that I have served or caused to be served a copy of the foregoing pleading or paper by electronically filing the same through the Court's CM/ECF System which has notified or will notify all parties or counsel of record.

This is the 30th day of October, 2018.

                                          /s/ Bikash Roy
                                          BIKASH ROY, Bar No. 28382
                                          P.O. Box 1215
                                          Angier, North Carolina 27501
                                          919-215-8626
                                          bikashroy02@gmail.com