IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Case No. 3:16-cv-00695-GCM

Baronius Press Ltd.,                )
       Plaintiff            )
                            )
v.                                  )
                            )
Saint Benedict Press LLC,           )
       Defendant.           )
                            )

**MEMORANDUM OF LAW IN SUPPORT OF
<u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................1

II. STATEMENT OF UNDISPUTED MATERIAL FACTS ....................................................1

III. QUESTIONS PRESENTED .................................................................................................4

    1. Is Plaintiff entitled to summary judgment on the issue of Defendant's copyright infringement liability as to the work *Fundamentals of Catholic Dogma*

    2. Does Defendant's willful infringement of Plaintiff's copyright entitle Plaintiff to an award of attorneys' fees and cost? ................................................................................4

IV. PRINCIPLES OF LAW AND ARGUMENT ......................................................................4

    A. LEGAL STANDARD ...................................................................................................4

    B. ARGUMENT ................................................................................................................5

    1. Copyright Infringement: To prevail, Plaintiff must prove (1) ownership of a valid copyright; and (2) copying of elements of the work that are original. ................................5

        a. Plaintiff owns or is a licensee of valid copyright rights in Fundamentals. ..............6

        b. Defendant copied the work at issue. ........................................................................7

        c. Defendant admitted publishing and selling Fundamentals even after receiving Plaintiff's objections. ..........................................................................................................8

    2. Defendant has no valid or reasonable defense, does not qualify as a reliance party now, and does not have superior rights to those of Plaintiff. ........................................................9

    3. An award to Plaintiff of its attorneys' fees and costs is justified and warranted by Defendant's willful, continued infringing acts ..................................................................13

V. CONCLUSION ...................................................................................................................14

# TABLE OF AUTHORITIES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) …………………………………….5

*Ballinger v. North Carolina Agricultural Extension Service,*
  815 F.2d 1001 (4th Cir. 1987) ……………………………………………………………..5

*Celotex Corp. v. Catrett,* 477 U.S. 317,
  106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986) ……………………………………………….1, 4, 5

*CoStar, Inc. v. LoopNet, Inc.*, 373 F.3d 544 (4th Cir. 2004) ………………………………7

*Everroad v. Scott Truck Sys.*, 604 F.3d 471 (7th Cir. 2010). ……………………………….5

*Feist Publications, Inc. v. Rural Telephone Service Co., Inc.,*
  499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed. 2d 358 (1991) …………………………………6

*Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299 (4th Cir. 2006) ……………………5

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ………………….5

*Sony Corp. v. Universal City Studios, Inc.,*
  464 U.S. 417, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984) ……………………………………7

*Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*,
  618 F.3d 417 (4th Cir. 2010) ……………………………………………………………..6

**Statutes**

17 U.S.C. § 101 ……………………………………………………………………….……8

17 U.S.C. § 102(a) ..…………………………………………………………………….……8

17 U.S.C. § 104A ……………………………………………………………………. 10, 11

17 U.S.C. § 106 ……………………………………………………………………….……8

17 U.S.C. § 204(a) …………………………………………………………………………6

17 U.S.C. § 410(c) ……………………………………………………………………….

17 U.S.C. § 505 ……………………………………………………………………..…13, 14

**Rules**

Fed. R. Civ. P. 1……………………………………………………………………..…*passim*

Fed. R. Civ. P. 56 ………………………………………………………………….…… *passim*

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7, Plaintiff Baronius Press, Ltd. ("Plaintiff") respectfully submits this Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment (this "Memorandum"). Plaintiff's Motion for Summary Judgment ("SJ Motion") is filed contemporaneously herewith.

## I. INTRODUCTION

As set forth in Plaintiff's First Amended Verified Complaint, Plaintiff seeks the Court's assistance and justice as to Defendant's copyright infringement. Unless Defendant has evidence that it had legitimate rights, which evidence Plaintiff has requested (if it exists) and Defendant has not provided, Plaintiff therefore is entitled to the relief it seeks under the U.S. Copyright Act. Defendant's proof of legitimate rights, therefore, is Defendant's 'get out of jail free' MONOPOLY card. But such free pass does not exist. The record in this case, including Defendant's own documents, shows that Defendant has no such rights. Plaintiff therefore meets its burden by "showing" there is "an absence of evidence" to support Defendant's assertions. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-25, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986). Defendant has not supplied proof that it had the right to copy, publish, distribute, sell, and profit from the sale of thousands of copies of *Fundamentals*. Plaintiff is entitled to summary judgment on its copyright claim.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

1. *Grundriss der katholischen Dogmatik* ("*Grundriss*" or "Original"), by Otto Ludwig, is a German-language work first published in Germany in 1952 that was translated by Patrick Lynch into English as *Fundamentals of Catholic Dogma* ("Fundamentals" or "Translation"). Dkt. 16-2, 16-3; Exhibit H (BP 00830-00831) and Exhibit I (SBPP-00251) attached hereto.

2. *Fundamentals*, the English-language translation of *Grundriss*, was first published in Ireland in 1955. Exhibit I attached hereto. It was not published in the U.S. within thirty days of its publication in Ireland. Exhibits H, I, J, K, and L attached hereto.

1

3. As to copyright rights, both the Original and the Translation were in the public domain in the U.S. from at least 1974 until January 1, 1996, when copyright was restored by operation of law under the Uruguay Round Agreements Act (URAA). *See* Defendant's 30(b)(6) deposition ("SBP Oct. 17 Depo."), a transcript of which is attached hereto as Exhibit G: SBP Oct. 17 Depo.45:14-20.

4. Defendant admits that *Fundamentals* entered the public domain in the U.S. Dkt. No. 17, ¶ 25.

5. Defendant entered into a "distribution" agreement with Mercier Press (*see* SBPP-00221, attached hereto as Exhibit B) and began publishing *Fundamentals* in 1974. Dkt. No. 17, ¶ 26.

6. The United States Copyright Office issued Certificate of Registration TX 6-484-646 effective as of February 21, 2014 as to the literary work identified as *Grundriss der katholischen Dogmatik* by Ludwig Ott, published in Germany in 1952. Dkt. No. 16-2; *see also* Exhibit I.

7. The United States Copyright Office issued Certificate of Registration TX 6-484-647 dated February 21, 2014 for the literary work identified as *Fundamentals of Catholic Dogma* by Patrick Lynch, published in Ireland in 1955[1]; form field 4a of said certificate identifies Plaintiff as the owner of the United Copyright. Dkt. No. 16-3; *see also* Exhibit I.

8. In a letter dated March 22, 2013, Plaintiff contacted Defendant ("March 22 Letter") informing the Defendant, among other things, that "[it] would be breaking the law by publishing this book" and requesting Defendant to "remove this title from [its] website immediately." Dkt. No. 16-6.

9. Defendant admits it received the March 22 Letter. Dkt. No. 17 ¶¶ 4, 39.

10. On or about April 26, 2013, Plaintiff sent to Defendant a separate "Notice of Intent to Enforce (NIE) A Copyright Restored Under the Uruguay Round Agreements Act (URAA)" ("April 26 Notice") in relation to *Grundriss* identifying *Fundamentals* as its English translation. Dkt. No. 16-5. The Notice, *inter alia*, related to the "Right to reproduce the derivatives and the right to produce new derivatives in English."

11. Defendant admits it received the April 26 Notice. Dkt. No. 17 ¶¶ 4, 39.

12. Defendant intended to publish and distribute a new edition of *Fundamentals* after having received the March 22 Letter and April 26 Notice. Dkt. No. 17.

13. Defendant admitted that it intended in 2013 to publish and distribute a "hardbound edition." Dkt. No. 17.

---

[1] 1955 is the correct year; 1953 was entered inadvertently but a request has been made to the U.S. Copyright Office to correct the year.

14. Defendant stated publicly in April 2013 that its stock of *Fundamentals* ran out "temporarily." Dkt. No. 14 ¶ 4.

15. In at least one instance after 1996, Defendant stated publicly that it was "temporarily out of stock" of *Fundamentals*. Dkt. No. 17 ¶¶ 27, 28.

16. Defendant's evidence shows that Defendant had zero (0) stock of Fundamentals – zero copies of paperback or hard back versions – during at least the following time periods:

   a. April 2009 through September 2009 (at least 6 full months);

   b. July 2011 through March 2012 (at least 9 full months);

   c. November 2012 through March 2013 (at least 5 full months); and

   d. May 2013[2] through September 2013 (at least 5 full months).

*See* Defendant's document produced as SBPP-04049-04050, attached hereto as Exhibit A.

17. Defendant's evidence shows that, after having zero stock of *Fundamentals* from May 2013 through September 2013, Defendant began to possess and distribute hard-back copies of Fundamentals in October 2013 through November 2013. *See* SBPP-04049-04050, Exhibit A.

18. Defendant's stock of *Fundamentals* ran out "temporarily" at some point of time before "Summer 2013." Dkt. No. 17 ¶ 36. Defendant had to take back-orders of, and did not record any distribution of paperback or hard-back versions of *Fundamentals*. *See* SBPP-04049-04050, Exhibit A.

19. Beginning in December 2013, through at least July 2018, Defendant did not have any back-orders of paperback or hard-back versions of *Fundamentals*. *See* SBPP-04049-04050, Exhibit A.

20. Defendant planned to begin shipping a new "hardbound" edition of *Fundamentals* around Summer 2013. Dkt. No. 17 ¶ 36.

21. Defendant has not produced evidence to substantiate the acquisition of rights to Fundamentals from the sale of TAN Books & Publishers. Inc. other than SBPP-02094-02107 (Asset Purchase Agreement); SBPP-02030 (Exhibit E thereto); SBPP-02062-02065 (Exhibit D), none of which documents identify *Fundamentals* or *Grundriss* by name. SBPP-02094-02107, SBPP-02030, and SBPP-02062-02065 are attached hereto as Exhibit C-1, C-2, and C-3, respectively.

22. Defendant, along with another, pursuant to an Asset Purchase Agreement,

---

[2] Based on Defendant's evidence, it distributed five (5) hard-back versions of *Fundamentals* in April 2013, but then ran out of stock again and/or stopped distributing any versions of *Fundamentals* at some point during April 2013 and, instead, recorded three (3) back-orders for the hard-copy version of *Fundamentals*. *See* SBPP-04049-04050, Exhibit A.

3

purchased from the trustee for the Chapter 11 bankruptcy of TAN Books & Publishers, Inc. ("TAN"), "substantially all of its assets" set forth with greater particularity as the "Acquired Assets." SBPP-02094-02107. This document does not identify any original or translated book by name.

23. Defendant produced a one-page Bill of Sale that inter alia disclaimed any warranties or representations as to the Acquired Assets. *See* SBPP-02030, Exhibit C-2. This document does not identify any original or translated book by name.

24. Defendant received with the TAN Books & Publishers, Inc. bankruptcy sale Asset Purchase Agreement an alphabetically ordered "Earnout Payment Title Listing." *See* SBPP-02062-02065, Exhibit C-3 (also SBP Oct. 17 Dep. Ex. 43). This document does not list either *Fundamentals* or *Grundriss*.

### III.   QUESTIONS PRESENTED

1. Is Plaintiff entitled to summary judgment on the issue of Defendant's copyright infringement liability as to the work *Fundamentals of Catholic Dogma*?

2. Does Defendant's willful infringement of Plaintiff's copyright entitle Plaintiff to an award of attorneys' fees and cost?

### IV.   PRINCIPLES OF LAW AND ARGUMENT

#### A. LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp.,* 477 U.S. at 322 (*quoting* Fed. R. Civ. P. 56(c)). Summary judgment is not a "disfavored procedural shortcut" but an important way to prevent unnecessary trials, and "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp.*, 477 U.S. at 327 (*quoting* Fed. R. Civ. P. 1). Summary judgment is required if the movant shows there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute exists only if the evidence presented could lead a

4

reasonable factfinder to return a verdict in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Where a party will have the burden of proof on an essential element of a claim or defense at trial and does not, after adequate time for discovery, make a showing sufficient to establish the existence of that essential element, there can be no genuine issue as to any material fact. *Celotex Corp.*, 477 U.S. at 322-25. The Court must view the facts, and inferences drawn from them, in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Ballinger v. N.C. Agricultural Extension Serv.,* 815 F.2d 1001, 1004 (4th Cir. 1987).

The moving party can satisfy its burden by identifying an **absence of evidence to support the non-moving party's case**. *See Celotex Corp.* 477 U.S. at 325 (emphasis added). The non-moving party must then "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus.*, 475 U.S. at 586-87 (quoting Rule 56(e)) (emphasis in *Matsushita Elec. Indus.*). Summary judgment is the "'put up or shut up' moment in litigation." *Everroad v. Scott Truck Sys.*, 604 F.3d 471, 476 (7th Cir. 2010). "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law." *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006).

### B. ARGUMENT

1. **Copyright Infringement: To prevail, Plaintiff must prove (1) ownership of a valid copyright; and (2) copying of elements of the work that are original.**

"[T]o establish copyright infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 549 (4th Cir. 2004) (*quoting Feist Publications, Inc. v. Rural Telephone Service Co., Inc.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed. 2d 358

5

(1991)).

### a. Plaintiff owns or is a licensee of valid copyright rights in *Fundamentals*.

Plaintiff has satisfied the first element of its copyright infringement claim, namely, its ownership of valid copyright in *Fundamentals*. Where a certificate of registration exists, the burden shifts to the defendant to prove that the claimed copyrights are invalid. *See Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 428 (4th Cir. 2010). The record of this case includes registration certificates, but does not include facts proving Plaintiff's copyright rights are invalid.

First, the U.S. Copyright Office issued U.S. Registration No. TX0006484647 to Plaintiff for the English translation of *Fundamentals of Catholic Dogma* ("*Fundamentals*") on February 21, 2014 (*see* Dkt. No. 16-3).

Second, Plaintiff has produced evidence of its acquisition of the rights in the English translation of *Fundamentals of Catholic Dogma*, including the "Copyright Assignment Agreement" between Mercier Press and Plaintiff dated October 3, 2010, produced in this litigation under Bates number BP 00356 and attached hereto as Exhibit D of this Memorandum. Plaintiff owns the copyright rights in *Fundamentals* because Mercier Press, the owner of the copyright rights on October 3, 2010, transferred and assigned, in writing, all of its copyright rights in *Fundamentals* to Plaintiff on October 3, 2010. *See* Exhibit D. *See also* 17 U.S.C. § 204(a).

Third, the U.S. Copyright Office issued U.S. Registration No. TX0006484646 to Bischöfliches Seminar St. Willibald for the original German version of *Fundamentals of Catholic Dogma* , *Grundriss der katholischen Dogmatik*, on February 21, 2014 (*see* Dkt. No. 16-2).

Fourth, Plaintiff has produced evidence of its acquisition in 2009 of the exclusive right to publish an English translation of the original German work titled *Grundriss der katholischen*

6

*Dogmatik*, including (i) the contract between Bischöfliches Seminar St. Willibald and Nova & Vetera e.K. dated November 16, 2008 and attached hereto as Exhibit E, and (ii) the contract between Nova & Vetera e.K. and Plaintiff dated February 2, 2009 and attached hereto as Exhibit F.

### b. Defendant copied the work at issue.

Plaintiff has also satisfied the second element of its copyright infringement claim, namely, that Defendant copied the book at issue here.

"[T]he Copyright Act grants the copyright holder 'exclusive' rights to use and to authorize the use of his work in five qualified ways, including reproduction of the copyrighted work in copies." *CoStar Group, Inc.*, 373 F.3d at 549 (*quoting Sony Corp. v. Universal City Studios, Inc.,* 464 U.S. 417, 432–33, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984)). Under the Copyright Act, "[a]nyone who violates any of the exclusive rights of the copyright owner ... is an infringer of the copyright," 17 U.S.C. § 501, and it "does **not** require that the infringer know that he is infringing" or that the conduct be a "**willful** violation of the copyright owner's rights." *CoStar Group, Inc.*, 373 F.3d at 549 (emphases added).

Defendant admitted multiple times in its Answer, and in the 30(b)(6) deposition of Defendant, that Defendant published at certain times, and advertised, distributed, and sold *Fundamentals*. Just a few examples of these admissions include the following examples from Defendant's Answer (Dkt. No. 17):

i. *Defendant's Answer No. 46*: Answering paragraph 46, it is admitted that Defendant has **advertised, published, distributed, and sold** *Fundamentals of Catholic Dogma* and taken other similar acts since August of 1974, without Plaintiff's consent or authorization, but with the belief that Defendant was acting within its legal rights to do so. Except as admitted, paragraph 46 is denied.

ii. *Defendant's Answer No. 10*: Answering paragraph 10, it is admitted that Defendant's principal place of business is in Charlotte, North Carolina, which is in the jurisdiction of

7

the Western District of North Carolina. It is further admitted that Defendant has **advertised, sold and distributed** *Fundamentals of Catholic Dogma* from its principal place of business. Except as admitted, paragraph 10 is denied.

iii. *Defendant's Answer No. 36*: Answering paragraph 36, it is admitted that in 2013 Defendant advertised on its website that the book titled *Fundamentals of Catholic Dogma* by Dr. Ludwig Ott was "temporarily out of stock" and that a new "HARDBOUND EDITION" would be available for shipment by "Summer 2013." It is further admitted that during that period of time, Defendant continued to **advertise, distribute and accept orders for** the work. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 36, and those allegations are therefore denied.

*See* Dkt. No. 17.

Under the Copyright Act, "[a] violation of § 106 requires copying or the making of copies . . . . [a]nd the term 'copies' refers to 'material objects ... in which a work is fixed.'" *CoStar Group Inc.*, 373 F.3d at 549 (*quoting* 17 U.S.C. § 101; *citing* 17 U.S.C. §§ 102(a), 106(1), 106(3), and *Feist Publications,* 499 U.S. at 361, 111 S.Ct. 1282)). The record in this case includes multiple facts and admissions that Defendant published (made copies of) *Fundamentals* and distributed and sold such copies for years. *See* Dkt. No. 17.

### c. Defendant admitted publishing and selling *Fundamentals* even after receiving Plaintiff's objections.

In the record in this case, Defendant has admitted multiple times that Defendant received Plaintiff's cease-and-desist letter dated March 22, 2013 and Plaintiff's Notice of Intent dated April 26, 2013[3], but, after even after receiving Plaintiff's objections, Defendant published, distributed, and/or sold copies of *Fundamentals* in each year 2013, 2014, 2015, 2016, 2017, and

---

[3] *Defendant's Answer No. 4*: Answering paragraph 4, it is admitted that in April of 2013 Defendant advertised on its website that the book titled *Fundamentals of Catholic Dogma* by Dr. Ludwig Ott was "temporarily out of stock" and that a new "HARDBOUND EDITION" would be available for shipment by "Summer 2013." Defendant denies the allegation that it did not have any "stock of *Fundamentals of Catholic Dogma,*" when it received the two documents titled "Notice of Intent to Enforce (NIE) a Copyright Restored Under the Uruguay Round Agreements Act (URAA)."

8

2018. Defendant's evidence shows that Defendant had zero stock of *Fundamentals* – zero copies of paperback or hard-back versions – during at least the following time periods:

    a. April 2009 through September 2009 (at least 6 full months)

    b. July 2011 through March 2012 (at least 9 full months)

    c. November 2012 through March 2013 (at least 5 full months)

    d. May 2013[4] through September 2013 (at least 5 full months).

*See* SBPP-04049-04050, attached hereto as Exhibit A. One example of these admissions includes the following from Defendant's Answer (Dkt. No. 17):

> *Defendant's Answer No. 50*: Answering paragraph 50, it is admitted that Defendant, through its own acts and the acts of its predecessor in interest, TAN Books and Publishers, Inc., has advertised, published, distributed or sold *Fundamentals of Catholic Dogma* since 1974. Defendant denies that its actions infringed on any copyright belonging to Plaintiff. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 50 and those allegations are therefore denied.

In sum, Plaintiff has satisfied the elements of copyright infringement, and evidence of such comes from Defendant's own discovery responses and testimony. Plaintiff thus respectfully requests that the Court grant Plaintiff's Motion for Summary Judgment for copyright infringement.

### 2. Defendant has no valid or reasonable defense, does not qualify as a reliance party now, and does not have superior rights to those of Plaintiff.

Defendant's "First Defense" is its collection of answers in the Answer. The Second Defense is not applicable to this summary judgment motion.

---

[4] Based on Defendant's evidence, it distributed five (5) hard-back versions of *Fundamentals* in April 2013, but then ran out of stock again or stopped distributing any versions of *Fundamentals* at some point during April 2013 and, instead, took three (3) back-orders for hard-copy *Fundamentals*. *See* SBPP-04049-04050, Exhibit A.

9

Defendant's Third Defense is that Plaintiff initiated this lawsuit "more than three years after Plaintiff's claims accrued, and some or all of Plaintiff's claims and/or damages are therefore barred by the statute of limitations." The Verified Complaint was filed on September 29, 2016. Dkt. No. 1. As Defendant admitted in its evidence (*see* Exhibit A attached hereto), it stopped distributing and did not record any back-orders for Fundamentals for a period of months – December 2013 through February 2014 – after communicating with Plaintiff earlier in 2013 about the infringing activities. *Id.* Defendant then restarted, willfully and intentionally, to infringe Plaintiff's rights in or around March 2014. *Id.* The Verified Complaint was filed less than three years later and thus falls within the statute of limitations for copyright infringement. Dkt. No. 1.

Defendant's Fourth Defense in its Answer includes that it is "entitled to a mandatory license under 17 U.S.C. §104A(d)(3)(B) as Defendant is a reliance party under 17 U.S.C. §104A(d)(3) and has been exploiting an existing derivative of the restored work since before the enactment of the Uruguay Round Agreements Act." Defendant is mistaken. In order to qualify as a reliance party under §104A(d)(3), the derivative would have to be created by Defendant before December 8, 1994, the date of enactment of the URAA. Defendant has been publishing a copy of the 1955 translation that was created by Dr. Patrick Lynch for Mercier Press in Ireland, almost twenty years before Defendant's predecessor began publishing the Lynch translation.

In addition, Defendant says it (i) purchased "assets of TAN Books out of bankruptcy," (SBP Oct. 17 Depo. 18: 19-20), and that (ii) TAN Books "maintain[ed] publication rights in Fundamentals as the successor in interest to B. Herder of St. Louis to whom The Mercier Press Limited ("Mercier Press") granted exclusive U.S. **co-publication** rights" (SBP Oct. 17 Depo. 49:21-25 (emphasis added)). However, B. Herder of St. Louis did not have **co-publication** rights – it only had exclusive U.S. **distribution** rights. SBPP-00221-00222, Exhibit B. Therefore, no

10

successor (even if the chain of title is clean) would have more than distribution rights, not the right to **publish**. *Id.*

Second, as shown in BP 00830-00831 (attached hereto as Exhibit H), the underlying contract between Mercier Press and Herder-Saint Louis (predecessor of B. Herder), provides in Article 6 that (in translation) "When the last edition of the English translation two years is out of print, without that it will be reissued, Herder Freiburg translation rights fall back." BP 00830-00831, Exhibit H. The two-year period occurred and therefore any rights in the translation (*Fundamentals*) reverted to Mercier Press in or around August 2013. *See* SBPP-04049-04050, Exhibit A; BP 00830-00831, Exhibit H. As shown in SBPP-04049-04050, Defendant did not record any sale of Fundamentals from July 2011 through February 2014. *See* Exhibit A. Defendant did not receive any money for the books so it appears that the book was out of print (out of stock, except for already-existing books that were returned) for longer than two years. *Id.* Accordingly, Defendant cannot be a reliance party.

Defendant's Fifth Defense fails for the same reasons described above.

Defendant's Sixth Defense in its Answer is that *Fundamentals* does not qualify for restoration under Section 104A of the Copyright Act, 17 U.S.C. § 104A, because it was published in the U.S. within 30 days of its publication in Ireland. Dkt. No. 17. Documents and evidence have been produced, however, showing that *Fundamentals* was not published or available in the U.S. within 30 days of its publication in Ireland in May 1955. *See* SBPP-00251, attached hereto as Exhibit I; *see also* Exhibits H, J, K, and L attached hereto. A section of the August 26, 1955 issue of the publication titled *Commonweal* includes an advertisement for *Fundamentals* and indicates the book could be reserved at local bookstores and would be available to purchase in the near future. *See* BP03669, attached hereto as Exhibit J. This indicates the book was not available for sale in the U.S. as of August 26, 1955. *Id.* Additionally, an advertisement in the

11

*Commonweal* issue dated October 14, 1955 indicates that *Fundamentals* was available to purchase at that time, and an advertisement in the October 28, 1955 issue of Commonweal listed Fundamentals as one of the "New Herder Titles." *See* BP03670 and SBPP-02238, attached hereto as Exhibits K and L, respectively.

Defendant's Seventh Defense fails because, as explained above, Defendant is not a successor to **publication** rights in the U.S. and has no right to publish Fundamentals in the U.S.

Defendant's Eighth Defense is that U.S. Copyright Registration Nos. TX0006484647 and TX0006484646 are invalid or unenforceable. Dkt. No. 17, p. 13. As stated above, a certificate of registration issued by the Copyright Office is "prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). Where a certificate of registration exists, the burden shifts to the defendant to prove that the claimed copyrights are invalid. *See Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 428 (4th Cir. 2010). Defendant has provided no evidence and cannot provide any evidence of invalidity. The record of this case includes no facts proving rights emanating from U.S. Copyright Registration Nos. TX0006484647 and TX0006484646 copyright rights are unenforceable.

Defendant's Ninth Defense is actually the point of the whole case. Dkt. No. 17, p. 13. As set forth above in Section IV.B.1, Plaintiff has satisfied the elements of copyright infringement and evidence shows Defendant's willful violations. *See* Dkt. Nos. 16-2, 16-3, and 17.

Defendant's Tenth Defense is that its actions were not willful. Dkt. No. 17, p. 13. This is flatly contradicted by the evidence showing that Defendant advertised, distributed, and sold Fundamentals even after receiving Plaintiff's letters in 2013. *See* Exhibit A; Dkt. No. 17.

Defendant's Eleventh Defense is that Plaintiff is not the author or initial rightholder for Fundamentals. Dkt. No. 17, p. 13. As set forth in the Copyright Act, copyright rights can be

12

assigned and transferred.  As explained above, such assignments and transfers took place.  *See* Exhibits D, E, and F.

Defendant's Twelfth Defense is simply that it is the owner of rights in *Fundamentals*, not Plaintiff.  Dkt. No. 17, p. 13.  The record in this case shows that Plaintiff owns or holds rights in *Fundamentals*.  *See* Exhibits D, E, F; Dkt. Nos. 16-2, 16-3.

Defendant's Thirteenth Defense essentially is the same as its Third Defense concerning the statute of limitations for copyright infringement claims. Dkt. No. 17, pp. 11, 13.  As stated above, Defendant's statute of limitations idea fails.  *See* Exhibit A and Dkt. No. 1.

For the reasons stated above, Plaintiff has proven its copyright infringement case, and Defendant's challenges fail.

### 3. An award to Plaintiff of its attorneys' fees and costs is justified and warranted by Defendant's willful, continued infringing acts.

Under Section 505 of the Copyright Act, "… the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."  17 U.S.C. § 505.

Because of Defendant's conduct – refusing to stop publishing, distributing, selling and profiting from the sale of Fundamentals – even after receiving Plaintiff's written objections to such, Plaintiff believes that such behavior warrants repercussions.  Plaintiff and respectfully requests that the Court award to Plaintiff its attorneys' fees and costs in this lawsuit.  Awarding Plaintiff its attorneys' fees and costs would deter Defendant from such infringing activities in the future, and would help "make whole" Plaintiff after years of spending significant resources with objections and litigation over Defendant's infringement of *Fundamentals*.

13

## V. CONCLUSION

For the reasons stated herein, Plaintiff is entitled to summary judgment in its favor as to Defendant's copyright infringement and an award of Defendant's profits resulting from its infringement of *Fundamentals*, as well as the Court's discretionary award of attorneys' fees and costs pursuant to 17 U.S.C. § 505, and the other relief prayed in Plaintiff's First Amended Verified Complaint. Plaintiff respectfully requests that the Court grant Plaintiff's Motion for Summary Judgment in its entirety.

Respectfully submitted, this the 31st day of October, 2018.

/s/ Kristin G. Garris
Kristin G. Garris
N.C. State Bar No.38767
TANNENBAUM HELPERN SYRACUSE
& HIRSCHTRITT LLP
900 Third Avenue
New York, New York 10022
Tel: (212) 508-6783
Email: garris@thsh.com

/s/ Mark W. Ishman
Mark W. Ishman
N.C. Bar No. 27908
Attorney for Plaintiff
Ishman Law Firm, P.C.
9660 Falls of Neuse Road, Box 138-350
Raleigh, NC 27615
Telephone: (919) 468-3266
Email: mishman@ishmanlaw.com

# CERTIFICATE OF SERVICE

    I hereby certify that I have served or caused to be served a copy of the foregoing pleading or paper by electronically filing the same through the Court's CM/ECF System which has notified or will notify all parties or counsel of record, including but not limited to, defendant's counsel of record:

        Jonathan E. Buchan
        Natalie D. Potter
        Attorneys for Defendant
        Essex Richards, PA
        1701 South Blvd.
        Charlotte, NC 28203
        Telephone: (704) 377-4300
        Fax: (704) 372-1357
        Email: jbuchan@essexrichards.com
        Email: npotter@essexrichard.com

    This, the 31st day of October, 2018.

                      /s/ Kristin G. Garris
                      Kristin G. Garris
                      N.C. State Bar No.38767
                      TANNENBAUM HELPERN SYRACUSE
                      & HIRSCHTRITT LLP
                      900 Third Avenue
                      New York, New York 10022
                      Tel: (212) 508-6783
                      Email: garris@thsh.com