# Exhibit C-1

# ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement ("Agreement") is made and entered into as of this 23RD day of June, 2008 by and between Fred Caruso ("Caruso" or the "Trustee"), not individually but solely as the Chapter 11 Trustee of the bankruptcy estate (the "Estate") of TAN Books & Publishers, Inc. ("TAN"), Good Will Publishers, Inc, a North Carolina corporation ("Good Will") and Saint Benedict Press, LLC, a North Carolina limited liability company ("Saint Benedict") (Good Will and St. Benedict are hereinafter jointly referred to as "Purchaser").

## RECITALS

A. TAN is a publisher and seller of religious publications (the "Business"), with its principal office located at 2020 Harrison, Rockford, Illinois (the "Facility").

B. On February 18, 2005 (the "Petition Date"), TAN filed a voluntary petition for relief under Chapter 11 of the title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Illinois, Western Division (the "Bankruptcy Court"), Case No. 05 B 70657 (the "Bankruptcy Case").

C. From the Petition Date to December 20, 2006 (the "Appointment Date"), TAN operated the Business as debtor in possession pursuant to the provisions of the Bankruptcy Code.

D. On the Appointment Date, the Bankruptcy Court entered an Order appointing Caruso as Chapter 11 trustee for the Estate. Since that date, the Trustee has operated the Business.

E. The Trustee desires to sell substantially all of the assets of the Business to Purchaser, and Purchaser desires to purchase same, on the terms and conditions hereinafter set forth.

THEREFORE, in consideration of the mutual covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each party, the Trustee and Purchaser hereby agree as follows:

## ARTICLE I

## PURCHASE AND SALE; ASSUMPTION OF CERTAIN LIABILITIES

1.1 Purchase and Sale of Assets. Subject to the terms and conditions set forth in this Agreement, at Closing (as such term is defined below), the Trustee shall sell, assign, transfer and deliver to Purchaser, and Purchaser shall purchase, acquire and take assignment and delivery of,

6227259 v.10

SBPP 02094

all of the Trustee's right, title and interest in and to the following Business assets, wherever located (collectively, the "Acquired Assets"):

    (a)    All inventory, raw materials, work in progress, finished goods and supplies (collectively, the "Inventory");

    (b)    Division 2, 3 and 8 accounts receivable (collectively, "Receivables");

    (c)    All machinery, equipment, computers tools, vehicles, furniture, furnishings, film libraries and goods;

    (d)    The existing lease of a certain copy machine (the "Equipment Lease")

    (e)    All Assumed Contracts (as such term is defined in Section 1.4(a) below);

    (f)    All general intangibles, including the name "TAN Books & Publishers" and any websites and domain names, provided, however, the Trustee and the Estate may continue to use the name "TAN Books & Publishers" solely for the purpose of completing the Bankruptcy Case;

    (g)    All books and records, including, without limitation, customer lists and orders, relating to the Business;

    (h)    All goodwill relating to the foregoing and the Business; and

    (i)    Such other rights or agreements which the Trustee and Purchaser may hereafter agree in writing shall be an Acquired Asset (collectively, the "Additional Assets").

1.2    Excluded Assets. Notwithstanding anything to the contrary in this Agreement, the following assets of the Business, as well as any other asset not included in the foregoing definition of Acquired Assets, shall be retained by the Trustee and are not being sold, assigned or transferred to Purchaser hereunder (collectively, the "Excluded Assets"):

    (a)    Any and all rights under this Agreement, claims, counterclaims, demands and causes of action which the Trustee has or may have, including, without limitation, any avoidance or other actions arising under the Bankruptcy Code, other relevant statutory law, or common law;

    (b)    All leases and contracts other than the Equipment Lease, the Assumed Contracts and the Additional Assets;

    (c)    Any and all cash or cash equivalents, including the Purchase Price;

2

6227259 v10

Case 3:16-cv-00695-FDW-DCK   Document 85-4   Filed 10/31/18   Page 3 of 15 SBPP 02095

(d) Any and all rights under or relating to Trustee's insurance policies or any refunds or proceeds related thereto;

(e) Any and all rights to any tax refund, credit, or rebate; and

(f) Commercial and customer loan receivables, and all other receivables not described in Section 1.1(b) above .

1.3 As Is / Where Is. The Acquired Assets are being sold herein in "AS IS, WHERE IS" condition, without any representation or warranty whatsoever by the Trustee.

1.4 Assumption of Liabilities. At Closing, Purchaser shall assume the following liabilities of the Trustee and Business (collectively, the "Assumed Liabilities"):

(a) All liability of the Trustee, arising on or after Closing, under the Equipment Lease and those contracts (the "Assumed Contracts") described on Exhibit A attached hereto. The assumption by Purchaser of the foregoing liabilities, and the assignment to it of the related agreements, shall, to the extent applicable, be pursuant to and in accordance with Section 365 of the Bankruptcy Code. To the extent that the assignment of any Assumed Contract requires, pursuant to such Section 365, the payment of cure costs to any counterparty to such contract, the Trustee shall pay such costs at Closing;

(b) All liability to customers for publications ordered but not yet shipped, which liability may be satisfied by Purchaser by refunding to customers deposits received for titles which are not in stock or which are in insufficient stock to cover outstanding orders;

(c) All liability to vendors for Inventory received on or after Closing;

(d) All liability for expenses relating to vacation, sick and/or personal leave pay of TAN's employees which have accrued since the Petition Date and are unpaid, as set forth on Exhibit B attached hereto, provided, however, that to the extent such employee-related liability exceeds $50,000.00, such excess shall be credited against the $1,000,000.00 payment described in Section 2.1(a) below and, provided further, that in lieu of assuming this liability as set forth above, Purchaser, at its option, may pay an additional $50,000.00 cash to the Trustee at Closing;

3

Case 3:16-cv-00695-FDW-DCK   Document 85-4   Filed 10/31/18   Page 8 of 15

(e) All liability for any and all unrecorded credits and discounts (i.e., credits and discounts not already reflected or credited in TAN's accounts receivable balances) (collectively, "Customer Credits") which TAN previously provided to any customers or potential customers, provided, however, such liability shall not exceed $5,000.00 (the "Customer Credit Cap"). At Closing, the Trustee shall furnish Purchaser with a schedule of all Customer Credits; and

(f) All liability for previously issued and unused gift cards, as set forth on Exhibit C attached hereto.

## ARTICLE II

## PURCHASE PRICE, PAYMENT AND CREDITOR DISCOUNTS

2.1 Purchase Price. Subject to Sections 2.3 and 2.4 below, the purchase price ("Purchase Price") for the Acquired Assets shall be:

(a) One Million Dollars ($1,000,000.00), less or plus, as applicable, the employee-related credit, if any, or $50,000 payment described in Section 1.4(d) above, to be paid at Closing in cash; and

(b) Cash payments ("Earnout Payments") equal to 5% of the gross annual revenues arising from the sale by Purchaser or any of its affiliates of any publication described on Exhibit D attached hereto ("Covered Titles") except: (i) sales by Trinity Road, LLC ("Trinity Road"); and (ii) sales by Purchaser of the Douay-Rheims bible in bereavement or similar programs designed for unions and other groups, which programs are not part of either the wholesale or retail distribution system of Purchaser. For purposes of Earnout Payments due hereunder, Purchaser agrees that it shall not sell any Covered Title to an affiliate (including, without limitation, Trinity Road) at a discount greater than the discount such affiliate could obtain in an arms' length transaction with an unaffiliated third party seller.

Earnout Payments shall be payable by Purchaser to the Trustee, or as the Trustee may direct in writing (for example, without limitation, a direction to pay to a post-closing trustee of or creditor representative for the Tan Estate), annually for a period of ten (10) years following Closing. The initial Earnout Payment

4

Case 3:16-cv-00695-FDW-DCK Document 85-4 Filed 10/31/18 Page SBPPL-02097

shall be due thirty (30) days after the first anniversary of Closing. Thereafter, Earnout Payments shall be due (30) days after each subsequent anniversary of Closing, through the tenth anniversary thereof. Each Earnout Payment shall be accompanied by a reasonably detailed statement showing the calculation thereof, certified by an independent auditor reasonably acceptable to the Trustee (the "Auditor"). The cost of such statements and the Auditor shall be paid by Purchaser.

Except as provided otherwise in Section 1.4(d) above, the Assumed Liabilities shall be in addition to, and shall not be credited against, the Purchase Price.

2.2 Earnest Money. Purchaser shall deposit with the Trustee, on or before execution of this Agreement, earnest money (the "Earnest Money") of $125,000.00 in the form of a cashier's or certified check or wired funds, payable to the order of the Trustee. The Trustee shall hold the Earnest Money in a segregated, non-interest bearing account to be applied in accordance with Section 8.2 below.

2.3 Prorations. All ordinary course proratable expenses, other than Assumed Liabilities, shall be prorated through the day prior to the Closing, including, without limitation, Equipment Lease payments, gas, electricity, water or other utilities, taxes, wages and employment taxes, if any. The net amount of such prorations shall, as applicable, be added to or subtracted from the cash portion of the Purchase Price at Closing.

2.4 Post-Closing Adjustment. After Closing, the Purchase Price shall be subject to adjustment (the "Post-Closing Adjustment") as follows:

(a) With respect to Receivables:

(1) To the extent that the face amount of Receivables not more than 60 days past due as of Closing exceeds $225,000.00, such excess shall be added to the Purchase Price; and

(2) To the extent that the face amount of Receivables not more than 60 days past due as of Closing is less than $225,000.00, such deficit shall be subtracted from the Purchase Price;

(b) With respect to Inventory:

(1) To the extent that the Inventory Value (as defined below) as of Closing exceeds $1,350,000.00, there shall be no adjustment to the Purchase Price;

5

Case 3:16-cv-00695-FDW-DCK   Document 85-4   Filed 10/31/18   Page 8 of 15098

(2) To the extent that Inventory Value as of Closing is less than $1,350,000.00 but greater than $1,250,000.00, fifty percent (50%) of the deficit below $1,350,000.00 shall be subtracted from the Purchase Price; and

(3) To the extent that Inventory Value as of Closing is less than $1,250,000.00, $50,000.00 plus one hundred percent (100%) of such deficit shall be subtracted from the Purchase Price.

As used herein, "Inventory Value" shall mean the value of the Inventory according to TAN's perpetual inventory records, as such value may be adjusted by the Trustee to take into account material variations from the inventory mix that existed as of April 30, 2008 and other factors, if any, arising after April 30, 2008, that might materially affect its value.

(c) With respect to Customer Credits, to the extent that such amount exceeds the Customer Credit Cap, such excess shall be subtracted from the Purchase Price

The Post-Closing Adjustment shall be determined by the Trustee within 45 days after Closing, subject to reasonable review by Purchaser. A positive (net addition) Post-Closing Adjustment shall be paid by Purchaser to the Trustee, and a negative (net subtraction) Post-Closing Adjustment shall be paid by the Trustee to Purchaser, within 30 days after the Trustee notifies Purchaser in writing of his determination of such amount.

The Post-Closing Adjustment, as determined by the Trustee, shall be final unless objected to by Purchaser in writing within 15 days after its receipt of written notification of same from the Trustee. Any dispute relating to the Post-Closing Adjustment, if not resolved by the parties, shall be submitted to the Bankruptcy Court for final resolution, in accordance with Section 9.8 below.

2.5 Discount to Creditors. In addition to the Purchase Price and Post-Closing Adjustment, Purchaser shall offer each of the Estate's creditors (collectively, the "Creditors") a discount of 25% off the retail purchase price of each publication sold by Purchaser or its affiliates (the "Discount Offer"), which may be taken at any time during the 15-year period following Closing. Each of the Creditors is hereby designated an intended third party beneficiary of the Discount Offer and shall have the right to enforce same directly, in its own name. The Trustee shall furnish Purchaser with a list of the Creditors on or before Closing.

Case 3:16-cv-00695-FDW-DCK  Document 85-4  Filed 10/31/18  Page SBPPt-02099

2.6     Allocation of Purchase Price. The Purchase Price shall be allocated among the Acquired Assets as follows: (a) first, to the face amount of Receivables not more than 60 days past due as of Closing; and (b) thereafter, to the Inventory Value of the Inventory. Purchaser shall complete Form 8594 at Closing as required under Section 1060 of the Internal Revenue Code.

## ARTICLE III
## REPRESENTATION AND WARRANTIES

3.1     Representations and Warranties of Trustee. The Trustee represents and warrants to Purchaser as of the date of this Agreement and the Closing Date that he is the duly appointed Chapter 11 trustee of the Estate.

3.2     Representations and Warranties of Purchaser. Purchaser represents and warrants to the Trustee as of the date of this Agreement and the Closing Date that:

    (a)     Purchaser is a corporation validly existing and in good standing under the laws of the State of North Carolina and has the full power and authority to enter into and perform the terms of this Agreement;

    (b)     The execution, delivery and performance of this Agreement by Purchaser have been duly authorized by all necessary actions on the part of Purchaser, and do not and will not violate any provisions of Purchaser's organizational documents, any applicable law or any contract or agreement;

    (c)     This Agreement constitutes the valid and binding agreement of Purchaser and is enforceable against the Purchaser;

    (d)     Purchaser has sufficient funds to pay the Purchase Price and satisfy its other obligations under this Agreement.

    (e)     Purchaser has had access to TAN's books and records and such other information as it deems necessary or appropriate to complete its due diligence review of TAN's Business and is not relying on any representation of Trustee relating to the status or condition of the Business.

3.3     Survival. The representations and warranties of Purchaser herein shall survive Closing. The representations and warranties of the Trustee herein shall not survive Closing.

## ARTICLE IV
## COVENANTS OF TRUSTEE

4.1 <u>Conduct of the Business Pending Closing</u>. Subject to the Trustee's obligations under the Bankruptcy Code, and except as otherwise expressly contemplated by this Agreement or orders of the Bankruptcy Court or as expressly consented to in writing by Purchaser (which consent shall not be unreasonably withheld or delayed), the Trustee shall, from the date of the execution of this Agreement until Closing, conduct the Business in the ordinary course of business and use reasonable efforts to preserve intact the Business and keep available the services of the present employees of TAN.

4.2 <u>Access to Information and Facility</u>. The Trustee agrees that, prior to Closing, Purchaser shall, upon reasonable notice and so long as such access does not unreasonably interfere with the Business, have reasonable access during normal business hours to the Facility and books and records of the Business in order to: (a) prepare for its post-closing operation of the Business; and (b) ascertain the Trustee's compliance with Section 4.1 above. In connection with such access, Purchaser shall be bound by and shall comply with the terms of that certain Confidentiality and Non-Disclosure Agreement (the "Confidentiality Agreement") dated on or about February 20, 2008 by and between the Trustee, Purchaser and Purchaser's affiliates, Trinity Road, LLC and Saint Benedict Press, LLC.

4.3 <u>Bankruptcy Court Approval</u>. The Trustee agrees to take such action as he may deem necessary or appropriate to obtain an order of the Bankruptcy Court (the "Approval Order") approving this Agreement, through either the confirmation by the Bankruptcy Court of a Chapter 11 plan incorporating this Agreement or an appropriate motion or motions pursuant to the provisions of the Bankruptcy Code, including, but not limited to, Sections 363 and 365 thereof.

## ARTICLE V
## COVENANTS OF PURCHASER

5.1 <u>Assumed Liabilities</u>. Subsequent to Closing, Purchaser agrees to pay and perform all of the Assumed Liabilities and shall indemnify and hold the Trustee and the Estate harmless with respect to any and all claims, liabilities, losses and expenses, including, without limitation, reasonable attorneys' fees, arising therefrom or relating thereto.

8

Case 3:16-cv-00695-FDW-DCK   Document 85-4   Filed 10/31/18   Page 9 of 15
SBP P 02101

5.2     Post-Closing Access to Records and Certain Personnel. After Closing and until the later of: (x) the closing of the Bankruptcy Case; or (y) three (3) years after Closing, Purchaser shall permit the Trustee, or such person or persons as may be authorized by the Trustee or the Bankruptcy Court, and their representatives, specifically including but not limited to Trustee's legal counsel or any other professionals retained by him in connection with the Bankruptcy Case, reasonable access to Purchaser's employees and any books, records, and documents constituting a portion of the Acquired Assets, the Assumed Liabilities, or the Business (whether in documentary or data form) for the purpose of: (i) the continuing administration of the Bankruptcy Case (including, without limitation, the prosecution or defense of any litigation or claims objections or the administration of any Chapter 11 plan confirmed in the Bankruptcy Case); (ii) preparation of any tax returns required to be filed by Trustee; or (iii) defense of any audit, examination, administrative appeal or litigation of any tax return related to TAN. Such access shall include the right to copy, at Purchaser's expense, such documents and records as may be necessary or appropriate. If Purchaser moves any such books, records, or documents from the Facility, the Trustee, and any such authorized person and representative, shall have the right to require Purchaser, at its own expense, to copy and deliver to him or it such documents and records as may be requested.

## ARTICLE VI
## CONDITIONS PRECEDENT TO CLOSING

6.1     Approval Order. Closing hereunder is contingent upon the entry of the Approval Order on or before September 30, 2008 or such later date as the Trustee and Purchaser may subsequently agree upon in writing (the "Approval Date"). The Approval Order shall, among other things:

(a)     Provide that, except as otherwise provided in this Agreement, the Acquired Assets are being sold to Purchaser free and clear of all liens, claims and encumbrances pursuant to section 363(f) or other provisions of the Bankruptcy Code;

(b)     Authorize the assumption by the Trustee and the assignment to Purchaser of all Assumed Contracts; and

(c)     Find that Purchaser is a good faith purchaser.

9

6227259 v10

Notwithstanding the foregoing or anything in this Agreement to the contrary, to the extent that any of the Acquired Assets is subject to any copyright restriction, such asset is being sold to Purchaser subject to such restriction.

6.2 Accuracy of Representations and Warranties. Closing hereunder is further contingent upon the continuing accuracy of the representations and warranties of the parties as set forth in Article III above.

## ARTICLE VII
## CLOSING

7.1 Closing. The closing of the transactions contemplated in this Agreement ("Closing") shall take place no later than the tenth (10th) business day after entry of the Approval Order, provided that such Order has not been stayed.

7.2 Payment of the Purchase Price. At Closing, the Earnest Money shall be applied to the Purchase Price and Purchaser shall pay the balance thereof, plus or minus prorations as set forth in Section 2.3 above, by cashier's or certified check or wired funds, as directed in writing by the Trustee.

7.3 Deliveries by Trustee. At Closing, the Trustee shall deliver to Purchaser: (i) a duly executed quitclaim bill of sale, in form and substance as set forth in Exhibit E attached hereto, conveying to Saint Benedict all of the Trustee's right, title and interest in and to the Acquired Assets; (ii) a duly executed Assignment and Assumption Agreement relating to the Equipment Lease and the Assumed Contracts, in form and substance substantially as set forth in Exhibit F attached hereto (the "Assignment and Assumption Agreement"); (iii) a duly executed sublease, in form and substance substantially as set forth in Exhibit G attached hereto (the "Sublease"), pursuant to which the Trustee subleases the Facility to Purchaser on the same terms and conditions that the Trustee leases the Facility from its owner, subject, however, to the right of Purchaser to terminate the Sublease upon sixty (60) days' prior written notice to the Trustee; and (iv) a written direction of the Trustee directing Purchaser as to whom the Earnout Payments shall be payable.

7.4 Deliveries by Purchaser. At Closing, in addition to payment of the Purchase Price, Purchaser shall deliver to the Trustee the Assignment and Assumption Agreement and the Sublease, each duly executed by it.

10

6227259 v10

Case 3:16-cv-00695-FDW-DCK   Document 85-4   Filed 10/31/18   Page 11 of 25  SBPP-0103

# ARTICLE VIII

# TERMINATION

8.1 <u>Termination of Agreement</u>. This Agreement may be terminated and the transactions contemplated hereby abandoned at any time prior to Closing:

(a) By the mutual written consent of the Trustee and Purchaser, subject to any required Bankruptcy Court approval;

(b) By any party not in material breach of this Agreement, if the Approval Order is not entered on or before the Approval Date or if, after entry, it is stayed for more than five (5) business days; or

(c) By the Trustee, on the one hand, or Purchaser, on the other, if the other party materially breaches any of its representations, warranties, covenants or other obligations under this Agreement and such breach is not cured within five (5) business days after such other party receives written notice of same.

8.2 <u>Liabilities in Event of Termination</u>. In the event of any termination of the Agreement pursuant to Section 8.1(b) or Section 8.1(c), the terminating party shall deliver written notice thereof to the other party specifying the provision of this Agreement pursuant to which such termination is made. Upon such delivery, this Agreement shall be of no further force and effect, and neither the Trustee nor Purchaser shall have any further liability hereunder, <u>provided</u>, however, that:

(a) If termination is based on Section 8.1(b) above, then the Trustee shall refund the Earnest Money to Purchaser;

(b) If termination is based on Section 8.1(c) above and the Trustee is the terminating party, then the Trustee shall retain the Earnest Deposit as his sole and exclusive remedy hereunder; and

(c) If termination is based on Section 8.1(c) above and Purchaser is the terminating party, then Purchaser, as its sole and exclusive remedies hereunder, may either: (i) seek specific performance of this Agreement; or (ii) terminate this Agreement and receive a refund of the Earnest Money.

11

6227259 v10

Case 3:16-cv-00695-FDW-DCK  Document 85-4  Filed 10/31/18  Page 12 of 15 SBPP-0204

# ARTICLE IX

## MISCELLANEOUS

9.1 <u>Brokers</u>. The Trustee and Purchaser acknowledge and agree that neither has retained a broker or finder in connection with this transaction and that each shall hold the other harmless from and against any claim, liability or expense relating to a broker's or finder's fee arising through it.

9.2 <u>Expenses</u>. The Trustee and Purchaser acknowledge and agree that each of them shall bear its own costs and expenses (including all legal, accounting, and other costs) in connection with this Agreement.

9.3. <u>Notices</u>. Notices hereunder shall be sent by personal delivery, overnight express or telecopier to:

      Trustee:      Fred Caruso
                        Development Specialists, Inc.
                        Three First National Plaza
                        70 West Madison Street, Suite 2300
                        Chicago, Illinois 60602
                        Fax: (312) 263-1180

                with a copy to:

                        John F. Pollick
                        Michael M. Schmahl
                        McGuireWoods LLP
                        77 West Wacker Drive
                        41st Floor
                        Chicago, Illinois 60601
                        Fax: (312) 920-9928

      Purchaser:    Good Will Publishers, Inc.
                        1520 South York Road
                        Gastonia, North Carolina 28052
                        Attention: Richard O. Hoefling
                        Fax: (704) 868-7149

                with a copy to:

                        _____
                        _____
                        _____

Fax: (___) ___-____

Notices shall be deemed effective upon receipt.

9.4  Time of the Essence. Time is of the essence of this Agreement.

9.5  Modifications. No provision of this Agreement shall be modified or limited except by written agreement signed by the party against whom it is sought to be enforced.

9.6  Severability. The unenforceability of any provision of this Agreement shall not affect the enforceability or validity of any other provision.

9.7  Applicable Law. This Agreement shall be construed in accordance with the Bankruptcy Code and, to the extent not inconsistent therewith, the internal laws of the State of Illinois without application of any doctrine relating to choice of law.

9.8.  Jurisdiction. The parties agree that the Bankruptcy Court shall have exclusive jurisdiction over this Agreement, including any and all disputes relating thereto, and that such Court has both subject matter jurisdiction over this Agreement and personal jurisdiction over each of them. The parties further agree that the Bankruptcy Court shall be the exclusive venue in which to resolve any disputes or matters relating to this Agreement.

9.9  Entire Agreement and Modification. This Agreement constitutes the entire Agreement between the parties hereto with respect to the subject matter hereof and supersedes all prior and contemporaneous negotiations, agreements, representations, understandings and commitments with respect thereto. Notwithstanding the foregoing or anything contained in this Agreement to the contrary, including, without limitation, the provisions of Article VIII above, nothing in this Agreement shall affect the existing and future obligations of Purchaser or its affiliates under the Confidentiality Agreement, including those confidentiality obligations referred to in Section 4.2 above.

9.10  Successors and Assigns. Neither this Agreement nor any of the rights or obligations hereunder may be assigned by the Trustee without the prior written consent of Purchaser, or by Purchaser without the prior written consent of the Trustee; provided, however, that, Purchaser may assign its rights and obligations hereunder, in whole or in part, to an affiliate, provided that no such assignment shall relieve Purchaser of any of its obligations hereunder and, provided further, that the Trustee may, if duly authorized by the Bankruptcy Court or Bankruptcy Code, assign his right to Earnout Payments as well as his other rights hereunder, in whole or in

13

6227259 v10

part, to one or more third parties. Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, including, without limitation, any Chapter 11, Chapter 7 or liquidating trustee, or other person or entity, who succeeds the Trustee as the duly authorized representative of the Estate.

9.11. Joint and Several Liability of Purchaser. The obligations and liabilities of Purchaser hereunder shall be the joint and several obligations and liabilities of Good Will and Saint Benedict.

9.12 Counterparts; Facsimiles and PDFs. This Agreement may be signed in counterparts, with the counterparts together constituting one agreement. A facsimile or pdf copy of a duly executed Agreement or a counterpart thereof shall be deemed an original.

9.13 Representation By Counsel. Each of the parties hereto acknowledge that this Agreement is the product of arm's length negotiation and that each of them has had the assistance of legal counsel of its choice. Accordingly, any ambiguity in this Agreement shall not be interpreted or construed against either party based on the premise that such party was the drafter of this Agreement.

IN WITNESS WHEREOF, the Trustee and Purchaser have executed this Agreement as of the date first written above.

_____
FRED CARUSO, not personally but solely
as Chapter 11 Trustee of the Bankruptcy
Estate of TAN Books & Publishers, Inc.

GOODWILL PUBLISHERS, INC.

By: _____

Title: CEO

SAINT BENEDICT PRESS, LLC

By: _____

Title: Manager

14

6227259 v10