Our ref: BP209
4th December 2013


**Baronius Press**
78 York Street, London W1H 1DP
United Kingdom
tel: +44 (0)870 112 3865
fax: +44 (0)870 112 3864
www.baroniuspress.com

TAN Books
c/o Saint Benedict Press LLC
PO Box 410487
Charlotte
NC 28241, USA

by recorded mail, fax and email to conor@saintbenedictpress.com

Dear Mr. Gallagher,

**RE: Fundamentals of Catholic Dogma**

We are in receipt of your letter of 11th November, 2013.

We note your claim to have devoted significant time and resources to an audit of your rights regarding *Fundamentals of Catholic Dogma*, and to have consulted two independent copyright attorneys. We understand that you do not dispute the copyright status of the German original and the English translation published under license by Mercier, as set forth in our Notices of Intention to Enforce. In this, you acknowledge only what is irrefutable, but in the light of our earlier correspondence, it is certainly welcome.

Nonetheless, you persist in maintaining that TAN has a legal right to publish *Fundamentals* "as TAN has done continuously since 1974." You will not be surprised to hear that Baronius Press has also researched the rights to *Fundamentals* extensively. We have verified the copyright holders to both the German and English editions, and reviewed correspondence between Mercier Press, and German and American Herder companies. We have also taken legal advice in the US, Germany, and the UK. In addition, we have reviewed in detail the court filings from the bankruptcy proceedings for TAN Books and Publishers, Inc.

We maintain that TAN has had no right to publish *Fundamentals* for the past several years, at least, and that it has no present right to publish the existing translation, or any new or amended translation. We will address in turn the three arguments you present in support of your purported rights to publish.

1. TAN, however, maintains publication rights in *Fundamentals,* as the successor-in-interest to B. Herder of St. Louis, to whom Mercier Press granted exclusive US co-publication rights.

First, your claim to have succeeded to the rights of B. Herder could have to be supported by documentary evidence, which you have not presented. Such evidence would have to include a contract between Mercier Press and B. Herder, and a subsequent assignment of Herder's rights under that contract with TAN. We would be delighted to review such documents, if you care to provide us with copies. Since B. Herder, to our knowledge, merely distributed the work in the US, we find it very unlikely that it ever received "exclusive US co-publication rights".

However, even apart from this, your position would remain highly problematic. B. Herder could only assign rights to TAN to the extent that it had validly received them from Mercier Press, and any rights that TAN might now claim through that source would only be enforceable to the extent that Mercier's rights were still enforceable.

Since Mercier Press lost its own rights to *Fundamentals* long ago, any rights that it may have granted to third parties have also lapsed. It is also entirely likely that any rights that Mercier may have validly granted to third parties such as B. Herder, would have lapsed independently prior to the loss of Mercier's own rights. All licenses that we have reviewed have provided for a reversion of rights to the licensor, in the event that the licensee failed to keep the book in print for a period exceeding two years.

Baronius Press Ltd. | Company Registration Number: 04517281 | VAT Registration Number: 837592881
Registered Office: 78 York Street, London W1H 1DP. Registered in England and Wales.

Case 3:16-cv-00695-FDW-DCK Document 94-14 Filed 11/14/18 Page 1 of 3

Our knowledge of the publication history of *Fundamentals* in the US and Germany suggests that all of its various past publishers, both in German and in English, allowed the work to go out of print for periods exceeding two years at different times. It is precisely because of this that the original German and English publishers lost their rights, and that the rights to publish the German original are now held by Nova et Vetera, and those to the existing English translation by ourselves.

Further, neither Mercier Press nor B. Herder ever had the right to grant third parties the right to amend its translation, or to prepare new translations. That right has always been reserved by the copyright holder of the German original. Therefore, your proposal to publish a revised translation cannot possibly be justified by reference to rights granted by Mercier Press and subsequently assigned to you. In the unlikely event that TAN did receive a purported assignment of such rights from B. Herder, it was simply invalid and unenforceable.

2. In the alternative, we are entitled to continued publication as a reliance party under 104A(d)(3) of Title 17 of the US Code.

17 U.S.C. 104A(d)(3) is inapplicable on its face to your future publication plans. It refers to "existing derivative works" made before copyright was restored in 1996. This could apply to the original translation, if you met all the other statutory requirements for a reliance party, but it could not possibly apply to the new derivative work that you are now proposing to publish.

We have previously pointed out that you do not meet the other requirements for a reliance party, since you have not "continued" to publish the existing translation since copyright was restored in 1996. On the contrary, TAN Books and Publishers, Inc., permitted *Fundamentals* to go out of print for several extended periods after 1996, and had therefore forfeited any rights it may have had as a reliance party long before your acquisition of assets in the bankruptcy proceedings. You therefore could not acquire any such rights, even to the existing translation, as a successor-in-interest to TAN.

However, if you now attempt to publish a translation that has been modified from the original one in any way, this will create an additional demonstration of wilful copyright infringement. The modifications that you are proposing to make in a new edition will be without the permission of the copyright holder of the original work, which is now the Estate of Dr. Ott.

3. Our publication rights to *Fundamentals* have been recognized by the U.S. Bankruptcy Court for the Northern District of Illinois, Western Division. After extensive expert review and public notice, the Court certified TAN's publication rights to *Fundamentals* by name when Saint Benedict Press LLC acquired TAN in 2008.

This is a pure falsehood. There was no such recognition or certification by the Bankruptcy Court, and we find it impossible to believe that you seriously contend that there was. If you do, provide us with the citation to the relevant document on the docket, and we will be happy to comment further.

However, from our review of the proceedings, the status of TAN's rights regarding *Fundamentals* was never litigated before the bankruptcy court, and the Court therefore never had any occasion to pass judgment on that issue. Even if it had, no party from whom we derive our rights was before that court, and any judgment that it may have rendered would therefore have no preclusive effect on us.

As for the idea of "extensive expert review", as though this were routine practice in bankruptcy cases, this is pure fiction. No such process occurred. Quite the contrary:

> *Additionally, TAN's business operations are dependent in part on the Debtor's ability to obtain licensing agreements authorizing TAN to publish any works that are protected under American or foreign copyright and intellectual property laws. In certain circumstances authors and other parties have disputed TAN's rights to publish certain works. Although TAN follows business practices designed to comply with all such copyright and intellectual law, TAN has generally addressed such circumstances as they arise…*

> *Under the Sale Option, Good Will Publishing and St. Benedict Press will acquire all or nearly all of the titles in TAN's catalog and will be subject to the same laws and restrictions on publication rights. There may be instances in which Good Will Publishing and St. Benedict Press does not have sufficient rights to publish certain works.* [Doc. 667, at 32-33.]

Certainly, *Fundamentals* was listed in the bankruptcy proceedings as a title that TAN had been publishing, and we accept that you acquired whatever rights to it that TAN had to sell. However, since we have demonstrated that TAN's rights to *Fundamentals* were precisely none at the time of your acquisition, you acquired nothing from them, and no order of the Bankruptcy Court says otherwise.

With regard to the licensing agreement that you proposed to us, we should remark first that we are not entitled under the terms of our own license to grant such a license to a third party. However, nor does Nova et Vetera have the right to grant you a license, having already granted an exclusive license to us. This will explain their failure to respond to your similar proposal to them, following our last letter to you.

Second, the proposed royalty you offer would in any case be grossly inadequate to compensate us for the *harm to the actual or potential market for or value of the restored work from the reliance party's continued exploitation of the work, as well as compensation for the relative contributions of expression of the author of the restored work and the reliance party to the derivative work*. That would be the statutory measure of compensation to which we would be entitled from you, were you indeed a reliance party. 17 U.S.C. 104A(d)(3).

I would also remark that the management of Nova et Vetera were not favourably impressed by your approach to them, suddenly offering royalties after flagrantly breaching their copyright in the past. Nor did they admire your conduct in relation to the rights to *Divine Intimacy*, of which they are also well aware. As I have stated to you previously, I do not believe that your customers would take any more favourable a view, were these facts to come into the public domain.

We have not made any threats of defamation, as you seem to suggest. However, your pretextual assertions that you can publish *Fundamentals* under a claim of right, with no documentary or legal basis, are not sufficient to overcome the true facts. If you attempt to publish, as you say that you will, it will be in wilful violation of our rights, and we will sue to enjoin you from doing so, and for the maximum damages, costs and fees to which we are entitled.

If we have to do this, we will ensure that the facts concerning the legal proceedings are widely publicized, and people will be able to draw their own conclusions. In that event, it is very likely that other facts concerning other titles will also come into the public domain.

In the event that sense prevails, however, we are ready to discuss a settlement on the basis of reimbursement of the rightful copyright owners of your profit from the past print runs, as outlined in my previous letter.

Yours sincerely,

Paul Kejik
Director