# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CASE NO. 3:16-cv-00695-GCM

| | | |
|---|---|---|
| BARONIUS PRESS, LTD., | ) | **DEFENDANT SAINT BENEDICT** |
| | ) | **PRESS, LLC'S ANSWER TO** |
| Plaintiff, | ) | **PLAINTIFF'S SECOND AMENDED** |
| | ) | **VERIFIED COMPLAINT** |
| v. | ) | |
| | ) | |
| SAINT BENEDICT PRESS LLC, | ) | |
| | ) | |
| Defendant. | ) | |

Defendant Saint Benedict Press, LLC ("Saint Benedict Press"), answering the Second Amended Verified Complaint, alleges and says:

## **FIRST DEFENSE**

Answering the correspondingly numbered allegations of Plaintiff's Second Amended Verified Complaint, Defendant states as follows:

1.      Answering paragraph 1, it is admitted that Plaintiff's Second Amended Verified Complaint asserts claims against Defendant for violation of 17 U.S.C. §101 *et seq.*, 17 U.S.C. 1202 *et seq.* and N.C. Gen. Stat. §75-1.1. It is further admitted that the Second Amended Verified Complaint is in writing, the contents of which speaks for itself. Except as admitted, paragraph 1 is denied.

2.      Paragraph 2 is denied.

3.      Paragraph 3 is denied.

4.      Paragraph 4 is denied.

5.      Answering paragraph 5, it is admitted that the Second Amended Verified Complaint is in writing and speaks for itself. Except as admitted, paragraph 5 is denied.

6.      Paragraph 6 is admitted upon information and belief.

7.      Answering paragraph 7, it is admitted that Defendant Saint Benedict Press, LLC is a North Carolina limited liability company with its principal place of business located at 13315 Carowinds Blvd., Suite Q, Charlotte, North Carolina 28273 and that it does business as TAN Books. It is further admitted that Defendant provides goods to customers throughout North Carolina, including counties located within the Western District of North Carolina and that, like other publishers, it has used and uses various imprints such as "TAN Books" when conducting business. Except as admitted, paragraph 7 is denied.

8.      Paragraph 8 is admitted.

9.      Answering paragraph 9, it is admitted that Defendant provides goods to customers throughout North Carolina, including counties located within the Western District of North Carolina. Except as admitted, paragraph 9 is denied.

10.     Paragraph 10 is a legal conclusion for which no response is required. To the extent a response is required, paragraph 10 is admitted upon information and belief.

11.     Answering paragraph 11, Defendant admits that it does business in the state of North Carolina and in this judicial district. Except as admitted, paragraph 11 is denied.

12.     Answering paragraph 12, Defendant admits that it does business in this judicial district and that venue is proper. Except as admitted, paragraph 12 is denied.

13.     Answering paragraph 13, it is admitted that Plaintiff Baronius Press is a publisher of traditional Catholic books and bibles. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 13, and those allegations are therefore denied.

14.     Answering paragraph 14, it is admitted that Defendant Saint Benedict Press was founded in 2006, that its parent company is Good Will Publishers, Inc. and that Defendant publishes bibles as well as Catholic classics repackaged to appeal to a wider audience of readers. It is further admitted that Exhibit 6 is in writing, the content of which speaks for itself. Except as admitted, paragraph 14 is denied.

15.     Answering paragraph 15, it is admitted that Defendant, like numerous other publishers, publishes under various imprints including: TAN Books, Catholic Courses, Catholic Scripture Study International, Confraternity of the Precious Blood, Neumann Press and Basilica Press. It is further admitted that Defendant's parent company, Good Will Publishers, Inc., owns Ambassador Associates, Inc., Ambassador Services, Inc. and United Memorial Bible Services, Inc. It is further admitted that Defendant advertises and offers for sale and sells books through multiple websites and social media platforms including www.tanbooks.com and www.saintbenedictpress.com and certain retailers. It is further admitted that Defendant offers to sell and sells electronic versions (eBooks) of a number of titles through Kindle and through a third party eBook distributor and that Defendant's webpage contains instructions on downloading eBooks at https://www.tanbooks.com/index.php/ebook-instructions/. It is further admitted that Defendant sells numerous books and the number of books sold fluctuates over time. It is further admitted that in 2008 Defendant purchased certain assets of TAN Books and Publishers, Inc. and that after the acquisition, Defendant used, and continues to use, the imprint "TAN Books." Defendant admits, upon information and belief, that TAN Books and Publishers, Inc. entered bankruptcy on two occasions, once in 1996 and again in 2005. Defendant further admits, upon information and belief, that TAN Books and Publishers, Inc. and its former owner, Thomas A. Nelson, were investigated by the Securities and Exchange Commission in the 1990's – long before

3

Defendant purchased the assets of TAN Books and Publishers, Inc. The contents in the table titled "Plaintiff's Copyright Rights as Exclusive Owner or Exclusive Licensee" ("Table 1") is denied, upon information and belief.  Except as admitted, paragraph 15, including footnote 1, is denied.

16.     Paragraph 16 is denied.

17.     Answering paragraph 17, paragraph 17 does not contain any factual allegations requiring a response.  To the extent a response to paragraph 17 is required, paragraph 17, including Table 1 referenced in paragraph 17, is denied.

18.     Answering paragraph 18, paragraph 18 does not contain any factual allegations requiring a response.  To the extent a response to paragraph 18 is required, paragraph 18, including Table 1 referenced in paragraph 18, is denied.

19.     Answering paragraph 19, it is admitted, upon information and belief, that the works contained in Table 1 are original works of authorship.  It is further admitted that the United States is a signatory to the Berne Convention. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 19, and those allegations are therefore denied.

20.     Answering paragraph 20, it is admitted, upon information and belief, that the works contained in Table 1 are original works of authorship.  Except as admitted, paragraph 20 is denied.

21.     Answering paragraph 21, Defendant admits that the United States is a signatory to the Berne Convention. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 21, and those allegations are therefore denied.

22.     Answering paragraph 22, Defendant admits, upon information and belief, that Ludwig Ott is the author of the German-language work entitled *Grundriss der katholischen*

*Dogmatik* and that this title was first published in Germany in 1952. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 22, and those allegations are therefore denied.

23.     Answering paragraph 23, it is admitted that *Grundriss der katholischen Dogmatik* was in the public domain in the United States. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 23, and those allegations are therefore denied.

24.     Defendant does not have knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 24, and those allegations are therefore denied.

25.     Defendant does not have knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 25, and those allegations are therefore denied.

26.     Answering paragraph 26, it is admitted that English-language translation of *Grundriss der katholischen Dogmatik* titled *Fundamentals of Catholic Dogma* ("*Fundamentals*") was authored by Dr. Patrick Lynch, was published in Ireland in 1955 and was in the public domain in the United States. Except as admitted, paragraph 26 is denied.

27.     Answering paragraph 27, it is admitted that *Fundamentals* contained grammatical errors and that some individuals have claimed that it contained theological and/or historical errors. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 27, and those allegations are therefore denied.

28.     Answering paragraph 28, it is admitted, upon information and belief, that Plaintiff filed an application for copyright registration for *Grundriss der katholischen Dogmatik*. It is further admitted that Exhibit 1 is in writing, the contents of which speaks for itself. Defendant

5

does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 28, and those allegations are therefore denied.

29.    Answering paragraph 29, it is admitted that Plaintiff filed an application for copyright registration for *Fundamentals of Catholic Dogma* that contained false, or inaccurate, or unverified information and that a registration was subsequently issued with the Registration No. TX-6-484-647 despite the false, inaccurate and/or unverified information. It is further admitted that Exhibit 2 is in writing, the contents of which speaks for itself.  Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 29, and those allegations are therefore denied.

30.    Answering paragraph 30, it is admitted that Defendant, through its predecessor in interest, TAN Books and Publishers, Inc., began publishing *Fundamentals of Catholic Dogma* in 1974. Except as admitted, paragraph 30 is denied.

31.    Paragraph 31 is denied.

32.    Answering paragraph 32, it is admitted that at some point during the 44 years that Defendant, or its predecessor in interest, has published *Fundamentals*, Defendant became aware of the fact that *Fundamentals* contained grammatical and/or translation errors and that some individuals have stated that it contained doctrinal errors. It is further admitted that Defendant learned of grammatical and/or translation errors prior to 2011. Except as admitted, paragraph 32 is denied.

33.    Answering paragraph 33, it is admitted that prior to 2011 Defendant decided to re-typeset *Fundamentals* and publish *Fundamentals* in hardback. It is further admitted that as part of Defendant's transition from the sale of paperback to the hardback version of *Fundamentals*, Defendant posted on its website that *Fundamentals* was "temporarily out of stock" for a trivial

6

period of time. It is further admitted that in conjunction with Defendant's work on the new typesetting, Defendant intended to make some minor corrections to *Fundamentals*. It is further admitted that in conjunction with Defendant's work on the new typesetting, Defendant had discussions with Patrick Madrid regarding Mr. Madrid drafting a preface to the newly typeset work. It is further admitted that after Mr. Madrid agreed to draft the preface, Defendant advertised on its website a corrected typeset work with a preface by Patrick Madrid. It is further admitted that subsequent to advertising the new typeset work on its website, Defendant made the decision not to have Mr. Madrid draft a preface and not to publish the new typesetting and removed the advertisement from its website. It is further admitted that Defendant took pre-orders from customers for *Fundamentals*. It is further admitted that Exhibit 5 is in writing, the contents of which speak for itself. Except as admitted, paragraph 33 is denied.

34. Answering paragraph 34, it is admitted that in March of 2013 Defendant received a letter from Plaintiff claiming rights to *Fundamentals*. It is further admitted that Plaintiff has contacted Defendant claiming that it owned rights in other works published by Defendant, when Plaintiff did not in fact have any rights in the works. It is further admitted that after receiving letters from Plaintiff claiming rights to *Fundamentals,* Defendant investigated Plaintiff's claims and determined that Defendant had the right to continue publishing *Fundamentals*. It is further admitted that Exhibit 4 is in writing, the contents of which speak for itself. Except as admitted, paragraph 34 is denied.

35. Answering paragraph 35, it is admitted that in 2013 Defendant received two documents titled "Notice of Intent to Enforce (NIE) a Copyright Restored Under the Uruguay Round Agreements Act (URAA)," one regarding *Fundamentals* and one regarding *Grundriss der katholischen Dogmatik*. Defendant further admits that Exhibit 3 is in writing, the contents of which

speak for itself. Defendant specifically denies Plaintiff's statements concerning the applicable law contained in footnote 2 of the Second Amended Verified Complaint in part because Plaintiff's statements in footnote 2 fail to discuss sections of 104A of the Copyright Act that are relevant and material to Plaintiff's claims and Defendant's defenses. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 35, and those allegations, including those contained in footnote 2, are denied.

36. Answering paragraph 36, it is admitted that after Defendant acquired certain assets of TAN Books and Publishers, Inc. out of bankruptcy, Defendant conducted its own investigation, including contacting third parties to ascertain the history of the works it acquired as part of the asset purchase and that its inquiries included *Fundamentals*. It is also admitted that this investigation took place both prior to, and after, Plaintiff contacted Defendant claiming rights to *Fundamentals*. It is further admitted that as part of Defendant's investigation, Defendant sought new contracts from third parties. It is further admitted that after Plaintiff alleged rights to *Fundamentals*, Defendant contacted third parties to investigate Plaintiff's claims. Except as admitted, paragraph 36 is denied.

37. Answering paragraph 37, it is admitted that after Defendant conducted its due diligence, investigated Plaintiff's allegations, and consulted with legal counsel, Defendant determined that it had and has the right to continue to publish *Fundamentals* and did so. Except as admitted, paragraph 37 is denied.

38. Answering paragraph 38, it is admitted that after Defendant decided not to publish the new typesetting with the preface by Patrick Madrid, Defendant removed all references to the new typesetting from its website. Defendant further admits that after it decided not to publish the new typesetting, Defendant decided to publish and sell the same edition of *Fundamentals* that

Defendant, or its predecessor in interest, had published since 1974 but in hardback. It is further admitted that Exhibit 5 is in writing, the contents of which speak for itself. Except as admitted, paragraph 38 is denied.

39.     Defendant does not have knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 39, and those allegations are therefore denied.

40.     Answering paragraph 40, it is admitted that after Defendant decided not to publish the new typesetting with the preface by Patrick Madrid, Defendant removed all references to the new typesetting from its website. Defendant further admits that after it decided not to publish the new typesetting, Defendant decided to publish the same edition of *Fundamentals* that Defendant, or its predecessor in interest, had published since 1974 but did so in hardback form. Defendant further admits that Defendant, through its predecessor in interest, has advertised other works for sale in the back of *Fundamentals* at various times throughout the 44 years that Defendant or its predecessor in interest has sold *Fundamentals*. It is further admitted that prior to publishing the hardback version of *Fundamentals,* Defendant added to the back of the book six pages of advertisements as is common in the publishing industry. It is further admitted that Exhibit 7 is in writing, the contents of which speaks for itself. Except as admitted, paragraph 40 is denied.

41.     Answering paragraph 41, it is admitted that Defendant, or its predecessor in interest, has published the same version of *Fundamentals* for over 44 years and that the version that Defendant has published over the last 44 years contains grammatical and/or translational errors and that individuals have claimed that it contains theological errors. Except as admitted, paragraph 41 is denied.

42.     Answering paragraph 42, it is admitted that Plaintiff submitted applications to the U.S. Copyright office containing errors and/or unverified information and that the U.S. Copyright

office issued registrations despite the errors and /or unverified information. Except as admitted, paragraph 42 is denied.

43.     Answering paragraph 43, it is admitted that the information on the copyright page of *Fundamentals* printed by Defendant was created digitally using computer software prior to Defendant's 2014 printing of *Fundamentals*. It is further admitted that Exhibit 8 is in writing, the contents of which speak for itself. Except as admitted, paragraph 43 is denied.

44.     Paragraph 44 is denied.

45.     Answering paragraph 45, it is admitted that Plaintiff did not give Defendant the right to "publish, revise, alter, advertise, distribute or sell Fundamentals." It is further admitted that Defendant has a reasonable good faith belief that it has the legal right to publish and sell *Fundamentals* without Plaintiff's permission. Except as admitted, paragraph 45 is denied.

46.     Answering paragraph 46, it is admitted that Defendant, or its predecessor in interest, has published and sold *Fundamentals* for the past 44 years and that it continues to sell *Fundamentals* and that it does so under the reasonable good faith belief that it has the legal right to do so. It is further admitted that Exhibit 5 is in writing, the contents of which speaks for itself. Except as admitted, paragraph 46 is denied.

47.     Answering paragraph 47, it is admitted that Defendant has sold *Fundamentals* to customers located in other countries including the United Kingdom, Australia, Philippines and Canada. It is further admitted that Defendant limited its sales to the United States in an effort to appease Plaintiff in hopes that Plaintiff and Defendant could resolve their differences.  It is further admitted that Defendant believes in good faith that it has the right to sell *Fundamentals* in countries other than the United States. It is further admitted that Exhibits 31 and 5.3 are in writing, the contents of which speak for themselves. Except as admitted, paragraph 47 is denied.

48.     Paragraph 48 is denied.

49.     Answering paragraph 49, it is admitted that over the last 44 years, Defendant, or its predecessor in interest, has sold over 5,545 copies of *Fundamentals*. It is further admitted that Defendant has received and continues to receive revenues from its sales of *Fundamentals*. Except as admitted, paragraph 49 is denied.

50.     Answering paragraph 50, it is admitted that Defendant has communicated with members of the public concerning *Fundamentals*. It is further admitted that Defendant believes in good faith that it and/or its predecessor has and has had the right, to publish *Fundamentals* since 1974. It is further admitted that one of Defendant's customer service representatives mistakenly informed members of the public inquiring as to the status of *Fundamentals* that *Fundamentals* "had been discontinued" and that Plaintiff was not printing *Fundamentals* anymore and that such statements were inconsistent with Defendant's explicit instructions to its customer service employees. It is further admitted that Exhibit 32 is in writing, the contents of which speaks for itself. Except as admitted, paragraph 50 is denied.

51.     Answering paragraph 51, it is admitted upon information and belief that the book titled *This Tremendous Lover* was published in 1946 and authored by Dom Eugene Boylan, O.C.R. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations asserted in paragraph 51, and those allegations are therefore denied.

52.     Answering paragraph 52, it is admitted, upon information and belief, that *This Tremendous Lover* was in the public domain in the United States. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 52, and those allegations are therefore denied.

53.     Defendant does not have knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 53, and those allegations are therefore denied.

54.     Answering paragraph 54, it is admitted that *This Tremendous Lover* is a highly regarded classic Catholic work. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 54, and those allegations are therefore denied.

55.     Answering paragraph 55, it is admitted that Defendant published *This Tremendous Lover* from August of 2013 until September of 2016 and that prior to and during Defendant's publication of *This Tremendous Lover* Defendant believed in good faith that *This Tremendous Lover* was still in the public domain in the United States. It is also admitted that Defendant did not receive authorization from anyone prior to publishing *This Tremendous Lover* because Defendant reasonably believed that the title was still in the public domain and that no authorization was necessary. Except as admitted, paragraph 55 is denied.

56.     Answering paragraph 56, it is admitted that Defendant published *This Tremendous Lover* from August of 2013 until September of 2016 and that prior to and during Defendant's publication of *This Tremendous Lover* Defendant believed in good faith that *This Tremendous Lover* was still in the public domain in the United States. It is also admitted that Defendant did not receive authorization from anyone prior to publishing *This Tremendous Lover* because Defendant reasonably believed that it was still in the public domain and that no authorization was necessary. It is further admitted that Defendant added notes and introductory essays to *This Tremendous Lover* prior to its publication. Except as admitted, paragraph 56 is denied.

57.     Answering paragraph 57, it is admitted that the original text of *This Tremendous Lover* contained several citations to other works. It is further admitted that Defendant added notes,

citations and two pages of advertisements to its publication of *This Tremendous Lover*. It is further admitted that, as is common in the publishing industry, Defendant added advertisements to the back of its printing of *This Tremendous Lover*. It is further admitted that at the time Defendant began publishing *This Tremendous Lover*, Plaintiff did not have any rights (license or otherwise) to *This Tremendous Lover*. It is also admitted that Defendant did not receive authorization from anyone prior to publishing *This Tremendous Lover* because Defendant reasonably believed in good faith that it was still in the public domain and that no authorization was necessary. It is further admitted that Exhibit 9 is in writing, the contents of which speaks for itself. Except as admitted, paragraph 57 is denied.

58.    Answering paragraph 58, it is admitted that Exhibit 10 is in writing, the contents of which speaks for itself. Except as admitted, paragraph 58 is denied.

59.    Paragraph 59 is denied.

60.    Answering paragraph 60, it is admitted that Defendant received a letter from Plaintiff titled "Cease and Desist Demand" regarding Defendant's publication of *This Tremendous Lover*. It is further admitted that Exhibit 11 is in writing, the contents of which speaks for itself. Except as admitted, paragraph 60 is denied.

61.    Answering paragraph 61, it is admitted that after Defendant received the Cease and Desist Demand letter and investigated Plaintiff's allegations regarding Plaintiff's claims to *This Tremendous Lover*, Defendant stopped selling *This Tremendous Lover*. It is admitted that Defendant sold *This Tremendous Lover* in countries other than the United States including Canada and the Philippines. It is further admitted that Exhibits 12 and 13 are in writing, the contents of which speak for themselves. Except as admitted, paragraph 61, including footnote 3, is denied.

62.     Answering paragraph 62, it is admitted that Defendant derived revenue from its sales of *This Tremendous Lover*. Defendant denies that it is still selling *This Tremendous Lover*. Except as admitted, paragraph 62 is denied.

63.     Answering paragraph 63, it is admitted, upon information and belief, that *Le curé d'Ars* was authored by Abbé Francis Trochu. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 63, and those allegations are therefore denied.

64.     Answering paragraph 64, it is admitted, upon information and belief, that *Le curé d'Ars* was in the public domain in the United States. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 64, and those allegations are therefore denied.

65.     Answering paragraph 65, it is admitted, upon information and belief, that an English translation of *Le curé d'Ars* titled *The Curé D'Ars* was authored by Dom Ernest Graf and first published in 1927. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 65, and those allegations are therefore denied.

66.     Defendant does not have knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 66, and those allegations are therefore denied.

67.     Defendant does not have knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 67, and those allegations are therefore denied.

68.     Answering paragraph 68, it is admitted that Defendant, through its predecessor in interest, has been publishing *The Curé D'Ars* since 1977. It is further admitted that Defendant, or its predecessor in interest, re-typeset *The Curé D'Ars* in 2007. It is further admitted that Defendant

added pages of advertisements to the back of its publication of *The Curé D'Ars* as is common in the publishing industry. It is further admitted that Exhibit 14 is in writing, the contents of which speaks for itself. Except as admitted, paragraph 68, including footnote 4, is denied.

69.     Answering paragraph 69, it is admitted that in or about August of 2016, Defendant received two documents titled "Notice of Intent to Enforce (NIE) a Copyright Restored Under the Uruguay Round Agreements Act (URAA)" regarding *The Curé D'Ars* and *Le curé d'Ars*. It is further admitted that Exhibit 15 is in writing, the contents of which speak for itself. Except as admitted, paragraph 69 is denied.

70.     Answering paragraph 70, it is admitted that Defendant entered into an agreement with the entity it believed to be the rights holder for rights to publish *The Curé D'Ars.* It is further admitted that Defendant is continuing to sell *The Curé D'*Ars. It is further admitted that Defendant has sold *The Curé D'Ars* in countries other than the United States including Canada and the Philippines. It is further admitted that Exhibit 16 is in writing, the contents of which speak for itself. Except as admitted, paragraph 70 including footnote 5, is denied.

71.     Answering paragraph 71, paragraph 71 is a legal conclusion for which no response is required. To the extent a response is required, paragraph 71 is denied.

72.     Answering paragraph 72, it is admitted that the copyright page of Defendant's reprint of *The Curé D'Ars* was created digitally using computer software when Defendant retypeset *The Curé D'Ars*. It is further admitted that Exhibit 17 is in writing, the contents of which speaks for itself. Except as admitted, paragraph 72 is denied.

73.     Paragraph 73 is denied.

74.     Paragraph 74 is denied.

75.     Answering paragraph 75, it is admitted upon information and belief that the work titled *The Catholic Encyclopaedic Dictionary* was edited by David Attwater and first published in 1931 in the United Kingdom. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 75, and those allegations are therefore denied.

76.     Defendant does not have knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 76, and those allegations are therefore denied.

77.     Defendant does not have knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 77, and those allegations are therefore denied.

78.     Defendant does not have knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 78, and those allegations are therefore denied.

79.     Answering paragraph 79, it is admitted that Defendant, or its predecessor in interst, began publishing *A Catholic Dictionary* in 1997. Except as admitted, paragraph 79 is denied.

80.     Answering paragraph 80, it is admitted that Defendant received a letter in or about September of 2016 from Plaintiff entitled "Cease and Desist Demand" regarding *The Catholic Encyclopaedic Dictionary*. It is further admitted that Exhibit 18 is in writing, the contents of which speaks for itself.  Except as admitted, paragraph 80 is denied.

81.     Answering paragraph 81, it is admitted that Defendant received a written and implied license to publish *A Catholic Encyclopaedic Dictionary* from the entity Defendant believed was the rights holder. It is further admitted that Defendant stopped publishing *A Catholic Dictionary*. Defendant further admits that Exhibits 12 and 19 are in writing, the contents of which speak for themselves.  It is further admitted that Defendant sold *A Catholic Dictionary* in other countries including Canada. Except as admitted, paragraph 81, including footnote 6, is denied.

82. Answering paragraph 82, it is admitted that Defendant received revenues from its sales of *A Catholic Dictionary*. Except as admitted, paragraph 82 is denied.

83. Answering paragraph 83, it is admitted, upon information and belief, that Rt. Rev. Dom Vitalis Lehodey, O.C.R. is the author of *La Saint Abandon.* Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 83, and those allegations are therefore denied.

84. Answering paragraph 84, it is admitted, upon information and belief, that *La Saint Abandon* was translated into English in 1934 by Rev. Ailbe J. Luddy, O.Cist. of Mount Melleray Abbey, Ireland and titled *Holy Abandonment* ("*Holy Abandonment*"). Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 84, and those allegations are therefore denied.

85. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 85, and those allegations are therefore denied.

86. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 86, and those allegations are therefore denied.

87. Answering paragraph 87, it is admitted that Defendant, or its predecessor in interest, began publishing *Holy Abandonment* in 2004 after receiving a license to do so from Mount Melleray Abbey. It is further admitted that in or about August of 2016, Defendant received a document titled "Cease and Desist Demand" from Plaintiff regarding the work *Holy Abandonment*. It is further admitted that Defendant, or its predecessor in interest, sold *Holy Abandonment* in countries outside of the United States including Canada. It is further admitted that Exhibit 20 is in writing, the contents of which speaks for itself. Except as admitted, paragraph 87 is denied.

88. Answering paragraph 88, it is admitted Defendant stopped publishing and selling *Holy Abandonment*. It is further admitted that Exhibits 12 and 21 are in writing, the contents of which speak for themselves. It is further admitted that Defendant has sold copies of *Holy Abandonment* in countries other than the United States including in Canada. Except as admitted, paragraph 88, including footnote 7, is denied.

89. Answering paragraph 89, it is admitted that Defendant received revenues from its sales of *Holy Abandonment*. Except as admitted, paragraph 89 is denied.

90. Answering paragraph 90, it is admitted, upon information and belief, that Fr. Reginald Garrigou-Lagrange, O.P. is the author of the work titled *De unione sacerdotis cum Christo sacerdote et victima* first published in 1948. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 90, and those allegations are therefore denied.

91. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 91, and those allegations are therefore denied.

92. Answering paragraph 92, it is admitted, upon information and belief, that the English translation of *De unione sacerdotis cum Christo sacerdote et victim* is *The Priest in Union with Christ* and that it was authored by Rev. G. W. Shelton, S.T.L. and published in 1951. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 92, and those allegations are therefore denied.

93. Answering paragraph 93, Defendant does not have knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 93, and those allegations are therefore denied.

94.     Answering paragraph 94, it is admitted that Defendant, or its predecessor in interest, entered into an agreement with Province Dominicaine De France regarding rights to the publication of *The Priest in Union with Christ* and that Defendant, or it is predecessor in interest, began publishing *The Priest in Union with Christ* thereafter. It is denied that Defendant began publishing *The Priest in Union with Christ* in 2002. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 94, and those allegations, including the allegations contained in footnote 8, are therefore denied.

95.     Answering paragraph 95, it is admitted, upon information and belief, that Plaintiff encouraged Dominican Province/ Les editions du Cerf to send Defendant a document entitled "Cease and Desist Demand" regarding *The Priest in Union with Christ*.  It is further admitted that Defendant received the "Cease and Desist Demand" letter in September of 2017 and the letter proposed "a formal agreement to be made incorporating the following: 1) TAN Books will cease publishing all works by Fr. Reginald Garrigou-Lagrange and will remove all print and digital copies from sale; 2) TAN Books will renounce all rights it may have in the works by Fr. Reginald Garrigou-Lagrange whether as a licensee, reliance party or in any other form; 3) Dominican Province/Editions du Cerf will renounce any claims they may have against TAN Books." It is further admitted that Defendant agreed to Dominican Province/ Les editions du Cerf's proposal in writing on November 7, 2017. Except as admitted, paragraph 95 is denied.

96.     Answering paragraph 96, it is admitted that in accordance with Defendant's November 7, 2017 letter, Defendant ceased publishing and selling all Fr. Reginald Garrigou-Lagrange titles, including *The Priest in Union with Christ* as soon as practical and notified Amazon to cease selling the work. It is further admitted that the agreement between Defendant and Dominican Province/ Les editions du Cerf did not contain a clause asserting that time is of the

essence. It is further admitted that Exhibits 22 and 23 are in writing, the contents of which speak for themselves. Except as admitted, paragraph 96 is denied.

97. Answering paragraph 97, it is admitted that Defendant received revenues from its sales of *The Priest in Union with Christ*. Except as admitted, paragraph 97 is denied.

98. Answering paragraph 98, it is admitted, upon information and belief, that *Perfection chriétienne* was authored by Fr. Reginald Garrigou-Lagrange, O.P., first published in 1923 and that Province Dominicaine De France has or had rights to the work. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 98, and those allegations are therefore denied.

99. Answering paragraph 99, it is admitted, upon information and belief, that *Perfection chriétienne* was in the public domain in the United States. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 99, and those allegations are therefore denied.

100. Answering paragraph 100, it is admitted upon information and belief, that the English translation of *Perfection chriétienne* was titled *Christian Perfection and Contemplation, according to St. Thomas Aquinas and St. John of the Cross* ("*Christian Perfection*"). It is further admitted upon information and belief, that *Perfection chriétienne* was first translated into English by Sister M. Timothea Doyle, O.P. in 1937. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 100, and those allegations are therefore denied.

101. Answering paragraph 101, it is admitted upon information and belief, that *Christian Perfection* fell into the public domain in the United States. Defendant does not have knowledge

or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 101, and those allegations are therefore denied.

102.    Answering paragraph 102, it is admitted that Defendant, or its predecessor in interest, began publishing *Christian Perfection* in 2003 pursuant to an agreement with Province Dominicaine de France and that the agreement provided Defendant with publishing rights. It is denied that Defendant and Province Dominicaine de France never had a formalized agreement and it is denied that Defendant never made any payment to Province Dominicaine de France for rights to publish *Christian Perfection*. Except as admitted, paragraph 102 is denied.

103.    Paragraph 103 is admitted.

104.    Answering paragraph 104, it is admitted that in accordance with Defendant's November 7, 2017 letter, Defendant ceased publishing and selling all Fr. Reginald Garrigou-Lagrange titles, including *The Christian Perfection* as soon as practical and notified its third party eBook distributor to cease selling the work. It is further admitted that the agreement between Dominican Province/ Les editions du Cerf and Defendant did not contain a clause asserting that time is of the essence. It is further admitted that Defendant sold *The Christian Perfection* in other countries including Canada. It is further admitted that Exhibits 12 and 24 are in writing, the contents of which speak for themselves. Except as admitted, paragraph 104, including footnote 9, is denied.

105.    Answering paragraph 105, it is admitted that Defendant received revenues from its sales of *Christian Perfection*. Except as admitted, paragraph 105 is denied.

106.    Answering paragraph 106, it is admitted upon information and belief, that *Le Sauveur et son amour pour nous* is a work of original authorship fixed in a tangible medium of expression. It is further admitted, upon information and belief, that *Le Sauveur et son amour pour*

*nous* was authored by Fr. Reginald Garrigou-Lagrange and first published in 1933. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 106, and those allegations are therefore denied.

107. Answering paragraph 107, it is admitted, upon information and belief, that *Le Sauveur et son amour pour nous* entered the public domain in the United States. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 107, and those allegations are therefore denied.

108. Answering paragraph 108, it is admitted, upon information and belief, that the initial English translation was authored by A. Bouchard, titled *Our Saviour and His Love for Us* also known as *Our Savior and His Love for Us* ("*Our Saviour*") and first published in 1951. It is further admitted, upon information and belief, that *Our Saviour* entered the public domain in the United States. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 108, and those allegations are therefore denied.

109. Answering paragraph 109, it is admitted that Defendant paid a onetime fee to Les Editions du Cerf in the amount of $300.00 for rights to publish *Our Saviour.* It is further admitted that Defendant published *Our Saviour* in eBook format. It is further admitted that at the time Defendant entered into the agreement with Les Editions du Cerf, eBooks were not readily available to the consuming public and were not addressed by the parties. Except as admitted, paragraph 109 is denied.

110. Paragraph 110 is admitted.

111. Answering paragraph 111, it is admitted that in accordance with Defendant's November 7, 2017 letter, Defendant ceased publishing and selling all Fr. Reginald Garrigou-Lagrange titles, including *Our Saviour,* as soon as practical and notified its third party eBook

distributor and Amazon to cease selling the work. It is further admitted that the November 7, 2017 agreement between Defendant and Dominican Province/ Les editions du Cerf did not contain a clause asserting that time is of the essence. It is further admitted that Exhibits 12, 22 and 25 are in writing, the contents of which speak for themselves. Except as admitted, paragraph 111, including footnote 10, is denied.

112. Answering paragraph 112, it is admitted that Defendant received revenues from its sales of *Our Saviour*. Except as admitted, paragraph 112 is denied.

113. Answering paragraph 113, it is admitted, upon information and belief, that *La Providence et la confiance en Dieu* was authored by Fr. Reginald Garrigou-Lagrange, O.P and first published in 1932. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 113, and those allegations are therefore denied.

114. Answering paragraph 114, it is admitted, upon information and belief, that *La Providence et la confiance en Dieu* entered into the public domain in the United States. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 114, and those allegations are therefore denied.

115. Answering paragraph 115, it is admitted upon information and belief, that the initial English translation of *La Providence et la confiance en Dieu* was authored by Dom Bede Rose, O.S.B., D.D., and entitled *Providence*. It is further admitted, upon information and belief, that *Providence* was first published in 1937. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 115, and those allegations are therefore denied.

116. Answering paragraph 116, it is admitted, upon information and belief, that *Providence* entered into the public domain in the United States. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 116 and those allegations are therefore denied.

117. Answering paragraph 117, it is admitted that in or about 1998 Defendant, or its predecessor in interest, entered into an agreement with Province Dominicaine de France for rights to publish *Providence* in exchange for the payment of a onetime fee in the amount of $300.00. It is further admitted that Defendant paid the fee to Province Dominicaine de France as agreed. It is admitted that Defendant published *Providence* in eBook format. It is further admitted that at the time Defendant entered into the agreement with Province Dominicaine de Franc, eBooks were not readily available to the consuming public and were not addressed by the parties. Except as admitted, paragraph 117 is denied.

118. Paragraph 118 is admitted.

119. Answering paragraph 119, it is admitted that in accordance with Defendant's November 7, 2017 letter, Defendant ceased publishing and selling all Fr. Reginald Garrigou-Lagrange titles, including *Providence* as soon as practical and notified its third party eBook distributor and Amazon to cease selling the work. It is further admitted that the agreement between Dominican Province/ Les editions du Cerf and Defendant did not contain a clause asserting that time is of the essence. It is further admitted that Exhibits 12, 22 and 26 are in writing, the contents of which speak for themselves. Except as admitted, paragraph 119, including footnote 11, is denied.

120. Answering paragraph 120, it is admitted that Defendant has received revenues from its sales of *Providence*. Except as admitted, paragraph 120 is denied.

121.    Answering paragraph 121, it is admitted upon information and belief, that Fr. Reginald Garrigou-Lagrange published a book titled *L'éternelle vie et la profondeur de l'âme* ("*L'éternelle*"). Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 121, and those allegations are therefore denied.

122.    Answering paragraph 122, it is admitted, upon information and belief, that *L'éternelle* entered the public domain in the United States.  Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 122, and those allegations are therefore denied.

123.    Answering paragraph 123, it is admitted, upon information and belief, that the initial English translation of *L'éternelle* was titled *Life Everlasting* and was first published in 1952. It is further admitted that Rev. Patrick Cummins, O.S.B. was the author of *Life Everlasting*. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 123, and those allegations are therefore denied.

124.    Answering paragraph 124, it is admitted, upon information and belief, that *Life Everlasting* entered the public domain in the United States.  Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 124, and those allegations are therefore denied.

125.    Paragraph 125 is denied.

126.    Answering paragraph 126, it is denied, upon information and belief, that the book titled *Life Everlasting* published by Defendant is a translation of *L' altra vita e la profondità dell'anima.* It is admitted, upon information and belief, that *Life Everlasting* was included in the

2017 agreement with Province Dominicaine de France. Except as admitted, paragraph 126 is denied.

127.    Answering paragraph 127, it is admitted that in accordance with Defendant's November 7, 2017 letter, Defendant ceased publishing and selling all Fr. Reginald Garrigou-Lagrange titles, including *Life Everlasting,* as soon as practical and notified its third party eBook distributor and Amazon to cease selling the work.  It is further admitted that the agreement between Defendant and Dominican Province/ Les editions du Cerf did not contain a clause asserting that time is of the essence. It is further admitted that Defendant sold *Life Everlasting* in other countries including Canada. It is further admitted that Exhibits 12, 22 and 27 are in writing, the contents of which speak for themselves. Except as admitted, paragraph 127, including footnote 12, is denied.

128.    Answering paragraph 128, it is admitted that Defendant received revenues from its sales of *Life Everlasting*.  Except as admitted, paragraph 128 is denied.

129.    Defendant does not have knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 129, and those allegations are therefore denied.

130.    Answering paragraph 130, it is admitted, upon information and belief, that the book titled *La mère du Sauveur* entered the public domain in the United States. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 130, and those allegations are therefore denied.

131.    Defendant does not have knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 131, and those allegations are therefore denied.

132.    Answering paragraph 132, it is admitted, upon information and belief, that F. Bernard J. Kelly, C.S.S.Sp, D.D. translated a book titled *The Mother of the Saviour and Our Interior Life* ("*The Mother of the Saviour*").  It is denied, upon information and belief, that *The*

*Mother of the Saviour* was first published in 1949. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 132, and those allegations are therefore denied.

133. Answering 133, it is admitted, upon information and belief, that *The Mother of the Saviour* entered into the public domain in the United States. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 133, and those allegations are therefore denied.

134. Answering paragraph 134 it is admitted, upon information and belief, that Defendant, or its predecessor in interest, began publishing *The Mother of the Saviour* in 1993. Except as admitted, paragraph 134 is denied.

135. Paragraph 135 is admitted.

136. Answering paragraph 136, it is admitted that in accordance with Defendant's November 7, 2017 letter, Defendant ceased publishing and selling all Fr. Reginald Garrigou-Lagrange titles, including *The Mother of the Saviour* as soon as practical and notified its third party eBook distributor to cease selling the work. It is further admitted that the agreement between Defendant and Dominican Province/ Les editions du Cerf did not contain a clause asserting that time is of the essence. It is further admitted that Defendant sold *The Mother of the Saviour* in other countries including Canada and the Philippines. It is further admitted that Exhibits 12 and 28 are in writing, the contents of which speak for themselves. Except as admitted, paragraph 136, including footnote 13, is denied.

137. Answering paragraph 137, it is admitted that Defendant received revenues from its sales of *The Mother of the Saviour.* Except as admitted, paragraph 137 is denied.

138.    Defendant does not have knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 138, and those allegations are therefore denied.

139.    Answering paragraph 139, it is admitted, upon information and belief, that the book titled *Les trois conversions* entered the public domain in the United States. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 139, and those allegations are therefore denied.

140.    Defendant does not have knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 140, and those allegations are therefore denied.

141.    Answering paragraph 141, it is admitted that Burns Oates & Washbourne Ltd published a book in English titled *The Three Ways of the Spiritual Life* (*"The Three Ways"*).  It is further admitted that the *The Three Ways* was first published in 1938. It is further admitted that Burns Oats & Washbourne Ltd. transferred rights to *The Three Ways* to Defendant, or its predecessor in interest, in 1977 and those rights were reaffirmed in 2005. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 141, and those allegations are therefore denied.

142.    Answering paragraph 142, it is admitted upon information and belief, that *The Three Ways* entered into the public domain in the United States.  Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 142, and those allegations are therefore denied.

143.    Answering paragraph 143, it is admitted that Defendant, or its predecessor in interest, began publishing *The Three Ways* in 1977. It is further admitted that Defendant changed the name of the *The Three Ways* from *The Three Ways of the Spiritual Life* to *The Three*

*Conversions in the Spiritual Life* ("*Three Conversions*"). It is denied that Defendant created a derivative. Except as admitted, paragraph 143 is denied.

144.    Paragraph 144 is admitted.

145.    Answering paragraph 145, it is admitted that in accordance with Defendant's November 7, 2017 letter, Defendant ceased publishing and selling all Fr. Reginald Garrigou-Lagrange titles, including *The Three Conversions* as soon as practical and notified its third party eBook distributor and Amazon to cease selling the work. It is further admitted that the agreement between Defendant and Dominican Province/ Les editions du Cerf did not contain a clause asserting that time is of the essence. It is further admitted that Defendant sold *The Three Conversions* in other countries including Canada. It is further admitted that Exhibits 12, 22 and 29 are in writing, the contents of which speak for themselves. Except as admitted, paragraph 145, including footnote 14, is denied.

146.    Answering paragraph 146, it is admitted that Defendant received revenues from its sales of *The Three Ways.*  Except as admitted, paragraph 146 is denied.

147.    Answering paragraph 147, it is admitted, upon information and belief, that Fr. Reginald Garrigou-Lagrange, O.P. authored a book titled *La prédestination des saints et la grâce* ("*La prédestination*"). It is further admitted, upon information and belief, that *La prédestination* was first published in 1936. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 147, and those allegations are therefore denied.

148.    Answering paragraph 148, it is admitted, upon information and belief, that *La prédestination* entered into the public domain in the United States. Defendant does not have

knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 148, and those allegations are therefore denied.

149.    Answering paragraph 149, it is admitted that an English translation of *La prédestination* was created by Dom Bede Rose, O.S.B., D.D., titled *Predestination* and first published in 1939. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 149, and those allegations are therefore denied.

150.    Answering paragraph 150, it is admitted, upon information and belief, that *Predestination* entered into the public domain in the United States. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 150, and those allegations are therefore denied.

151.    Answering paragraph 151, it is admitted that Defendant paid a one-time fee to Province Dominicaine de France in the amount of $300.00 for rights to publish *Predestination.* It is further admitted that Defendant published *Predestination* in an eBook format at some point after 1998. It is further admitted that at the time Defendant entered into the agreement with Province Dominicaine de France, eBooks were not readily available to the consuming public and were not addressed by the parties. Except as admitted, paragraph 151 is denied.

152.    Paragraph 152 is admitted.

153.    Answering paragraph 153, it is admitted that in accordance with Defendant's November 7, 2017 letter, Defendant ceased publishing and selling all Fr. Reginald Garrigou-Lagrange titles, including *Predestination* as soon as practical and notified its third party eBook distributor and Amazon to cease selling the work. It is further admitted that the agreement between Defendant and Dominican Province/ Les editions du Cerf did not contain a clause asserting that

time is of the essence. It is further admitted that Defendant sold *Predestination* in other countries. It is further admitted that Exhibits 12 and 30 are in writing, the contents of which speak for themselves. Except as admitted, paragraph 153, including footnote 15, is denied.

154.    Answering paragraph 154, it is admitted that Defendant received revenues from its sales of *Predestination.* Except as admitted, paragraph 154 is denied.

155.    Paragraph 155 is denied.

156.    Paragraph 156 is denied.

157.    Paragraph 157 is denied.

158.    Answering paragraph 158, Defendant re-pleads and incorporates herein by reference its responses to paragraphs 1 through 157 of the Second Amended Verified Complaint. Except as admitted, paragraph 158 is denied.

159.    Answering paragraph 159, it is admitted that the German work titled *Grundriss der katholischen Dogmatik* is an original work of authorship fixed in a tangible medium of expression. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 159, and those allegations are therefore denied.

160.    Paragraph 160 is denied.

161.    Answering paragraph 161, it is admitted that Defendant, through its own acts and the acts of its predecessor in interest, TAN Books and Publishers, Inc. has advertised, published, distributed or sold *Fundamentals of Catholic Dogma,* and taken other similar acts, since August of 1974. Except as admitted, paragraph 161 is denied.

162.    Answering paragraph 162, it is admitted that Defendant, through its own acts and the acts of its predecessor in interest, TAN Books and Publishers, Inc., has advertised, published, distributed or sold *Fundamentals of Catholic Dogma,* and taken other similar acts since August of

1974, without Plaintiff's consent or authorization, but with the reasonable good faith belief that Defendant was acting within its legal rights to do so. It is further admitted that Defendant sold *Fundamentals of Catholic Dogma* on its website and other websites. Except as admitted, paragraph 162 is denied.

163. Paragraph 163 is denied.

164. Answering paragraph 164, it is admitted that Defendant has received, and continues to receive, revenues from its sales of *Fundamentals of Catholic Dogma*. Except as admitted, paragraph 164 is denied.

165. Paragraph 165 is denied.

166. Paragraph 166 is denied.

167. Answering paragraph 167, Defendant re-pleads and incorporates herein by reference its responses to paragraphs 1 through 166 of the Second Amended Verified Complaint. Except as admitted, paragraph 167 is denied.

168. Answering paragraph 168, it is admitted that *This Tremendous Lover* is an original work of authorship fixed in a tangible medium of expression. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 168, and those allegations are therefore denied.

169. Paragraph 169 is admitted.

170. Paragraph 170 is admitted.

171. Answering paragraph 171, it is admitted that Defendant published *This Tremendous Lover* and that it did so with the reasonable good faith belief that *This Tremendous Lover* was in the public domain. It is further admitted that Defendant sold *This Tremendous Lover* on its website, and other websites. It is further admitted that as soon as Defendant discovered that *This*

*Tremendous Lover* was not in the public domain, Defendant ceased publishing and selling it. Except as admitted, paragraph 171 is denied.

172. Paragraph 172 is denied.

173. Answering paragraph 173, it is admitted that Defendant received revenues from its sales of *This Tremendous Lover*. Except as admitted, paragraph 173 is denied.

174. Paragraph 174 is denied.

175. Paragraph 175 is denied.

176. Answering paragraph 176, Defendant re-pleads and incorporates herein by reference its responses to paragraphs 1 through 175 of the Second Amended Verified Complaint. Except as admitted, paragraph 176 is denied.

177. Answering paragraph 177, it is admitted that Defendant, or its predecessor in interest, purchased rights to *The Curé D'Ars* from Burns Oates & Washbourne Ltd in 1977. It is further admitted that Burns Oates & Washbourne Ltd, through its predecessor in interest, The Continuum International Publishing Group, Inc., reaffirmed Defendant's rights in writing in 2005. It is further admitted that *The Curé D'Ars* is an original work of authorship and fixed in a tangible medium of expression. Except as admitted, paragraph 177 is denied.

178. Answering paragraph 178, it is admitted that Defendant purchased rights to *The Curé D'Ars* from Burns Oates & Washbourne Ltd in 1977. It is further admitted that Burns Oates & Washbourne Ltd, through its predecessor in interest The Continuum International Publishing Group, Inc., reaffirmed Defendant's rights in writing in 2005. Except as admitted, paragraph 178 is denied.

179. Paragraph 179 is admitted.

180.    Answering paragraph 180, it is admitted that Defendant, through its own acts and the acts of its predecessor in interest, TAN Books and Publishers, Inc., has advertised, published, distributed or sold *The Curé D'Ars* and taken other similar acts since 1977, without Plaintiff's consent or authorization, but with the reasonable good faith belief that Defendant was acting within its legal rights to do so. It is further admitted that Defendant has sold *The Curé D'Ars* in both paper and eBook format through Defendant's website and other websites. Except as admitted, paragraph 180 is denied.

181.    Answering paragraph 181, it is admitted that Defendant, through its own acts and the acts of its predecessor in interest, TAN Books and Publishers, Inc., has advertised, published, distributed or sold an English translation of *The Curé D'Ars* and taken other similar acts since 1977, without Plaintiff's consent or authorization, but with the reasonable good faith belief that Defendant was acting within its legal rights to do so. It is further admitted that Defendant has sold *The Curé D'Ars* in both paper and eBook format through Defendant's website and other websites. Except as admitted, paragraph 181 is denied.

182.    Paragraph 182 is denied.

183.    Answering paragraph 183, it is admitted that Defendant has received, and continues to receive, revenues from its sale of the *The Curé D'Ars*. Except as admitted, paragraph 183 is denied.

184.    Paragraph 184 is denied.

185.     Paragraph 185 is denied.

186.    Answering paragraph 186, Defendant re-pleads and incorporates herein by reference its responses to paragraphs 1 through 185 of the Second Amended Verified Complaint. Except as admitted, paragraph 186 is denied.

187.    Answering paragraph 187, it is admitted that the work titled *The Catholic Dictionary* is an original work of authorship fixed in a tangible medium of expression. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 187, and those allegations are therefore denied.

188.    Answering paragraph 188, it is admitted that Defendant published *The Catholic Dictionary* pursuant to a written and implied license agreement with the entity Defendant believed in good faith to be the rights holder of the work. Except as admitted, paragraph 188 is denied.

189.    Paragraph 189 is admitted.

190.    Answering paragraph 190, it is admitted that Defendant, has advertised, published, distributed or sold *The Catholic Dictionary*, without Plaintiff's consent or authorization, but with the consent and authorization of the entity that Defendant believed to be the rights holder.  It is further admitted that Defendant acted with the reasonable good faith belief that it was acting within its legal rights to publish and sell *The Catholic Dictionary*.  It is further admitted that Defendant sold *The Catholic Dictionary* in paper and eBook formats on its websites and other websites. Except as admitted, paragraph 190 is denied.

191.    Paragraph 191 is denied.

192.    Answering paragraph 192, it is admitted that Defendant received revenues from its sales of *The Catholic Dictionary*. Except as admitted, paragraph 192 is denied.

193.    Paragraph 193 is denied.

194.     Paragraph 194 is denied.

195.    Answering paragraph 195, Defendant re-pleads and incorporates herein by reference its responses to paragraphs 1 through 194 of the Second Amended Verified Complaint. Except as admitted, paragraph 195 is denied.

196.     Answering paragraph 196, it is admitted that the work titled *Holy Abandonment* is an original work of authorship fixed in a tangible medium of expression. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 196, and those allegations are therefore denied.

197.     Paragraph 197 is denied, upon information and belief.

198.     Paragraph 198 is admitted.

199.     Answering paragraph 199, it is admitted that Defendant, through its own acts and the acts of its predecessor in interest, TAN Books and Publishers, Inc., has advertised, published, distributed or sold *Holy Abandonment*, without Plaintiff's consent or authorization, but with the consent and authorization of the entity Defendant reasonably believed was the rights holder.  It is further admitted that Defendant acted with the reasonable good faith belief that it was acting within its legal rights to publish and sell *Holy Abandonment.*   It is further admitted that Defendant sold *Holy Abandonment* in paper and eBook formats on its website and other websites. Except as admitted, paragraph 199 is denied.

200.     Paragraph 200 is denied.

201.     Answering paragraph 201, it is admitted that Defendant received revenues from its sales of *Holy Abandonment*. Except as admitted, paragraph 201 is denied.

202.     Paragraph 202 is denied.

203.     Paragraph 203 is denied.

204.     Answering paragraph 204, Defendant re-pleads and incorporates herein by reference its responses to paragraphs 1 through 203 of the Second Amended Verified Complaint. Except as admitted, paragraph 204 is denied.

205.    Defendant does not have knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 205, and those allegations are therefore denied.

206.    Answering paragraph 206, it is admitted that Defendant reprinted an English translation of *De Unione* pursuant to an agreement with the purported rights holder. It is further admitted that Defendant ceased publishing its English translation after it entered into its 2017 agreement with Dominican Province/ Les editions du Cerf. Except as admitted, paragraph 206 is denied.

207.    Paragraph 207 is admitted.

208.    Answering paragraph 208, it is admitted that Defendant, or its predecessor in interest, has advertised, published, distributed or sold *The Priest in Union with Christ*, without Plaintiff's consent or authorization, but with the consent and authorization of the entity Defendant reasonably believed to be the rights holder.  It is further admitted that Defendant acted with the reasonable good faith belief that it was acting within its legal rights to publish and sell *The Priest in Union with Christ*.  It is further admitted that Defendant sold *The Priest in Union with Christ* in paper format on its websites and other websites. Except as admitted, paragraph 208 is denied.

209.    Paragraph 209 is denied.

210.    Answering paragraph 210, it is admitted that Defendant received revenues from its sales of *The Priest in Union with Christ.*  Except as admitted, paragraph 210 is denied.

211.    Paragraph 211 is denied.

212.    Paragraph 212 is denied.

213.    Answering paragraph 213, Defendant re-pleads and incorporates herein by reference its responses to paragraphs 1 through 212 of the Second Amended Verified Complaint. Except as admitted, paragraph 213 is denied.

214.     Answering paragraph 214, it is admitted that *Perfection chriétinne* is an original work of authorship fixed in a tangible medium of expression. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 214, and those allegations are therefore denied.

215.     Answering paragraph 215, it is admitted that Defendant, or its predecessor in interest, published an English translation of *Perfection chriétinne* pursuant to an agreement with the purported rights holder. It is further admitted that Defendant ceased publishing its English translation after it entered into the 2017 agreement with Dominican Province/ Les editions du Cerf. Except as admitted, paragraph 215 is denied.

216.     Paragraph 216 is admitted.

217.     Answering paragraph 217, it is admitted that Defendant, or its predecessor in interest, has advertised, published, distributed or sold *Christian Perfection and Contemplation*, without Plaintiff's consent or authorization, but with the consent and authorization of the entity Defendant reasonably believed to be the rights holder. It is further admitted that Defendant acted with the reasonable good faith belief that it was acting within its legal rights to publish and sell *Christian Perfection and Contemplation*. It is further admitted that Defendant sold *Christian Perfection and Contemplation* in paper and eBook format on its websites and other websites. Except as admitted, paragraph 217 is denied.

218.     Paragraph 218 is denied.

219.     Answering paragraph 219, it is admitted that Defendant received revenues from its sales of *Christian Perfection and Contemplation*. Except as admitted, paragraph 219 is denied.

220.     Paragraph 220 is denied.

221.     Paragraph 221 is denied.

222.     Answering paragraph 222, Defendant re-pleads and incorporates herein by reference its responses to paragraphs 1 through 221 of the Second Amended Verified Complaint. Except as admitted, paragraph 222 is denied.

223.     Answering paragraph 223, it is admitted that *Le Saveur et son amour pour nous* is an original work of authorship fixed in a tangible medium of expression. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 223, and those allegations are therefore denied.

224.     Answering paragraph 224, it is admitted that Defendant, or its predecessor in interest, published *Our Savior and His Love for Us* pursuant to an agreement with the purported rights holder. It is further admitted that Defendant ceased publishing *Our Savior and His Love for Us* after it entered into the 2017 agreement with Dominican Province/ Les editions du Cerf. Except as admitted, paragraph 224 is denied.

225.     Paragraph 225 is admitted.

226.     Answering paragraph 226, it is admitted that Defendant, or its predecessor in interest, has advertised, published, distributed or sold *Our Savior and His Love for Us*, without Plaintiff's consent or authorization, but with the consent and authorization of the entity Defendant reasonably believed to be the rights holder. It is further admitted that Defendant acted with the reasonable good faith belief that it was acting within its legal rights to publish *Our Savior and His Love for Us*. It is further admitted that Defendant sold *Our Savior and His Love for Us* in paper and eBook formats on its websites and other websites. Except as admitted, paragraph 226 is denied.

227.     Paragraph 227 is denied.

228.     Answering paragraph 228, it is admitted that Defendant received revenues from its sale of *Our Savior and His Love for Us*. Except as admitted, paragraph 228 is denied.

229.     Paragraph 229 is denied.

230.     Paragraph 230 is denied.

231.     Answering paragraph 231, Defendant re-pleads and incorporates herein by reference its responses to paragraphs 1 through 230 of the Second Amended Verified Complaint. Except as admitted, paragraph 231 is denied.

232.     Answering paragraph 232, it is admitted that *La Providence* is an original work of authorship fixed in a tangible medium. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 232, and those allegations are therefore denied.

233.     Answering paragraph 233, it is admitted that Defendant reprinted an English translation of *La Providence* pursuant to an agreement with the purported rights holder. It is further admitted that Defendant ceased publishing its English translation after it entered into the 2017 agreement with Dominican Province/ Les editions du Cerf. Except as admitted, paragraph 233 is denied.

234.     Paragraph 234 is admitted.

235.     Answering paragraph 235 it is admitted that Defendant, or its predecessor in interest, has advertised, published, distributed or sold an English translation of *La Providence*, without Plaintiff's consent or authorization, but with the consent and authorization of the entity Defendant reasonably believed to be the rights holder.  It is further admitted that Defendant acted with the reasonable good faith belief that it was acting within its legal rights to publish and sell the English translation.  It is further admitted that Defendant sold its English translation in paper and eBook formats on its websites and other websites. Except as admitted, paragraph 235 is denied.

236.     Paragraph 236 is denied.

237. Answering paragraph 237, it is admitted that Defendant had received revenues from its sale of *Providence*. Except as admitted, paragraph 237 is denied.

238. Paragraph 238 is denied.

239. Paragraph 239 is denied.

240. Answering paragraph 240, Defendant re-pleads and incorporates herein by reference its responses to paragraphs 1 through 239 of the Second Amended Verified Complaint. Except as admitted, paragraph 240 is denied.

241. Answering paragraph 241, it is admitted, upon information and belief, that the work *L'altra vita* is an original work of authorship fixed in a tangible medium of expression. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 241, and those allegations are therefore denied.

242. Answering paragraph 242, it is admitted that Defendant reprinted an English translation of *L'éternelle vie et la profoundeur de l'âme* pursuant to an agreement with the purported rights holder. It is further admitted that Defendant ceased publishing its English translation after it entered into the 2017 agreement with Dominican Province/ Les editions du Cerf. Except as admitted, paragraph 242 is denied.

243. Answering paragraph 243, it is admitted that Defendant had access to *L'éternelle vie et la profoundeur de l'âme* or an English translation of *L'éternelle vie et la profoundeur de l'âme.* Except as admitted, paragraph 243 is denied.

244. Answering paragraph 244, it is admitted that Defendant, or its predecessor in interest, has advertised, published, distributed or sold *Life Everlasting*, without Plaintiff's consent or authorization, but with the consent and authorization of the entity Defendant reasonably believed to be the rights holder. It is further admitted that Defendant acted with the reasonable

good faith belief that it was acting within its legal rights to publish and sell *Life Everlasting*. It is further admitted that Defendant sold *Life Everlasting* in paper and eBook formats on its websites and other websites. Except as admitted, paragraph 244 is denied.

245. Paragraph 245 is denied.

246. Answering paragraph 246, it is admitted that Defendant had received revenues from its sale of *Life Everlasting*. Except as admitted, paragraph 246 is denied.

247. Paragraph 247 is denied.

248. Paragraph 248 is denied.

249. Answering paragraph 249, Defendant re-pleads and incorporates herein by reference its responses to paragraphs 1 through 248 of the Second Amended Verified Complaint. Except as admitted, paragraph 249 is denied.

250. Answering paragraph 250, it is admitted, upon information and belief, that the work titled *La mère du Sauveur* is an original work of authorship fixed in a tangible expression. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 250, and those allegations are therefore denied.

251. Answering paragraph 251, it is admitted, upon information and belief, that Defendant, or its predecessor in interest, obtained rights to publish *Mother of the Saviour* from B. Herder. It is further admitted that Defendant had the right to publish *Mother of the Saviour* pursuant to 17 U.S.C. § 104A. It is further admitted that Defendant ceased publishing *Mother of the Saviour* after it entered into the 2017 agreement with Dominican Province/ Les editions du Cerf. Except as admitted, paragraph 251 is denied.

252. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 252, and those allegations are therefore denied.

253.     Defendant does not have knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 253, and those allegations are therefore denied.

254.     Answering paragraph 254, it is admitted that Defendant had access to *Mother of the Saviour*. Except as admitted, paragraph 254 is denied, upon information and belief.

255.     Answering paragraph 255, it is admitted that Defendant, has advertised, published, distributed or sold *Mother of the Saviour*, without Plaintiff's consent or authorization, but with the good faith belief that it was acting within its legal right to do so.  It is further admitted that Defendant sold *Mother of the Saviour* in paper and eBook formats on its websites and other websites. Except as admitted, paragraph 255 is denied.

256.      Answering paragraph 256, it is admitted that Defendant, has advertised, published, distributed or sold *Mother of the Saviour*, without Plaintiff's consent or authorization, but with the good faith belief that it was acting within its legal right to do so.  It is further admitted that Defendant sold *Mother of the Saviour* in paper and eBook formats on its websites and other websites. Except as admitted, paragraph 256 is denied.

257.     Paragraph 257 is denied.

258.     Answering paragraph 258, it is admitted that Defendant had received revenues from its sale of *Mother of the Saviour*. Except as admitted, paragraph 258 is denied.

259.     Paragraph 259 is denied.

260.     Paragraph 260 is denied.

261.     Answering paragraph 261, Defendant re-pleads and incorporates herein by reference its responses to paragraphs 1 through 260 of the Second Amended Verified Complaint. Except as admitted, paragraph 261 is denied.

262.     Answering paragraph 262, it is admitted that *The Three Ways* and *Les trois conversions* are original works of authorship fixed in a tangible mediums of expression. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 262, and those allegations are therefore denied.

263.     Answering paragraph 263, it is admitted that from 1977 until November of 2017, Defendant, or its predecessor in interest, published *The Three Ways* pursuant to an agreement with the purported rights holder.  It is further admitted that Defendant ceased publishing and selling *The Three Ways* after it entered into the 2017 agreement with Dominican Province/ Les editions du Cerf. Except as admitted, paragraph 263 is denied.

264.     Defendant does not have knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 264, and those allegations are therefore denied.

265.     Defendant does not have knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 265, and those allegations are therefore denied.

266.     Answering paragraph 266, it is admitted that Defendant had access to *The Three Ways*. Except as admitted, paragraph 266 is denied, upon information and belief.

267.     Answering paragraph 267, it is admitted that Defendant, or its predecessor in interest, has advertised, published, distributed or sold *The Three Ways*, without Plaintiff's consent or authorization, but with the consent and authorization of the entity Defendant reasonably believed to be the rights holder.  It is further admitted that Defendant acted with the reasonable good faith belief that it was acting within its legal rights to publish and sell *The Three Ways*.  It is further admitted that Defendant sold *The Three Ways* in paper format on its websites and other websites. Except as admitted, paragraph 267 is denied.

268.   Answering paragraph 268, it is admitted that Defendant, or its predecessor in interest, has advertised, published, distributed or sold *The Three Ways*, without Plaintiff's consent or authorization, but with the consent and authorization of the entity Defendant reasonably believed to be the rights holder.  It is further admitted that Defendant acted with the reasonable good faith belief that it was acting within its legal rights to publish and sell *The Three Ways*.  It is further admitted that Defendant sold *The Three Ways* in paper format on its websites and other websites. Except as admitted, paragraph 268 is denied.

269.   Paragraph 269 is denied.

270.   Answering paragraph 270, it is admitted that Defendant had received revenues from its sales of *The Three Ways*. Except as admitted, paragraph 270 is denied.

271.   Paragraph 271 is denied.

272.   Paragraph 272 is denied.

273.   Answering paragraph 273, Defendant re-pleads and incorporates herein by reference its responses to paragraphs 1 through 272 of the Second Amended Verified Complaint. Except as admitted, paragraph 273 is denied.

274.   Answering paragraph 274, it is admitted that the work titled *La prédestination* is an original work of authorship fixed in a tangible medium of expression.  Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 274, and those allegations are therefore denied.

275.   Answering paragraph 275, it is admitted that Defendant published an English translation of *La prédestination* pursuant to an agreement with the purported rights holder. It is further admitted that Defendant ceased publishing and selling its English translation after it

45

entered into the 2017 agreement with Dominican Province/ Les editions du Cerf. Except as admitted, paragraph 275 is denied.

276. Paragraph 276 is admitted.

277. Answering paragraph 277, it is admitted that Defendant, or its predecessor in interest, has advertised, published, distributed or sold *Predestination*, without Plaintiff's consent or authorization, but with the consent and authorization of the entity Defendant reasonably believed to be the rights holder. It is further admitted that Defendant acted with the reasonable good faith belief that it was acting within its legal rights to publish and sell *Predestination*. It is further admitted that Defendant sold *Predestination* in paper and eBook formats on its websites and other websites. Except as admitted, paragraph 277 is denied.

278. Paragraph 278 is denied.

279. Answering paragraph 279, it is admitted that Defendant had received revenues from its sales of *Predestination*. Except as admitted, paragraph 279 is denied.

280. Paragraph 280 is denied.

281. Paragraph 281 is denied.

282. Answering paragraph 282, Defendant re-pleads and incorporates herein by reference its responses to paragraphs 1 through 281 of the Second Amended Verified Complaint. Except as admitted, paragraph 282 is denied.

283. Paragraph 283 is denied.

284. Answering paragraph 284, it is admitted that *Fundamentals* and *Grundriss* are original works of authorship. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 284, and those allegations are therefore denied.

285.    Paragraph 285 is admitted.

286.    Paragraph 286 is denied.

287.    Paragraph 287 is denied.

288.    Paragraph 288 is denied.

289.    Paragraph 289 is denied.

290.    Paragraph 290 is denied.

291.    Paragraph 291 is denied.

292.    Paragraph 292 is denied.

293.    Paragraph 293 is denied.

294.    Paragraph 294 is denied.

295.    Answering paragraph 295, Defendant re-pleads and incorporates herein by reference its responses to paragraphs 1 through 294 of the Second Amended Verified Complaint. Except as admitted, paragraph 295 is denied.

296.    Defendant does not have knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 296, and those allegations are therefore denied.

297.    Answering paragraph 297, it is admitted that *This Tremendous Lover* is an original work of authorship. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 297, and those allegations are therefore denied.

298.    Paragraph 298 is admitted.

299.    Paragraph 299 is denied.

300.    Paragraph 300 is denied.

301.    Paragraph 301 is denied.

302.    Paragraph 302 is denied.

303.    Paragraph 303 is denied.

304.    Paragraph 304 is denied.

305.    Paragraph 305 is denied.

306.    Paragraph 306 is denied.

307.    Paragraph 307 is denied.

308.    Answering paragraph 308, Defendant re-pleads and incorporates herein by reference its responses to paragraphs 1 through 307 of the Second Amended Verified Complaint. Except as admitted, paragraph 308 is denied.

309.    Paragraph 309 is denied.

310.    Answering paragraph 310 is admitted that *The Curé D'Ars* are original works of authorship. Defendant does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 310, and those allegations are therefore denied.

311.    Paragraph 311 is admitted.

312.    Paragraph 312 is denied.

313.    Paragraph 313 is denied.

314.    Paragraph 314 is denied.

315.    Paragraph 315 is denied.

316.    Paragraph 316 is denied.

317.    Paragraph 317 is denied.

318.    Paragraph 318 is denied.

319.    Paragraph 319 is denied.

320.    Paragraph 320 is denied.

321.     Answering paragraph 321, Defendant re-pleads and incorporates herein by reference its responses to paragraphs 1 through 320 of the Second Amended Verified Complaint. Except as admitted, paragraph 321 is denied.

322.     Paragraph 322 is denied.

323.     Paragraph 323 is denied.

324.     Paragraph 324 is denied.

325.     Paragraph 325 is denied.

326.     Paragraph 326 is denied.

327.     Paragraph 327 is denied.

328.     Paragraph 328 is denied.

329.     Paragraph 329 is denied.

330.     Paragraph 330 is denied.

331.     Paragraph 331 is denied.

332.     Paragraph 332 is denied.

333.     Answering paragraph 333, Defendant re-pleads and incorporates herein by reference its responses to paragraphs 1 through 332 of the Second Amended Verified Complaint. Except as admitted, paragraph 333 is denied.

334.     Paragraph 334 is denied.

335.     Paragraph 335 is denied.

336.     Paragraph 336 is denied.

337.     Paragraph 337 is denied.

338.     Paragraph 338 is denied.

339.     Paragraph 339 is denied.

340. Paragraph 340 is denied.

341. Paragraph 341 is denied.

342. Paragraph 342 is denied.

343. Paragraph 343 is denied.

344. Answering paragraph 344, Defendant re-pleads and incorporates herein by reference its responses to paragraphs 1 through 343 of the Second Amended Verified Complaint. Except as admitted, paragraph 344 is denied.

345. Paragraph 345 is denied.

346. Paragraph 346 is denied.

347. Paragraph 347 is denied.

348. Paragraph 348 is denied.

349. Paragraph 349 is denied.

350. Paragraph 350 is denied.

351. Paragraph 351 is denied.

352. Paragraph 352 is denied.

353. Paragraph 353 is denied.

354. Paragraph 354 is denied.

## SECOND DEFENSE

Plaintiff's Seventeenth Claim for Relief of the Second Amended Verified Complaint asserting claims for unfair and deceptive trade practices under N.C. Gen. Stat. §75.1 *et. seq.*, North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), fails to state claims for which relief may be granted and should therefore be dismissed pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff's UDTPA claims are not qualitatively different from its copyright infringement claims,

and Plaintiff's UDTPA claims are therefore preempted by the United States Copyright Act, 17 U.S.C. §301. Pursuant to LCvR 7.1(C)(1), Defendant hereby preserves its right to file a separate Fed.R.Civ.P. 12(b)(6) motion to dismiss and a supporting brief, and will do so at a later time.

## THIRD DEFENSE

Plaintiff filed its Verified Complaint, its First Amended Verified Complaint, and its Second Amended Verified Complaint more than three years after Plaintiff's claims accrued, and some, or all of Plaintiff's claims for liability and/or damages are therefore barred by the applicable statute of limitations.

## FOURTH DEFENSE

With the exception of Plaintiff's First, Fourteenth, and Seventeenth claims for relief, the claims added by Plaintiff's Second Amended Verified Complaint do not arise out of the same acts or occurrences as the factual allegations and claims asserted in the Verified Complaint or First Amended Verified Complaint, and therefore do not relate back to the filing of the Verified Complaint or First Amended Verified Complaint, and some or all of Plaintiff's other claims for liability and/or damages asserted in claims Two through Thirteen, Fifteen to Sixteen, Eighteen and Nineteen are therefore barred by the applicable statute of limitations.

## FIFTH DEFENSE

With regards to Plaintiff's claims relating to *The Curé D'Ars*, *Life Everlasting, Mother of Saviour, Fundamentals of Catholic Dogma,* and *Three Conversions in the Spiritual Life* these titles do not qualify for restoration under 17 U.S.C. §104A because, Defendant is informed and believes, the works were published in the United States within 30 days of their publication in their source country and therefore do not meet the definition of a restored work under 17 U.S.C. §104A(h)(6)

and therefore their copyrights have not restored. Because *The Curé D'Ars*, *Life Everlasting, Mother of Saviour, Fundamentals of Catholic Dogma,* and *Three Conversions in the Spiritual Life*, do not meet the definition of a restored work under 17 U.S.C. §104A(h)(6), they remain in the public domain.

## SIXTH DEFENSE

In the alternative, with regard to Plaintiff's claims relating to *The Curé D'Ars*, *Life Everlasting, Mother of Saviour, Fundamentals of Catholic Dogma,* and *Three Conversions in the Spiritual Life*, if it is found that Plaintiff is the rightful owner or rights holder of a restored copyright of these works, then Defendant is entitled to a mandatory license under 17 U.S.C. §104A(d)(3)(B) because Defendant is a reliance party under 17 U.S.C. §104A(d)(3) and has exploited an existing derivative of the restored works since before the enactment of the Uruguay Round Agreements Act. In that event, Defendant respectfully requests that the Court set the reasonable compensation for Defendant's use of the works.

## SEVENTH DEFENSE

In the alternative, with regards to Plaintiff's claims relating to *The Curé D'Ars, Life Everlasting, Mother of Saviour, Fundamentals of Catholic Dogma,* and *Three Conversions in the Spiritual Life*, if Defendant is not found to be a reliance party under 17 U.S.C. §104A(d)(3) then, upon information and belief, Defendant is a reliance party under 17 U.S.C. §104A(d)(2)(B)(ii), and Defendant's damages, if any, are limited to those acts which took place more than 12 months after Defendant received any notice of intent to enforce a restored copyright for each work.

## EIGHTH DEFENSE

Defendant is informed and believes that some or all of the Plaintiff's alleged copyright rights asserted in the Second Amended Verified Complaint have expired or are otherwise invalid, void and unenforceable.

## NINTH DEFENSE

Defendant denies infringing upon any valid copyright held by the Plaintiff, but states, in the alternative, that if there was any infringement by Defendant, Defendant was not aware that its actions constituted an infringement, any such infringement was not willful, and that Defendant acted in good faith and with innocent intent. Any award of damages should, therefore, be reduced to reflect the same.

## TENTH DEFENSE

Defendant is informed and believes that: (1) Plaintiff is not the author or the initial rights holder of the works at issue in the Second Amended Verified Complaint, and (2) Plaintiff does not own any exclusive rights in the works at issue in the Second Amended Verified Complaint, and therefore Plaintiff cannot enforce any copyright rights to the same.

## ELEVENTH DEFENSE

Defendant denies any infringement of any valid, enforceable, copyright-protected works identified in the Second Amended Verified Complaint.

## TWELFTH DEFENSE

Defendant is informed and believes that Defendant, not Plaintiff, is the rightful owner of the copyright rights in *The Curé D'Ars* and in *Fundamentals of Catholic Dogma*.

## THIRTEENTH DEFENSE

Should Defendant be found to have infringed, or to be infringing, Plaintiff's right to publish any title as alleged in the Second Amended Verified Complaint, which is again denied, then Plaintiff is not entitled to, and should not be granted, injunctive relief because Plaintiff has unduly delayed in pursuing such a claim for injunctive relief – in some instances as much as three years after it discovered Defendant's alleged acts of infringement.

## FOURTEENTH DEFENSE

Defendant acquired certain assets of TAN Books and Publishers, Inc. out of bankruptcy in 2008, and did not enter into a purchase of stock of TAN Books and Publishers, Inc. and therefore did not assume the company's debts and liabilities.

## FIFTEENTH DEFENSE

Defendant did not knowingly, with the intent to induce, enable, facilitate, or conceal infringement, provide copyright information that is false, or distribute or import for distribution copyright information that is false. Defendant did not remove or alter copyright management, or distribute or import for distribution copies of works, knowing or having reasonable grounds to know that it would induce, enable, facilitate, or conceal an infringement.

## SIXTEENTH DEFENSE

If Plaintiff is found to have any copyright rights to the works as alleged in the Second Amended Verified Complaint, Plaintiff is misusing those copyright rights in an anti-competitive manner against public policy.

## SEVENTEENTH DEFENSE

Defendant is informed and believes that Plaintiff has failed to register certain works with the United States Copyright Office before filing this law suit, or failed to adequately plead exemption from the registration requirements. Pursuant to LCvR 7.1(C)(1), Defendant hereby preserves its right to file a separate Fed.R.Civ.P. 12(b)(6) motion to dismiss some or all of Plaintiff's claims on this basis and a supporting brief, at a later time.

## EIGHTEENTH DEFENSE

With regard to certain works at issue in the Second Amended Verified Complaint, Defendant ceased selling those works – either voluntarily or after entering into an agreement with the purported copyright rights holder – and any sales of such works which took place after Defendant ceased selling the works arose from the independent acts of third parties who had been directed by Defendant to cease all sales of the work.

## NINETEENTH DEFENSE

Defendant, not Plaintiff, possessed the rights, either by license or by assignment, to certain works at issue, and Defendant acted within its legal rights in publishing and selling the works.

## TWENTIETH DEFENSE

17 U.S.C. §104A(d)(4) and 17 U.S.C. §412 bar Plaintiff from recovering statutory damages or attorney's fees for any of its claims of copyright infringement. Plaintiff is not entitled to statutory damages or attorney's fees because the works at issue: (1) were never registered with the United States Copyright Office, or (2) were not registered with the United States Copyright Office within three months following their initial publication in the United States or one month after the Plaintiff learned of the alleged infringement.

To the extent that a copyright registration has been filed with the United States Copyright Office for any work which is the subject of the Second Amended Verified Complaint, any allegedly infringing acts by Defendant were part of an ongoing series of acts that Defendant, through its predecessor, commenced before the alleged date of registration, or in the case of an alleged restored work, before the alleged restoration.

### TWENTY-FIRST DEFENSE

Plaintiff fails to state a claim for punitive damages for which relief can be granted, and any claim asserted in the Second Amended Verified Complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) because: (1) Plaintiff's claims for punitive damages are preempted by the United States Copyright Act which limits Plaintiff's damages to damages enumerated in the Act; and, (2) Plaintiff has failed to plead facts sufficient to give rise to punitive damages in that Plaintiff has failed to adequately plead fraud, malice or willful and wanton conduct.

Pursuant to LCvR 7.1(C)(1), Defendant hereby preserves its right to file a separate Fed.R.Civ.P. 12(b)(6) motion to dismiss and a supporting brief, at a later time.

### TWENTY-SECOND DEFENSE

In the event the Court determines that Plaintiff's Second Amended Verified Complaint states a claim for punitive damages, then Defendant, pursuant to N.C.G.S. §1D-35 avers that it is entitled to a bifurcated trial on the issue of liability for compensatory damages and the amount of compensatory damages, if any, to which Plaintiff is entitled.

## TWENTY-THIRD DEFENSE

Upon information and belief, Plaintiff's purported claim for punitive damages is without a reasonable basis in fact, is frivolous and without merit  and in accordance with N.C.G.S. §1D-45, Defendant moves to have and recover its costs, including a reasonable attorneys' fee, with respect to the defense of Plaintiff's claim for punitive damages.

Defendant reserves the right to assert additional defenses as discovery continues in this action.

WHEREFORE, having fully answered the Second Amended Verified Complaint, Defendant Saint Benedict Press, LLC prays that:

1.      Plaintiff's claims and action be dismissed, with prejudice;

2.      The Court set the reasonable compensation Defendant should pay, if any, pursuant to 17 U.S.C. §104A(d)(3)(A)(ii);

3.      The Court find the copyright registrations filed by Plaintiff relating to the works at issue in the Second Amended Verified Complaint invalid and that the Court order the Plaintiff to request their cancellation;

4.      All issues be tried by a jury;

5.      Defendant have and recover its costs, including reasonable attorneys' fees pursuant to 17 U.S.C. § 505, 17 U.SC. §1203(b)(4), 17 U.S.C. §1203(b)(5),  N.C.G.S. § 75-1.1, or N.C.G.S. §1D-45; and

6.      Defendant have and recover such other and further relief as the Court deems just and proper.

This the <u>28th</u> day of December, 2018.

/s/ Jonathan E. Buchan
Jonathan E. Buchan, N.C. State Bar No. 8205
Natalie D. Potter, N.C. State Bar No. 34574
Attorneys for Defendant
Essex Richards, PA
1701 South Blvd.
Charlotte, NC 28203
Telephone: (704) 377-4300
Fax: (704) 372-1357
Email: jbuchan@essexrichards.com
Email: npotter@essexrichard.com
